UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA, et al.,

    Plaintiffs,

    v.

STATE OF WASHINGTON, et al.,

    Defendants.

CASE NO. CV 9213

Subproceeding No. 05-01

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

    This matter is before the Court for consideration of a motion for summary judgment filed by the Port Gamble and Jamestown S'Klallam Tribes ("S'Klallam"), and a cross-motion for partial summary judgment filed by the Skokomish Indian Tribe ("Skokomish"). For the reasons which follow, the Court GRANTS the S'Klallam motion and DENIES the Skokomish motion.

BACKGROUND AND DISCUSSION

    The S'Klallam Tribes initiated this case by filing a Request for determination in January, 2005. The Request seeks a determination that the Skokomish Tribe may not "open or conduct . . . [a]ny fishery in Hood Canal, . . . in violation of the Hood Canal Agreement." They also request a determination that the Skokomish may not conduct

> Any action such as the promulgation of any Fisheries Management Plan or Quota based allocation, or any other action controlling the harvest of fish and shellfish in Hood Canal . . . without Plaintiff's "express consent" by "Compact or otherwise" as required in the above Hood Canal Agreement.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 1

Request for Determination ("Request"), p. 1-2. As relief, the S'Klallam ask that the Court enjoin the Skokomish from unilaterally creating and executing fish and shellfish management plans, fisheries or quotas in violation of the Hood Canal Agreement, and declare that the Skokomish 2004/2005 management plan and the implementation thereof did violate the Hood Canal Agreement. The S'Klallam also request that the area of Hood Canal north of Ayock Point be declared an "in common" management area. Request, p. 9-10.

The Skokomish filed an answer and a Counter-Request for Determination, which was bifurcated from this case and opened as Subproceeding 05-02, and then stayed pending a resolution of this case. The Court has struck the trial date in this case and determined that it is appropriate for resolution upon cross-motions for summary judgment.

This dispute arises out of the Skokomish Tribe's 2004/2005 harvest plan, and its relationship to the Hood Canal Agreement ("Agreement"). The Hood Canal Agreement between the Skokomish and three S'Klallam Tribes[1] was signed in 1982 and adopted by the Court in 1983. United States v. Washington, 626 F. Supp. 1405, 1468-9 (W.D.Wash. 1985). In the Agreement, the other signatory tribes recognized the Skokomish Tribe's primary right to fish in Hood Canal. In exchange, the Skokomish agreed that

> **it will not, under any condition or for any reason whatsoever, exercise or seek to exercise its primary right on Hood Canal north of Ayock Point . . . against any of the other stipulating parties without its or their express consent.**

626 F. Supp. at 1469. Subsequently, in 1984, the Court issued a judicial determination of the primary right of the Skokomish in Hood Canal. The Court ruled that

> **No tribe or member of a tribe shall exercise treaty fishing rights within the area of Hood Canal or on rivers or streams draining into Hood Canal subject to the primary right of the Skokomish Indian Tribe without the prior express consent of the Skokomish Indian Tribe or as otherwise provided by the Hood Canal Agreement . . . and Order of March 8, 1983**.

Id. at 1487. The Court noted in its Conclusions of Law that the Agreement

---

[1] The Lower Elwha Klallam Tribe is also a party to the Hood Canal Agreement, but has not participated on either side of the current dispute.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 2

**contains the consent of the Skokomish Indian Tribe to fishing within certain parts of its territory, or primary right area, by members of the named Klallam bands, subject to conditions stated therein. That stipulation and order shall continue to govern treaty fishing by members of the Klallam bands in the areas described in it.**

Id. at 1491. Thus, the Court's Order determining the primary right of the Skokomish maintained the force and effect of the Hood Canal Agreement on that primary right. This ruling was affirmed by the Ninth Circuit. U.S. et al. v. Skokomish, 764 F. 2d 670 (9th Cir. 1985).

Until 2003, the Skokomish participated with the S'Klallam in the Point No Point Treaty Council, which jointly set the harvest plans and goals for the participating tribes. See, United States v. Washington, C70-9213 subproceeding 04-01, Dkt. # 1, 6. The Skokomish left the council and in 2004 issued its own harvest plan for 2004/2005. This plan was communicated to the S'Klallam by letter dated May 20, 2004. This plan forms the basis for the S'Klallam contention that the Skokomish have violated the Agreement by unilaterally determining harvest goals without consulting the other tribes. Specifically, the 2004/2005 plan stated the following goals:

(1) Geoduck: the Skokomish announced their intent to harvest 60% of the Tribal share south of Termination Point, and 20% north of Termination Point, for the season. This targeted 203,933 pounds of geoduck, approximately 38% of the Treaty total.

(2) Shrimp: the Skokomish intended to harvest 50% of the Tribal share of spot shrimp in Hood Canal, for a total of 34,217 pounds of shrimp.

(3) Clams: the Skokomish intended to harvest 60% of the Tribal share of clams in Hood Canal.

(4) Oysters: the Skokomish intended to harvest 75% of the Tribal share of Hood Canal oysters.

(5) Dungeness Crab: The Skokomish intended to harvest 45% of the Tribal share of Dungeness Crab in Hood Canal. Declaration of David Herrera, Exhibit A. As the season progressed, the Skokomish sent various letters[2] to the other tribes, reminding them how much remained of the Treaty share for each tribe to harvest. On August 24, 2004, Tribal Chairman Gordon James wrote to the chairs

---

[2] The Skokomish have objected to the submission of letters from counsel, such as letters dated September 30, 2004, and December 29, 2004, on the basis that they violate Federal Rule of Evidence 408. In deciding these summary judgment motions, the Court considered only letters from tribal authorities, not from counsel.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 3

of the S'Klallam and two other Tribes, stating

> As each of you know, the Skokomish Tribe identified 45% (135,000 pounds) of the tribal share of Dungeness Crab as required to meet its needs this year. The 45% is contained in the Skokomish Tribe's 2004 Hood Canal Fishery Harvest Plan. There is now less than 106,188 pounds in the original tribal share of 300,000 pounds. The current Skokomish catch is 49,908 pounds, leaving 85,092 pounds in the amount targeted for harvest by the Skokomish Tribe. From a starting point of 65% of the crab treaty share (165,000 pounds) there now remains 21,096 pounds of crab left for harvest by all the other Hood Canal Tribes. . . .
>
> The S'Klallams have advised David Herrera and Eric Sparkman that they wish to have a crab fishery in late August to establish the final data point for their update methodology. I anticipate that a problem will arise from anything but the most limited crab fishery in late August, since something less than 21,096 poinds of crab remain for harvest. I believe that the S'Klallams will not be able to have a two-day fishery and perhaps only something less than a one-day fishery without harvesting crab the Skokomish Tribe has set aside for its 2004 season. . . .
>
> I have taken Chairman Allen at his word when he said fishing during 2004 is all but over and that he does not anticipate that intertribal harvest conflicts will arise during the rest of this fishing season. I have also taken Chairman Ron Charles at his word when he said that he goes along with Chairman Allen's statements. The above crab harvest data supports Chairman Allen's statement and shows that S'Klallam crab fishing this year in Hood Canal is, indeed, almost over. In that regard, if the leadership of Jamestown and Port Gamble S'Klallam go back on their word by authorizing crab harvest that has been identified for harvest by Skokomish, I will consider those actions to be taken in bad faith in view of the commitment we have all made to attempt to resolve this dispute through negotiation and the negotiation schedule we have all agreed to. . . .

Declaration of Randy Hatch, Exhibit D. On August 27, 2004, Chairman James wrote another letter to the other tribal chairs, objecting to the issuance by the Point No Point Treaty Council of regulations for a three-day crab fishery in Hood Canal from August 29-31. Chairman James stated that the issuance of this crab fishery regulation "indicates bad faith in regard to the ensuing negotiations." Declaration of Randy Hatch, Exhibit E.

On these facts, the S'Klallam have moved for summary judgment on their Request for determination. The Skokomish have filed a cross-motion for partial summary judgment. As the motions present essentially the same issues and arguments, they shall be addressed together.

The S'Klallam contend that the unilateral setting of harvest goals by the Skokomish constitutes an impermissible exercise of the Skokomish primary right, in violation of the Hood Canal Agreement. The Skokomish, in response, assert that their harvest plan was not an "exercise" of their primary right,

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 4

because they did not either exclude the S'Klallam from Hood Canal, or regulate their fishing. This argument is unconvincing.

The parties agree that this case turns on the meaning of the terms "exercise" and "primary right." They further agree that the language of the Hood Canal Agreement is unambiguous, at least as to the "exercise of primary right" language. Thus, the Court does not look to extrinsic evidence to interpret this term. Indeed, the term "primary right" is clearly defined in this case. "A primary right is the power to regulate or prohibit fishing by members of other treaty tribes." U.S. v. Skokomish, 764 F. 2d 670, 671 (9th Cir. 1985). In determining the primary right of the Skokomish, this Court concluded that the Skokomish Tribe "possesses the right to preclude or otherwise regulate Indian treaty fishing by members of tribes other than the Skokomish Tribe within the area described. . . ." U.S. v. Washington, 626 F. Supp. at 1491. However, as set forth above, the exercise of that primary right north of Ayock Point is limited by the Hood Canal Agreement. Id. at 1487, 1491.

The Skokomish argue that their harvest plan does not constitute the exercise of their primary right because they did not either regulate or exclude other tribes. They assert that the letters sent to the other tribes, which informed the S'Klallam how much of the treaty share remained for them to harvest, were not an attempt at regulation of other Tribes' fishing, but only of their own. This argument defies logic (and simple mathematics). While the Skokomish did not actually exclude the S'Klallam altogether, they did regulate their fishery. By claiming 60% of the geoduck harvest, 75% of the oysters, 60% of the clams, 50% of the shrimp, and 45% of the crab, the Skokomish attempted to limit the S'Klallam tribal members (together with the two other tribes who fish in Hood Canal) to the remaining 40% of the geoduck, 25% or the oysters, and so on. This limitation amounts to regulation of the other tribes' fishing.

The Skokomish assert that the letters did not amount to regulation, because the term "regulation" means the use of police power, or the imposition of time, place or manner restrictions. They have not, however, pointed to any language in this case which supports that interpretation, nor is the Court aware of any. To the contrary, the Court has previously found that the Skokomish, as successors in interest to

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 5

the aboriginal Twana, asserted their primary right over their territory by regulating or deterring unauthorized fishing through such means as social disapproval and magical retaliation, "both of which deterrants were taken very seriously in the aboriginal societies of western Washington." Id. at 1490.

As the Skokomish correctly assert, "[t]he primary right doctrine attempts to implement, insofar as is now possible, the relevant aboriginal concepts about the use of territory and resources." Skokomish Response in Opposition to Summary Judgment, p. 10. Thus, the power to "regulate or prohibit fishing" by other treaty tribes, which is the essence of a primary right, encompasses enforcement as it was understood at treaty time, not under modern concepts such as "police power" or "time, place, and manner" restrictions. The language regarding "bad faith" in the letters, some of which is quoted above, is a clear assertion of social disapproval, and thus amounts to "regulation" of S'Klallam fishing as that term is used in this case.[3]

At oral argument, the Skokomish asserted that "nowhere is there a rule that one tribe has to give consent before another can go fishing." It may be true, as the Skokomish contend, that the Shellfish Implementation Plan, which in general governs tribal harvest of shellfish, does not require such consent. However, this case arises under the Hood Canal Agreement, and that Agreement clearly requires consent by other tribes for the area in question. In addition to the language set forth above, agreeing that north of Ayock Point the Skokomish Tribe would not seek to exercise its primary right against other tribes without their express consent, there is the following:

> **[T]he stipulating Parties further agree that north of Ayock Point on Hood Canal the Skokomish Tribe and the Klallam Bands may exercise their respective treaty fishing rights without any limitation or control whatsoever by any of the Stipulating Parties, except as the Stipulating Parties may mutually agree by compact or otherwise.**

Id. at 1469. In other words, either there is what has become known in this case as a "race fishery", with no controls or quotas at all, or there is a mutual plan, created by agreement. The Skokomish 2004/2005 harvest plan appears to be an attempt to avoid an uncontrolled race fishery, which is a desirable goal. However, as the Skokomish did not obtain the consent of the S'Klallam, by compact or otherwise, to the

---

[3]One might also view the litigation threats found in the August 27, 2004 letter as the modern day equivalent of magical retaliation. Hatch Declaration, Exhibit E.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 6

issuance of that harvest plan, the unilateral limitations on S'Klallam harvest violated the express language of the Hood Canal Agreement.

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e). Anderson v. Liberty Lobby, Inc., 477 U.S. at 257. Mere disagreement or the bald assertion that a genuine issue of material fact exists does not precludes the use of summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988).

In opposing summary judgment, the Skokomish assert no facts to establish a genuine issue of material fact. Instead, they argue that the letters quoted above have been mischaracterized by the S'Klallam, and that they do not represent an attempt to restrict regulate other tribes' fishing. However, the letters speak for themselves. As shown above, the Skokomish Tribe's unilateral issuance of a harvest plan with quotas for themselves and for other tribes, coupled with letters threatening social disapproval and even litigation if the other tribes did not follow the plan, constitutes an attempt to exercise their primary right. That right itself is not in dispute, nor is it, as the S'Klallam appear to contend, merely "theoretical" with respect to the S'Klallam. However, under the express and unambiguous language of the Hood Canal Agreement, the Skokomish may not exercise that primary right against the S'Klallam. As the Court has found above that the 2004/2005 harvest plan constituted just such an impermissible exercise or attempt to exercise that primary right, the S'Klallam are entitled to summary judgment on their claim that the Skokomish did in fact violate that Agreement with their 2004/2005 harvest plan.

In their cross-motion for partial summary judgment, the Skokomish assert two additional bases for denying the S'Klallam Request for Determination. First, the Skokomish contend that the S'Klallam

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 7

Request for Determination is moot, because the 2004/2005 harvest season is over.  That fact does not render the controversy moot.  There was a live controversy at the time the action was filed, and there remains a live controversy with respect to the application of the Hood Canal Agreement to unilaterally-issued fishing plans.  The relief requested was not to enjoin the fishing itself, but rather a request for the following three actions by the Court:

    (a) to enjoin the Skokomish from the unilateral creation (and execution) of harvest management plans in violation of the Hood Canal Agreement;

    (b) to declare that the 2004/2005 management plan violates (or did violate) the Hood Canal Agreement; and

    (c) to declare the area north of Ayock Point an "in common" management area.

Request for Determination, p. 9-10.  None of these requests has been rendered moot by the close of the 2004/2005 fishing season.

    Finally, the Skokomish argue that the S'Klallam Request for Determination fails to plead with particularity, in that it fails to name "necessary and indispensable parties" as defendants.  Skokomish Protective Motion for Partial Summary Judgment, p. 19.   Specifically, the Skokomish contend that other tribes who fish in Hood Canal, such as the Suquamish and Lower Elwha, should have been named.  However, this subproceeding concerns the Hood Canal Agreement, to which the Suquamish Tribe is not a signatory.  And while the Lower Elwha Band of Klallam Indians is a party to the Agreement, there was no need to join them as defendants because it is the actions of the Skokomish, and the Skokomish alone, that are at issue.  No  tribes other than those named in the Request for Determination are either necessary or indispensable parties to this subproceeding.

    Accordingly, it is hereby ORDERED that the S'Klallam motion for summary judgment is GRANTED, and the Skokomish motion for partial summary judgment is DENIED. Pursuant to the Hood Canal Agreement and the Court's Order approving and adopting it, the Court declares, as set forth therein, (1) that the area north of Ayock Point is an "in common" management area, and (2) that the Skokomish 2004/2005 management plan, which was issued unilaterally and which set limits on S'Klallam

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 8

1 harvests of various species of shellfish, violated that Agreement.  The Skokomish Indian Tribe is hereby
2 enjoined from any further unilateral creation or execution of shellfish harvest management plans,
3 unilateral imposition of harvest quotas upon the Port Gamble and Jamesstown S'Klallam Tribes, or other
4 actions in violation of the Hood Canal Agreement.

5       This Order constitutes a final Order for purposes of appeal, and closes this subproceeding.  All
6 remaining pending motions (Dkt. ## 176, 179) are accordingly STRICKEN.

8       DATED this <u>20th</u> day of <u>July</u>, 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 9