# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

UNITED STATES OF AMERICA, et al.,

  Plaintiffs,

  v.

STATE OF WASHINGTON, et al.,

  Defendants.

CASE NO. CV 9213

Subproceeding No. 05-4

ORDER ON MOTION TO DISMISS

This matter is before the Court for consideration of the motion to dismiss filed by the Suquamish Tribe ("Suquamish"). The Court has reviewed the motion, the response and replies, and relevant case documents. For the reasons set forth below, the Court now GRANTS the motion to dismiss.

## DISCUSSION

This is the second Request for Determination filed this year concerning the extent of the usual and accustomed fishing grounds ("U & A") of the Suquamish, described by the Honorable George Boldt in 1974 as follows:

> The usual and accustomed fishing places of the Suquamish Tribe include the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River including Haro and Rosario Straits, the streams draining into the western side of this portion of Puget Sound and also Hood Canal.

United States v. Washington, 459 F. Supp. 1020, 1049 (1978). In June, 2005, two months before this subproceeding was initiated, the Upper Skagit Indian Tribe ("Upper Skagit") filed a Request for Determination ("Request") asking the Court to determine that certain defined areas of Saratoga Passage and Skagit Bay, both to the east of Whidbey Island, are not within the Suquamish U & A as defined by Judge Boldt. *U.S. v. Washington*, Cause No. 70-9213, sub-proceeding 05-03. The Swinomish Indian Tribal Community ("Swinomish") moved for leave to file a Cross-Request for Determination to include a

ORDER ON MOTION TO DISMISS - 1

larger portion of Saratoga Passage, known as Catch Reporting Area 24C, and the motion was granted. The Suquamish then moved to dismiss the Request for lack of jurisdiction and failure to state a claim, as well as under the doctrine of res judicata.

The Court found in sub-proceeding 05-03 that it retained jurisdiction under Paragraph 25 of the permanent injunction in this case, as modified August 23, 1993, to consider the Request of the Skagit and Swinomish.  And although the Court noted its agreement with Suquamish that the U & A determination is a final decision that cannot now be altered or amended, it found that it may be clarified where necessary.  Without specifically finding that the term "Puget Sound" is ambiguous in the context of the Suquamish U & A, the Court found sufficient ambiguity in Judge Boldt's use of the term "Puget Sound" in this case to allow that sub-proceeding to go forward.  The Court therefore denied the motion to dismiss.

This Request for Determination was filed as sub-proceeding 05-04 by the Tulalip Tribes ("Tulalip"), who ask the Court to find that all of Saratoga Passage, together with additional areas designated as Penn Cove, Holmes Harbor, Port Susan, Tulalip Bay, Port Gardner, a portion of Possession Sound, and the east side of Admiralty Inlet, including Admiralty Bay, Mutiny Bay, Useless Bay, and Cultus Bay, all lie outside the Suquamish U & A as defined by Judge Boldt.  The Suquamish have moved to dismiss the Request, this time asserting three bases for dismissal: lack of subject matter jurisdiction, res judicata, and laches.  The Tulalip, in response, have asked the Court to follow the ruling in sub-proceeding 05-03 and deny the motion to dismiss.  There are, however, significant differences between the positions of the parties in the two sub-proceedings, which here compel a different result.

In 1974 or 1975, the Tulalip Tribes filed a Request for Determination as to their own U & A. Judge Boldt noted that the areas claimed by the Tulalip as usual and accustomed fishing grounds included

> (1) All marine waters of the State of Washington lying within the lands and waters ceded to the United States of America by Article I of the treaty of Point Elliot.
>
> . . . .
>
> (3) All marine waters of Puget Sound and of the Strait of Juan de Fuca lying within the territorial limits of the State of Washington and outside of those waters ceded to the United States of America by Article I of the treaty of Point Elliot.

ORDER ON MOTION TO DISMISS - 2

*U.S. v. Washington*, 459 F. Supp. at 1058. Judge Boldt issued provisional findings limiting the Tulalip U & A to a clearly defined area, described as "[b]eginning at Admiralty Head on Whidbey Island and proceeding south. . .," thence southeasterly, northeasterly, and northwesterly up to a line "drawn true west of Camano on Camano Island." *Id*. at 1059. This was a provisional finding, and various Tribes, including the Suquamish, entered into negotiations with the Tulalip Tribe for final determination of the Tulalip U & A.

In 1983, the Suquamish, Muckleshoot, and Tulalip Tribes entered into a stipulated settlement which resolved "some of the issues raised in the Tulalip Tribes' request for final determination. . . ." Suquamish Reply, Dkt. # 13, Exhibit 2. That stipulation was filed with and approved by the Court, Judge Craig presiding, in 1983. *U.S. v. Washington*, 626 F. Supp. 1405, 1476-78 (W.D.Wash. 1985). Subsequently, in 1985, Judge Craig issued a final decision as to the U & A of the Tulalip Tribe, the extent of which is not directly relevant to these proceedings. *Id*. at 1527-1532. Notably, however, Judge Craig referred at several points to the stipulated settlement agreements reached with the Suquamish and Muckleshot Tribes, as well as eight other Tribes. *Id*., Finding of Fact ¶ 383, Conclusions of Law ¶¶ 94, 100, 101, 102. The Court stated,

> Pursuant to those agreements the stipulating tribes, with a single limited exception, did not participate in the adversarial proceedings of this dispute and thus had no opportunity to present evidence of their own, to cross-examine Tulalip witnesses or to challenge Tulalip evidence. Some of the evidence offered by the Tulalip Tribes dealt with activities, persons or events in areas which are of concern to the stipulating tribes. It should therefore be stressed that the findings of fact and conclusions of law which are adopted in this proceeding are not to be cited or relied upon in any manner against or to the prejudice of the stipulating tribes in this or any other judicial or other proceeding, provided that this shall not prevent the independent establishment of the same fact or conclusion in a future proceeding.

*Id*., Finding of Fact ¶ 383.

In May of 1985, the Suquamish filed a new Request for Determination seeking to establish their right to fish in certain areas as successors to the treaty-time Duwamish Tribe. The Court, after referring the matter to a Special Master for trial, denied the Request, and that denial was affirmed on appeal. *U.S. v. Suquamish Indian Tribe*, 901 F. 2d 772 (9th Cir. 1990). The appeals court, in setting forth the

ORDER ON MOTION TO DISMISS - 3

background of the dispute, variously used the terms "eastern Puget Sound", "eastern side of Puget Sound", and "east of Puget Sound" apparently interchangeably, and also referred to the Suquamish U & A area as "western Puget Sound" and "the west side of Puget Sound" without actually defining those areas. These vague references to "eastern" and "western" Puget Sound appear to form part of the basis for the Tulalip's Request here. The Court notes, however, that when describing the actual usual and accustomed fishing grounds of the Duwamish "on the eastern side of Puget Sound", the appeals court stated that they "included, but were not limited to, Lake Washington, Lake Union, Lake Sammamish, the Black and Cedar Rivers, and the lower White or Duwamish River. . ." *U.S. v. Suquamish Indian Tribe*, 901 F. 2d 772, 774 n.2 (9th Cir. 1990).

The Court has described these prior proceedings with some particularity, because each of them provides some basis for finding that the Tulalip's Request for Determination is either barred or untimely, and must be dismissed.

In the initial proceedings on their Request for Determination before Judge Boldt in 1975, the Tulalip Tribe claimed as their usual and accustomed fishing areas "[a]ll marine waters of Puget Sound and of the Strait of Juan de Fuca lying within the territorial limits of the State of Washington," together with "[a]ll marine waters of the State of Washington lying within the lands and waters ceded to the United States of America. . . ." *U.S. v. Washington*, 459 F. Supp at 1058. Significantly absent from this claim is any separate reference to Saratoga Passage, Port Susan, Skagit Bay, or any of the other areas near the Tulalip Indian Reservation which the Tulalip now contend are not within "Puget Sound" as Judge Boldt used that term in describing the Suquamish U & A. Thus, the Tulalip claim in 1975 to a U & A in "all marine waters of Puget Sound" must necessarily have included those very areas to the east of Whidbey Island which they now assert are excluded. In other words, they are now arguing for a limitation on the term "Puget Sound" which is inconsistent with their 1975 claim. This is impermissible, particularly in the context of this case.

The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, may be invoked to prevent a party from changing its position over the course of judicial proceedings. *Russell v. Rolfs*, 893 F. 2d 1033, 1037 (9th Cir. 1990). It is an equitable doctrine

ORDER ON MOTION TO DISMISS - 4

invoked by the Court at its discretion. *Yanez v. United States*, 989 F. 2d 323, 326 (9th Cir. 1993). Judicial estoppel applies to a party's stated position, whether that be an expression of intention, a statement of fact, or a legal assertion. *Wagner v. Professional Engineers in California Government,* 354 F. 3d 1036, 1044 (9th Cir. 2004). The purpose of the doctrine is to protect the integrity of the judicial process. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F. 3d 597,601 (9th Cir. 1996); *quoting Russell v. Rolfs*, 989 F. 2d at 326.

Although it appears that this doctrine may well apply to the inconsistent positions taken by the Tulalip Tribe on the extent of "Puget Sound" here, the Court declines to apply judicial estoppel to bar this Request at this time because it has been raised on the Court's own motion, and the Tulalip have not been given an opportunity to respond. However, the Court deems it unnecessary to delay the proceedings to allow such opportunity, because the Request is subject to dismissal on other grounds asserted by the Suquamish. Specifically, the Court agrees with the Suquamish that this Request is barred by the doctrines of laches and res judicata.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F. 3d 708, 713 (9th Cir. 2001); *quoting Nelson v. City of Irnive*, 143 F. 3d 1196, 2000 (9th Cir. 1998). The doctrine is applicable when there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties. *Id*. These requirements are met here. Res judicata applies to the Judge Boldt's 1975 rulings on the Suquamish U & A, Judge Craig's 1985 ruling on the Tulalip U & A, and to the 1983 stipulated settlement between the Suquamish and the Tulalip, which resolved overlapping claims to some of the areas now in dispute. That settlement was incorporated into a judgment which conclusively determined the issues as between these two parties. *U.S. v. Washington*, 626 F. Supp. at 1476-78. To any extent that the Tulalip claim that the Suquamish U & A did not include certain areas on either side of Whidbey Island as asserted here, they could and should have raised that issue and resolved it in the 1975 proceedings and /or the 1983 settlement. It would seriously impact the finality of those judgments to allow them to re-open the issue now.

Finally, to the extent that the Tulalip argue that the Ninth Circuit's 1990 language regarding

ORDER ON MOTION TO DISMISS - 5

eastern and western Puget Sound in *U.S. v. Suquamish Indian Tribe* somehow limited the Suquamish U & A to the boundaries asserted here, they are barred from asserting that claim by the doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc., v. Nutrition Now, Inc.*, 304 F. 3d 829, 835 (9th Cir. 2002) (*quoting Boone v. Mech. Specialties Co.*, 609 F. 2d 956, 958 (9th Cir. 1979). A party asserting laches must show that it suffered prejudice as a result of the plaintiff's unreasonable delay in bringing suit. *Id.*, *citing Couveau v. American Airlines, Inc.*, 218 F. 3d 1078, 1083 (9th Cir. 2000). The fifteen years that have passed since the Ninth Circuit's language provided fuel for the Tulalip "eastern Puget Sound" argument constitute unreasonable delay. The Suquamish have been prejudiced by this delay, in that they have been intimidated from fishing in certain areas, with no judicial resolution of the dispute. *See*, Declaration of Robert Purser.

In opposing the Suquamish laches argument, the Tulalip assert that laches should not be applied in a "continuing jurisdiction" case such as this. No legal authority is offered for this proposition, and the Court rejects it. While the Court did and does retain jurisdiction to hear and determine certain claims in this case, as set forth in Paragraph 25 of the Permanent Injunction, all applicable legal and equitable doctrines still apply to claims within that jurisdiction.

Accordingly, the Suquamish motion to dismiss is GRANTED, and this Request for Determination is DISMISSED. To the extent that this ruling differs from the ruling issued in Subproceeding 05-03, that difference is compelled, as noted above, by the prior history of these two parties, and by the additional argument of laches asserted by the Suquamish in this subproceeding.

DATED this 27th day of October, 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS - 6