1
2
3
4
5

The Honorable Ricardo S. Martinez

6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

UNITED STATES OF AMERICA, et. al.,

Civil No. C70-9213

10

Plaintiffs,

v.

Sub-Proceeding No. 01-01
(Culverts)

11
12

STATE OF WASHINGTON, et. al.,

Defendants.

WASHINGTON ASSOCIATION OF
COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S
MOTION FOR SUMMARY
JUDGMENT

13
14

**NOTE ON MOTION CALENDAR:
SEPTEMBER 29, 2006**

15
16
17

## I.  INTEREST OF AMICUS CURIAE

18
19
20
21

The Washington State Association of Counties ("WSAC") is a non-profit, non-partisan organization that represents Washington's counties before the state legislature, the state executive branch, and regulatory agencies. Although membership is voluntary, WSAC consistently maintains 100% participation from Washington's 39 counties.

22
23
24
25

WSAC is interested in the instant litigation as its members are responsible for the maintenance and construction of numerous county roads and culverts. WSAC anticipates that the plaintiffs will seek to extend any determination by the Court in this matter with respect to state constructed and maintained culverts to such county roads and culverts.[1] Thus, WSAC has requested

26
27
28

---

[1]The discovery conducted by the parties indicates that many of the Plaintiff-Intervenor Tribes claim knowledge of County maintained roads that allegedly constitute fish passage barriers. *See, e.g., Plaintiff-Intervenor Tribes' Answers and Responses to Washington's Third Discovery Requests*, Port Gamble S'Klallam's answer to Interrogatory 137 (Kitsap

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 1

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175  FAX (360) 753-3943

1    and has been granted amicus curiae status in this matter.

2          While WSAC's position in this litigation is similar to that of the State of Washington,

3    WSAC's interest varies from the State's interests in some areas.

4          •      Statewide, the counties are responsible for 39,876.97 miles of county roads,[2] while

5                 the Washington State Department of Transportation is responsible for less than one

6                 fifth that amount.[3]

7          •      Counties have been involved in building roads in Washington since territorial days,

8                 the State did not begin to participate in road building until approximately 1909.

9          •      Counties build and maintain roads primarily with funds raised locally, while the State

10                raises funds for such projects throughout the state.

11         •      Counties have restrictions placed upon their ability to raise revenue that do not apply

12                to the State.

13         •      Counties are forced to accept former State Highways when the Washington State

14                Department of Transportation elects to vacate the highway.[4]

15         •      Many counties are experiencing severe economic distress in rendering those services

16                deemed essential by their citizens.[5]

17         •      The State is barred from committing counties to new programs that must be paid out

18                of local revenue.[6]

19

20   County roads and culverts); Deposition of John Klochak, at 51 (July 21, 2006) (Skagit County culverts); Deposition of
     Russ Ladley, at 45-46, 53-54, and 86 (April 25, 2006) (Pierce County culvert and levee); Deposition of Larry
21   Wasserman, at 70-71 (May 22, 2006) (county and private culverts); Deposition of Jay Zischke, at 60 (April 17, 2006)
     (Kitsap County culvert); Deposition of Stanley G. Jones, at 12 (July 24, 2006) (Snohomish County culvert).
22
          [2]Wash. Assoc. of County Officials, *Directory of County Officials in Washington State*, at 51-53 (2005).
23
          [3]Wash. Dept. of Transportation, *State Highway Log Planning Report 2005*, at 50 (May 4, 2005) (total miles
24   of State highways in Washington is 7,045.81); Declaration of Paul Wagner in Support of Washington's Motion for
     Summary Judgment, at ¶ 4 (August 2006).
25
          [4]*See* RCW 36.75.090.
26
          [5]The State supplements the income of some counties as the local tax base is insufficient to meet all of the
27   essential needs of their citizens. *See* Laws of 2005, ch. 450.

28        [6]*See* RCW 43.135.060; RCW 36.75.090.

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 2

- • Counties are not involved in managing the State's fisheries.

- • County culverts are frequently situated between the State maintained culverts and fish bearing bodies of water.[7]

## II.  ARGUMENT

### A.   THE TREATY

The Tribes, in their discovery responses, essentially claim that the treaties implicitly reserved to them a "negative easement or negative servitude" in the case area lands.[8]  This servitude allegedly burdens everybody's lands, those owned by the State, by the counties, and by private citizens.  No language in the treaties can reasonably be construed as reserving such a right.

In Article I of each treaty, the Tribes expressly "cede, relinquish, and convey to the United States, all their right, title, and interest in and to the lands and country occupied by them," except for the land interests expressly reserved in the treaties.[9]  The only easement that is expressly reserved in the treaties is an easement guaranteeing tribal members reasonable access to "usual and accustomed" fishing places.[10]   There is no express fish passage easement or environmental servitude that allows Tribes to preempt all state and local land use regulation.  Case law does not allow a court to read

---

[7]*See* Declaration of Paul J. Wagner in Support of Washington's Motion for Summary Judgment, at ¶ 5 (August 7, 2006).

[8]Tribes' Answer to Interrogatory 70; *see Skokomish Indian Tribe v. United States*, 410 F.3d 506, 527 (9th Cir. 2005) (en banc; Berzon, J., dissenting in part); *United States v. Washington*, 694 F.2d 1374, 1381 (9th Cir. 1982), *vacated*, 759 F.2d 1353 (9th Cir. 1985) (en banc); *United States v. Washington*, No. 9213-II, Plaintiff's Supplemental Memorandum in Support of Motion for Partial Summary Judgment at 14-18 (W.D. Wash. Jan. 12, 1979) (Dkt #5542). *See also* Michael C. Blumm & Brett M. Swift, *The Indian Treaty Piscary Profit and Habitat Protection in the Pacific Northwest: A Property Rights Approach*, 69 U. COLO. L. REV. 407, 470 & n.308 (1998); Gary D. Meyers, *United States v. Washington (Phase II) Revisited: Establishing an Environmental Servitude Protecting Treaty Fishing Rights*, 67 OR. L. REV. 771 (1988); Brian J. Perron, *When Tribal Treaty Fishing Rights Become a Mere Opportunity to Dip One's Net into the Water and Pull it out Empty: The Case for Money Damages When Treaty-Reserved Fish Habitat is Degraded*, 25 WM. & MARY ENVTL. L. & POL'Y REV. 784, 814-18 (2001); Mary Christina Wood, *The Tribal Property Right to Wildlife Capital (Part II): Asserting a Sovereign Servitude to Protect Habitat of Imperiled Species*, 25 VT. L. REV. 355 (2001).

[9]*E.g.*, Treaty with Nisquallys (Treaty of Medicine Creek), art. I, 10 Stat.  1132 (Dec.  26, 1854).

[10]E.g., *United States v. Winans*, 198 U.S. 371, 381, 384 (1905); *Seufert Bros. Co. v. United States*, 249 U.S. 194, 199 (1919); *United States v. Washington*, 157 F.3d 630, 654 (9th Cir. 1998).

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 3

implied easements or servitudes into the treaties.[11]

The Treaty With Nisquallys (Treaty of Medicine Creek), 10 Stat. 1132 (Dec. 26, 1854), as well as the other five treaties involved in this case do secure a right of taking fish in common with all citizens.[12]  This right is sui juris, but has been likened by various courts to a quasi co-tenancy.[13]  A co-tenant, absent a specific agreement to the contrary, cannot maintain an action against his co-tenant to compel them to contribute to the costs of improvements to the property.[14]  The Treaties at issue do not contain such an agreement.[15]  Accordingly, the State's motion for summary judgment should be granted.

## B.   NEITHER THE COUNTIES NOR THE STATE HAVE ENGAGED IN WASTE

A co-tenant does have a duty to the other co-tenants to avoid "waste".  "Waste" generally refers to the abuse, destruction, or improper use of real property by a person who is rightfully in possession.  8 Richard R. Powell & Michael A. Wolf, *Powell on Real Property*, P 636, at 56-3 (2000).  The Ninth Circuit has indicated that the concept of "waste" is a useful analogy when resolving fishing disputes in *United States v. Washington*, 520 F.2d 676, 685 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086 (1976).

Generally speaking, in order to constitute "waste" under the law of real property, an act or

---

[11]*Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408, 423 (1989) (White, J.); *id.* at 447 (Stevens, J.) (no implied "equitable servitude" in Yakama Treaty entitling Yakama Nation to control use of non-Indian land in "open" area of Yakama Reservation); *United States v. Washington*, 694 F.2d at 1381 (rejecting Tribes' treaty-based claim of a "comprehensive environmental servitude"), *vacated*, 759 F.2d at 1354; *United States v. Vulles*, 282 F. Supp. 829, 831-32 (D. Mont. 1968) (no implied treaty-based easement across private land to get to "open and unclaimed lands"), *rev'd in part, sub nom. Confederated Salish & Kootenai Tribes v. Vulles*, 437 F.2d 177 (9th Cir. 1971) (Tribe had prescriptive easement under state law); *cf. Klamath Tribes v. Pacificorp*, 2005 WL 1661821 (D. Or. 2005) (Tribes' claim that fish-blocking dam trespassed upon on-reservation treaty fishing rights did not allege an invasion of an interest in land).

[12]*Washington v. Washington State Commercial Passenger Fishing Vessel Association*, 443 U.S. 658, 684-85 (1979).

[13]*United States v. Washington*, 520 F.2d 676, 686 n.3 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086 (1976).

[14]C. Moynihan, *Introduction to the Law of Real Property Second Edition*, at 216-17 (1988).

[15]Recently, the Ninth Circuit rejected the Skokomish Tribe's attempt to read an implied private right of action for damages into the Point No Point Treaty. *Skokomish Indian Tribe v. United States*, 410 F.3d 506 (9th Cir. 2005) (en banc).  The same fate should meet the Tribes' current attempt to find an implied right of action to force the State to finance improvements to the fishery.

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 4

omission must:

      (1) be an unreasonable and improper use, abuse, mismanagement, or omission of duty;

      (2) relate to real property;

      (3) be committed or suffered by one rightfully in possession of the property in question; and

      (4) result in substantial injury to the real property.

*E.g.*, *Graffell v. Honeysuckle*, 30 Wn.2d 390, 398, 191 P.2d 858 (1948); *accord* Restatement (Second) of Property § 12.2(2) comment a (1977) (identifying the same elements for "impermissible changes in the physical condition of property"). The plaintiffs have not satisfied any of these elements.

    **1.**    **The Counties' and the State's Use of Its Property Has Not Been Unreasonable or Improper**

      As discussed in *Washington's Motion for Summary Judgment, and Argument in Support*, at 7-8, the State highways provide crucial access for economic development for all citizens of the state and for the Plaintiff Tribes' reservations. Similarly, the county roads serve the economic development of the Plaintiff Tribes' reservations.[16] The roads built by the State and the counties have been subject to state law requiring fish passage,[17] and to various federal environmental laws, such as the Endangered Species Act.[18] Under these facts, the construction of State and county roads cannot be considered an "unreasonable or improper use" of county property.

      While some county and state road culverts may currently block fish passage, many do not. Damage to the originally installed culverts caused by age, weather, ground movement, and waterflow

---

[16]*See, e.g., Plaintiff-Intervenor Tribes' Answers and Responses to Washington's Third Discovery Requests*, Port Gamble S'Klallam's answer to Interrogatory 137 (indicating that Port Gamble S'Klallam Tribe's reservation is served by a Kitsap County-maintained road).

[17]Washington law has required fish passage since statehood. 1889-90 Wash. Laws pp. 107-08, *codified as amended at* RCW 77.557.030. A 1950 Washington Attorney General Opinion confirmed that the law applies to highway culverts. Op. Atty. Gen. 1949 to 1951, No. 304 (July 19, 1950).

The Washington Department of Fish and Wildlife (WDFW) and its predecessors have developed standards for culvert design and for identifying culverts that block fish passage. The standards are continually updated as new science becomes available. *See Washington's Motion for Summary Judgment, and Argument in Support*, at 7.

[18]*See* Declaration of Donald Haring in Support of Washington's Motion for Summary Judgment.

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 5

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175  FAX (360) 753-3943

which the counties and the State have not yet repaired constitutes normal "wear and tear".[19]  The counties, like the State, are actively working to identify the fish-blocking culverts and to repair such culverts "consistent with availability of funds."[20]    The plaintiffs cannot establish that it is unreasonable to utilize available funds to achieve durable and efficient fish passages, nor is it mismanagement for the State or a county to first utilize it funds to provide essential public services, such as police, before allocating funds to renovate deficient culverts.  "A cotenant cannot be improved out of his estate."[21]

> **2.**    **The Tribes Have Not Established Their Right to Possess The Subject Property**

The Tribes are seeking to force the State, and presumably later, the counties, to immediately repair all fish-blocking culverts.  The Tribes' claim is not based upon a specific term in the treaties establishing a conservation easement, nor any provision of the treaties requiring the other party to the treaties, the United States, or a non-party to the treaties, the State,[22] to "maintain the fishery in as good condition as when the treaty was signed."  Absent such specific language, neither the State nor the counties can be found to have a duty to immediately return every culvert to a condition that allows for the same flow of fish as existed prior to the erection of the culvert.  *See, e.g.*, *Sutera v. Go Jokir, Inc.*, 86 F.3d 298, 302 (2nd Cir. 1996); 28 C.J.S. *Easements* § 94, at 774 n. 38 (1941).  Accordingly, the State's motion for summary judgment should be granted.

> **C.**    **The Plaintiffs Have Not Established a Culvert-Caused "Substantial Injury" to the Treaty Right of Taking Fish at Any Usual and Accustomed Place**

Finally, neither the Tribes nor the United States have established a culvert-caused "substantial injury" to the treaty right of taking fish at any usual and accustomed place.  Nor can they

---

[19]*See* Declaration of Paul J. Wagner in Support of Washington's Motion for Summary Judgment, at ¶ 3 (August 7, 2006).

[20]*United States v. Washington*, 384 F. Supp. 312, 417 (W.D. Wash. 1974), *aff'd* 520 F.2d 676 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086 (1976) (Inj. ¶ 16) ("state defendants shall immediately and expeditiously, consistent with availability of funds, begin to gather data and otherwise increase their technical capability."); Deposition of Jay Zischke, at 60 (April 17, 2006) (discussing efforts to obtain funds to fix two Kitsap County owned culverts).

[21]C. Moynihan, *Introduction to the Law of Real Property Second Edition*, at 216-17 (1988).

[22]The State is not a party to the Treaties. *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 513 (9th Cir. 2005) (en banc).

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175  FAX (360) 753-3943

show any disregard of the Tribes' rights. To the contrary, the State and the counties have been actively working to improve the fishery.[23] The showing by the Tribes falls far less than that necessary for court intervention or court oversight of the State's and counties' road improvement budget. Thus, summary judgment should be granted to the State.

## III. THE DOCTRINES OF LACHES BAR THE PLAINTIFFS' CURRENT ACTION FOR A CONSERVATION EASEMENT

The Supreme Court recently ruled in *City of Sherrill v. Oneida Indian Nation*, 125 S. Ct. 1478 (2005), the equitable doctrines, such as laches, acquiescence, and impossibility, can, in appropriate circumstances, be applied to Indian land claims. These doctrines serve to bar the Tribes' latest request for a conservation easement in the State's culverts.

The right the are asserting allegedly stems from treaties signed 150 years ago. The Tribes first took steps to enforce this implied property right in 1976, when they requested the court to resolve the question of the State's duty to prevent environmental harm that adversely affected the Treaty right of taking fish. In the course of litigating this issue, the Tribes and the United States specifically identified culverts as a habitat problem affecting fish.[24] The fact that culverts were serving to impede some fish migration in Washington State waters was well established in the public domain.[25]

---

[23] *See generally*, Declaration of Paul J. Wagner in Support of Washington's Motion for Summary Judgment; Declaration of Donald Haring in Support of Washington's Motion for Summary Judgment; Second Declaration of Alex Nagygyor; Declaration of Michael J. Allen; Deposition of Martin Fox, Ph.D., at 34 (June 29, 2006) (counties have conducted rigorous reviews of their culverts); Deposition of John Klochak, at 51 (July 21, 2006) (Skagit County has fixed some of its blocking culverts).

[24] *See United States v. Washington*, No. 9213-II, Plaintiff's Supplemental Memorandum in Support of Motion for Partial Summary Judgment at 37 (W.D. Wash. Jan. 12, 1979) (Dkt #5542). ("The improper placement of culverts is, however, a chronic problem in streams supporting migratory fish. The watershed reports list 136 improperly placed culverts which currently exist in the case area.").

[25] *See, e.g.,* Wash. Dept. of Fisheries, *A Catalog of Washington Streams and Salmon Utilization: Volume 2 Costal Region*, at 05, 401, 601, 1101, 1701 (November 1975) ("Culverts not properly installed often create outfall drops and velocities sufficient to prevent upstream passage of adults." ; "Improper installation of road culverts and log and debris barriers may periodically limit access of coho salmon to tributaries of the Dickey River"; "poor culvert installation on numerous tributaries, hinder coho migration"; "Improper culvert installations are also known to impede or block fish migrations."; "An improperly installed culvert on Twin Creek at mile 0.3 is barrier to salmon movement.").

WASHINGTON ASSOCIATION OF PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175 FAX (360) 753-3943

1   The environmental issue was initially resolved in the Tribes' favor in the District Court, but

2   the Ninth Circuit, sitting en banc, vacated the decision holding that:

3   > The State of Washington is bound by the treaty.  If the State acts for the primary
    > purpose or object of affecting or regulating the fish supply or catch in noncompliance
4   > with the treaty as interpreted by past decisions, it will be subject to immediate
    > correction and remedial action by the courts.  In other instances, the measure of the
5   > State's obligation will depend for its precise legal formulation on all of the facts
    > presented by a particular dispute.  The trial court is instructed to vacate its judgment
6   > with reference to the environmental aspect of the case.

7   *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir.  1985) (*en banc).*

8   The plaintiffs did not immediately return to the District Court to ask for a determination of

9   the State's obligations with respect to the improperly installed culverts.  Nonetheless, the State

10  continued its efforts to develop solutions to fish passage problems.[26]  The State has reported its

11  progress at least annually since 1992.  Despite this wealth of information, the plaintiffs did not bring

12  the current action until January 2001, more than three years after the Washington State Department

13  of Transportation published its Fish Passage Program Final Report in June of 1997,[27] and 22 years

14  after first raising the issue of culverts in this court.  Even now, the plaintiffs have made no effort to

15  press their claim against the local government and private owners of potential fish blocking culverts.

16  Throughout the 16 year period between the Ninth Circuit's en banc decision vacating the

17  prior conservation order and the initiation of the current litigation, all culvert installations under

18  State highways and County roads were subject to extensive regulations governing hydraulic

19  projects.[28]  The hydraulic projects permit process, as well as the county road design process and

20  county budget process, offer ample opportunities for public input.

21  Here, the Tribes, like the Oneida Indian Nation and the Cayuga Indian Nation of New York,[29]

22

23

24  [26]*See, e.g.,* Chapter 77.95 RCW (Salmon Enhancement Program); RCW 77.95.160, formerly RCW 75.50.160 (1995 law creating fish passage removal task force; task force includes at least one tribal representative).

25  [27]*See, e.g., Plaintiff-Intervenor Tribes' Answers and Responses to Washington's Third Discovery Requests,* Interrogatory No.  144, at 113-14.

26

27  [28]*See* Chapter 220-110 WAC.

28  [29]*See City of Sherrill v.  Oneida Indian Nation*, 161 L. Ed. 2d 386, 125 S. Ct.  1478 (2005); *Cayuga Indian Nation of New York v.  Pataki*, 413 F.3d 266 (2d Cir.  2005).

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 8

1    are seeking to disrupt historical reality and the governance of numerous Washington counties, to

2    "regain" sovereignty over certain land in the form of a conservation easement.   The same

3    considerations that barred the claims of the Oneida and Cayuga Indian Nations and the claims of the

4    United States on behalf of the Cayuga Indian Nation, bars the instant claims.[30]

5    Generations have passed during which the State, the counties, and non-Indian citizens have

6    constructed culverts[31] under roads in watersheds over which the plaintiffs are now attempting to

7    assert an implied negative easement.   For over a quarter of a century, the Tribes and the United

8    States have been aware that culverts can, and that some do, block fish passage.   Nonetheless, both

9    the Tribes and the United States have allowed the State to establish a single, uniform procedure by

10   which all new culverts[32] and restoration programs are judged.   Whether a culvert is being installed

11   or modified by the State, a county, or a private landowner, the plan must be submitted for a

12   hydraulics project permit.

13   The plaintiffs now seek to disrupt this orderly process, which is leading to an improved

14   fishery, to impose an easement in favor of each of the 21 beneficiaries of the Treaties.   Essentially,

15   such an easement would mean that no culvert could be installed or altered without the approval of

16

17   [30]Courts have long applied various equitable doctrines in an action to enforce an easement, particularly a

18   negative easement.  *See, e.g., Bickell v. Moraio*, 117 Conn. 176, 167 A. 722, 724 (1933) (the right to enforce a negative
     easement can be lost by conduct on the part of any owner of the easement, by acquiescence in violations of the restrictive

19   covenants or otherwise, which would constitute laches or an abandonment of their rights); *Osius v. Barton*, 109 Fla.
     556, 147 So. 862, 865-66 (1933) (a court of equity has the jurisdiction to cancel a negative easement);  *Johnson v.*

20   *Robertson*, 156 Iowa 64, 135 N.W. 585, 591-93 (1912) (the doctrine of laches can bar the enforcement of a negative
     easement); *Duncan v. Central P. R. Co.*, 85 Ky. 525, 4 S.W. 228 (1887) (refusing to enforce a negative easement on

21   equitable grounds);  *Myers v. Salin*, 13 Mass. App. Ct. 127, 431 N.E.2d 233, 241 (1982) (refusing to enforce a
     negative easement under the doctrine of laches); *Evergreen Village Civic Ass'n v. Oakborn, Inc.*, 327 Mich. 161,  41

22   N.W.2d 509 (1950) (refusing to enforce negative easement on equitable grounds); *Gibbs v. Kimbrell*, 311 S.C. 261, 428
     S.E.2d 725 (1993) (acknowledging that laches may be a bar to the enforcement of a negative easement).

23

24   [31]It is especially ironic that the United States is seeking to use culverts that were undoubtedly installed in
     conformity with the standards they promulgated as a means to supplant the policy decisions regarding budget priorities

25   made by our elected State and local officials, with the judgment of 21 separate Tribal governments.  *See* Declaration
     of Matthew J. Witecki in Support of Washington's Motion for Summary Judgment (protocols and techniques set forth

26   in Federal Highway Administration 's Hydraulic Engineering Circular #10 are generally accepted as the industry standard
     for the design of road culverts).

27   [32]While it is unlikely that any new State highways will be constructed, new county roads and city roads, some

28   of which will require culverts, are being built to provide ingress and egress to new residential and commercial
     development.

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 9

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175  FAX (360) 753-3943

1  each of the 21 Tribes in addition to that of the State.  Any funding plan that sought to prioritize the

2  remediation of problematic culverts would require the approval of each of the 21 Tribes in addition

3  to that of the State.  The impracticability of transferring to Indian control administration over lands

4  that for generations has been in the hands of local government and innumerable innocent purchasers

5  dooms the plaintiffs' claims under the doctrine of laches.[33]    The State's motion for summary

6  judgment should, therefore, be granted.

## III. CONCLUSION

8      The plaintiffs' delay in pressing their fish passage easement or environmental servitude claim

9  warrants its rejection.  The settled expectations of Washingtonians is that the delicate balancing act

10  demanded by limited public resources and income and numerous competing local needs will be made

11  by democratically elected state and local officials, rather than by Tribal governments, the federal

12  government, or by a court.   Moreover, the absence of any textual support in the treaties for the

13  proposed restructuring of local government mandates the rejection of the plaintiffs' claims.

14      Dated this 14th day of August, 2006.

15          Respectfully Submitted,

18          /s/ *Pamela B.  Loginsky*
            Pamela B. Loginsky, WSBA # 18096
19          Attorney for Amicus Curiae Applicant
            Washington Association of Counties
20          206 10th Ave.  SE
            Olympia, WA 98501
21          Telephone: (360) 753-2175
            Fax: (360) 753-3943
22          E-mail: pamloginsky@waprosecutors.org

_____

26      [33]*See, e.g., City of Sherrill v.  Oneida Indian Nation*, 161 L.  Ed.  2d 386, 125 S. Ct.  1478 (2005) (rejecting,
27  under the doctrine of laches, a claim by the Oneida Indian Nation that it should be allowed to revive its ancient
    sovereignty, in part, over parcels located within the City of Sherrill); *Cayuga Indian Nation of New York v.  Pataki*, 413
    F.3d 266 (2d Cir.  2005), *cert.  denied*, 126 S. Ct.  2021, 2022 (2006)  (rejecting, under the doctrine of laches, a claim
28  by the Cayuga Indian Nation that it should be allowed to take possess of a large swath of central New York State).

WASHINGTON ASSOCIATION OF COUNTIES' MEMORANDUM IN
SUPPORT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT— 10

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175  FAX (360) 753-3943