HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiff, <br><br> v. <br><br> STATE OF WASHINGTON, et al., <br><br> Defendants. | Civil No. C70-9213 <br><br> Sub-Proceeding No. 01-01 (Culverts) <br><br> PLAINTIFF-INTERVENOR TRIBES' ANSWERS AND RESPONSES TO WASHINGTON'S THIRD DISCOVERY REQUESTS |

TO:         STATE OF WASHINGTON, Defendant

AND TO:    FRONDA WOODS, Attorney of Record for Defendant

AND TO:    STEVE E. DIETRICH, Attorney of Record for Defendant

AND TO:    PHILIP M. FERESTER, Attorney of Record for Defendant

COME NOW, the Plaintiff-Intervenor Tribes, and answer and respond to Defendant State of Washington's Third discovery requests pursuant to Fed. R. Civ. P. 26, 29, 33 and 34, the corresponding Local Civil Rules for the United States District Court – Western District of Washington ("LCR"), and the proposed Scheduling Order for this subproceeding.

C70-9213, Subproceeding 01-1 (Culverts)

PLAINTIFF-INTERVENOR TRIBES' ANSWERS AND
RESPONSES TO WASHINGTON'S THIRD DISCOVERY
REQUESTS – PAGE 1

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

as an admission that they accept the discovery request or that the response or objection thereto constitutes admissible evidence. Similarly, the fact that the Plaintiff-Intervenor Tribes have responded to all or part of a request is not intended to and shall not be construed to be a waiver by them of all or part of any objection to other requests. The Plaintiff-Intervenor Tribes' answers to any discovery requests herein do not constitute a waiver of their right to object to future additional or supplemental discovery requests regarding the same or similar matters.

6. The following responses use the common understanding of the term "culvert" for all responses: That is, a structure designed to channel a watercourse under a roadway, and not a dam, a tide gate, a bridge, or similar non-culvert structure. Likewise, several discovery requests use the phrase "fish passage barrier" without defining it. We have interpreted this phrase to mean road culverts which present a barrier to fish passage. A broader interpretation would be objectionable as it would be unduly burdensome and would not be calculated to lead to the discovery of admissible evidence.

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

INTERROGATORY NO. 70: Do you contend that the Stevens Treaties reserve a fish passage easement or servitude in the lands that the Tribes ceded in Article I of each of the Stevens Treaties?

ANSWER: Objection. Interrogatory is vague and ambiguous. The term "fish passage easement or servitude" is not defined. Also, the scope of the easement or servitude that is the subject of this Interrogatory is unknown so that it cannot be answered without assumptions and speculation as to the State's meaning. In addition, the usual and

C70-9213, Subproceeding 01-1 (Culverts)

PLAINTIFF-INTERVENOR TRIBES' ANSWERS AND
RESPONSES TO WASHINGTON'S THIRD DISCOVERY
REQUESTS – PAGE 4

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

accustomed fishing grounds and stations of the Tribes are neither limited nor circumscribed nor even meaningful in reference to the lands ceded by the Tribes in the Stevens Treaties.

Notwithstanding these objections, the Tribes contend that the Stevens Treaties secure to them the "right of taking fish" which imposes a duty upon the State to refrain from diminishing the number of fish that would otherwise return to or pass through the tribe's usual and accustomed fishing grounds and stations by, among other things, blocking fish passage to the extent that such diminishment would impair the tribes' ability to earn a moderate living from the fishery. This could be characterized as a negative easement or negative servitude.

INTERROGATORY NO. 71: Do you contend that the basis for the duty alleged in ¶ 4.1 of your Request For Determination is that "State owned roads and highways" lie within lands that the Tribes ceded to the United States in the Stevens Treaties?

ANSWER: No. As ¶ 4.1 of our Request For Determination clearly states, the basis for the State's duty described is that the Stevens Treaties secure to the tribes the "right of taking fish".

INTERROGATORY NO. 72: Do you contend that the State of Washington and the Tribes are co-owners of the fish in the case area?

ANSWER: Objection. The term "co-owner" is not defined and can potentially include any number of rights, duties, and obligations. Also, the Interrogatory is not clear

C70-9213, Subproceeding 01-1 (Culverts)

PLAINTIFF-INTERVENOR TRIBES' ANSWERS AND
RESPONSES TO WASHINGTON'S THIRD DISCOVERY
REQUESTS – PAGE 5

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

resurveyed following project completion in order to track habitat and morphologic change. These data on changes in bed elevation, gradient, substrate size, LWD load, pool frequency, etc. will help determine the effectiveness of these restoration treatments over the short- and long-term.

SQUAXIN ISLAND:

SKOKOMISH:

QUINAULT:

YAKAMA:

INTERROGATORY NO. 136: Please identify the source of the funds that the Stillaguamish Tribe used to undertake the activities described in the second sentence of its answer to Interrogatory No. 34, Washington's First Discovery Requests to Plaintiff-Intervenor Tribes. ("The Stillaguamish tribe has replaced several blocking culverts on private county and federal lands, fenced livestock out and planted several miles of riparian habitat, placed wood in channel including 8 engineered log jams (ELJ's) in the mainstem north fork, funded road enhancement and abandonment on private and federal land.")

ANSWER:

INTERROGATORY NO. 137: Please list the Tribes that have enacted a natural resources code, a land use code, a zoning code, or some combination thereof.

ANSWER:

C70-9213, Subproceeding 01-1 (Culverts)

TRIBES' THIRD INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS
PROPOUNDED TO DEFENDANT – PAGE 103

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

1    NWIFC:

2    SKAGIT RIVER SYSTEM COOPERATIVE:

3    POINT NO POINT TREATY COUNCIL

4

5    LUMMI: Lummi Nation Code of Laws titles 10, 13, 15, 17, 18.

6    PUYALLUP: The Puyallup Tribe has enacted some codes that would be in this

7 category.

8

9    SWINOMISH: Yes

10    UPPER SKAGIT:

11    SUQUAMISH: N/A

12    STILLAGUAMISH:

13

14    NISQUALLY: Nisqually Tribe has enacted several codes that fit the description in

15 the request.

16

17    PORT GAMBLE S'KLALLAM: In June 2004, Port Gamble S'Klallam Tribe

18 Business Committee adopted an Environmental Protection Code (EPC), which outlines land

19 development and permitting procedures on the Tribe's reservation. The EPC does not

20 specifically mention culverts or the requirement that they pass fish freely. However, the EPC

21 states:

22

23    "Development in sensitive areas, such as streams, wetlands, marine

24 shorelines, steeply sloped land, flood plains, erosion hazard areas and wetlands, if

25

26 C70-9213, Subproceeding 01-1 (Culverts)

TRIBES' THIRD INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS
PROPOUNDED TO DEFENDANT – PAGE 104

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

allowed, shall have only a minimum level of impact upon the functioning of the natural systems."

This provision was deemed adequate, at the time, because the Tribe is not in the habitat of constructing road crossings over fish-bearing streams. The Tribe's 1234-acre reservation is served by a Kitsap County-maintained road (Little Boston Rd.) that does cross several fish-bearing streams such as Middle, Little Boston, and Bars creeks. Both Middle and Little Boston Creek crossings are fish passage barriers, though the Tribe lacks sufficient funds to remedy these barriers and views this responsibility as belonging to the County. The Tribe has tried repeatedly to secure federal funds to replace the Middle Creek culvert but has not been successful.

<u>JAMESTOWN S'KLALLAM</u>: The Jamestown S'Klallam Tribe has enacted a Fishing Ordinance, Title 6, and a Hunting Ordinance, Title 9.

<u>LOWER ELWHA KLALLAM</u>: The Lower Elwha Klallam Tribe has enacted two such codes: a flood-control levee protection code; and a ground-water protection code.

<u>SAUK-SUIATTLE</u>: The Sauk-Suiattle Indian Tribe has enacted the following: "Sauk-Suiattle Fishing Ordinance" and "Sauk-Suiattle Hunting Ordinance."

<u>NOOKSACK</u>:

<u>HOH</u>:

<u>MAKAH</u>: The Makah Tribe does not have any codes denominated as such, but has codes related to the management of fishing and whaling, a health code and water quality standards.

C70-9213, Subproceeding 01-1 (Culverts)

TRIBES' THIRD INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS
PROPOUNDED TO DEFENDANT – PAGE 105

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

INTERROGATORY NO. 142: If your answer to Interrogatory No. 141 is yes, please describe how the repair of state-owned culverts that lie upstream of non-state-owned blockages would enable the Tribes to earn a moderate living from the fishery.

ANSWER: Depending upon the characteristics of the non-state owned culvert, the State may be required to fix or compel the owner to fix the downstream culvert.

INTERROGATORY NO. 143: If a specific culvert passes only fish of 6 inches or larger, do you contend that this culvert would violate the State of Washington's obligations under the Stevens Treaties, as you contend them to be?

ANSWER: Yes, to the extent that the standard described by this Interrogatory would diminish the number of fish that would otherwise return to or pass through the tribe's usual and accustomed fishing grounds and stations, to the extent that such diminishment would impair the tribes' ability to earn a moderate living from the fishery, it would violate the State of Washington's obligations under the Stevens Treaties.

INTERROGATORY NO. 144: When did you first become aware that some state-owned culverts block fish passage?

ANSWER: Objection. This Interrogatory is not reasonably calculated to discover relevant evidence. The subject matter of this Interrogatory has no relevance or bearing on any aspect or element of this case. Also, it is impossible to determine when individual tribal

C70-9213, Subproceeding 01-1 (Culverts)

TRIBES' THIRD INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS
PROPOUNDED TO DEFENDANT – PAGE 113

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

1  members or employees may have become aware that state-owned culverts blocked fish
2  passage. Notwithstanding these objections, the Tribes first became aware of the magnitude
3  of this problem when the Washington State Department of Transportation published its Fish
4  Passage Program Final Report, dated June 1997.
5
6
7
8  INTERROGATORY NO. 145: If you deny any Request For Admission in
9  Washington's Second Requests for Admission to Plaintiff-Intervenor Tribes, please explain
10 the basis for each denial.
11 ANSWER: N/A.
12
13
14 INTERROGATORY NO. 146: Please identify the person or persons who supplied
15 all or any part of the answers to any of Interrogatories 70 – 145. List the answer for which
16 each person is responsible for in whole or in part.
17 ANSWER:
18
19 NWIFC: NO. 112: Lyle Miyamura, Controller. NOS. 116 and 120: Wendy Bowman.
20 ALL OTHER RESPONSES: John Hollowed, Habitat Services Director
21 SKAGIT RIVER SYSTEM COOPERATIVE: Larry Wasserman: Interrogatory
22 Nos. 109, 122, 126. Steve Hinton: Interrogatory Nos 81, 84, 85, 87, 115, 118, 119, 122, 124,
23 126, 144, RFP Nos. 47. Michael Olis: Jeff Myers: 111, 114, 132, 134, RFP Nos. 133, 135.
24 POINT NO POINT TREATY COUNCIL: Steve Todd answered Interrogatories No.
25 81, 82, 83, 84, 109, 111, 115, 132, 133, 134, 135, and 144; and Request for Production No. 46
26

C70-9213, Subproceeding 01-1 (Culverts)

TRIBES' THIRD INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS
PROPOUNDED TO DEFENDANT – PAGE 114

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100

ANSWERS AND RESPONSES dated this 27th day of May, 2005.

| RAAS, JOHNSEN & STUEN, P.S. OFFICE OF SPECIAL COUNSEL | KANJI & KATZEN, PLLC |
|---|---|
| DANIEL A. RAAS, WSBA #4970<br>Counsel for the Lummi Indian Tribe<br>Tribal Coordinating Counsel | PHILLIP E. KATZEN, WSBA #7835<br>Co-Counsel for the Suquamish, Jamestown, Lower Elwha, Pt. Gamble Bands of S'Klallams, Nisqually, Nooksack, Sauk-Suiattle, Skokomish, Squaxin Island, Stillagaumish, and Upper Skagit Tribes<br>Tribal Coordinating Counsel |

MORISSET SCHLOSSER AYER et al.

MASON D. MORISSET, WSBA #273
Counsel for the Tulalip Tribe
Tribal Coordinating Counsel

## VERIFICATION

The undersigned, as Tribal Coordinating Counsel, and attorney for Plaintiff Tribe, Lummi Indian Nation, certifies to the best of his knowledge, information and belief, formed after a reasonable inquiry that the responses and objections are: (1) consistent with the Federal Rules of Civil Procedure and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy and the importance of the issues at stake in the litigation.

DATED this 27th day of May, 2005.

KANJI & KATZEN, PLLC

PHILLIP E. KATZEN, WSBA #7835

C70-9213, Subproceeding 01-1 (Culverts)

TRIBES' THIRD INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS
PROPOUNDED TO DEFENDANT – PAGE 118

Kanji & Katzen, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
206-344-8100