UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>STATE OF WASHINGTON, et al.,<br><br>  Defendants. | CASE NO. CV 9213<br>Subproceeding No. 89-305<br><br>ORDER GRANTING SUQUAMISH TRIBE'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court for consideration of the Suquamish Tribe's Motion for Summary Judgment as to their Request for Dispute Resolution. Dkt. # 31. The Request for Dispute Resolution was filed pursuant to authority conferred by the Amended Shellfish Implementation Plan ¶ 9.1. *United States v. Washington*, C70-9213, Subproceeding 89-3, Dkt. # 14331 (April 8, 2002).[1] The Suquamish Tribe asks that the Court adopt and enforce a plan proposed by the Suquamish for the harvest of clams on tidelands leased by A & K Trust ("Trust") at Chico Bay in Kitsap County, Washington. The Trust has opposed the motion. The Court heard oral argument on June 11, 2008, and the matter has been fully considered. For the reasons set forth below, the motion of the Suquamish Tribe shall be GRANTED.

DISCUSSION

---

[1] The undersigned judge was designated as the dispute resolution judge in 2002 when he was a United States Magistrate Judge. Since that date, he has been appointed as a United State District Judge, and no other Magistrate Judge has been designated as dispute resolution judge in the Amended Shellfish Implementation Plan.

ORDER GRANTING SUQUAMISH TRIBE'S
MOTION FOR SUMMARY JUDGMENT - 1

This is the second time these parties have been before the Court regarding the Suquamish Tribe's treaty harvest of clams from tidelands leased by A & K Trust. *See*, Subproceeding 89-303. In the prior dispute, regarding the Trust's leased tidelands at Erland's Point, the Court found that the clam beds there did not qualify as "existing beds on property owned or leased by Growers licensed by the State of Washington", as set forth in § 6.1 of the Revised Shellfish Implementation Plan. C70-9213, Subproceeding 89-303, Dkt. # 31, p. 6 (May 28, 2004). The Suquamish Tribe was therefore entitled to exercise its treaty-based right to harvest clams from those tidelands.

Three years later, the Tribes, the State of Washington, the United States, and certain shellfish growers reached an agreement, formalized in a Settlement Agreement which was filed with the Court on June 20, 2007. C70-9213, Subproceeding 89-3, Dkt. # 14476. The significant aspect of this Agreement is that the Tribes agreed that upon the fulfillment of certain contingencies, "any and all shellfish on 'covered tidelands' . . . are deemed as of the date of this Settlement Agreement to be 'staked and cultivated by citizens' for the purpose of implementing the Treaties. . ." Settlement Agreement, ¶ 6A. The designation of the "covered tidelands" as "staked and cultivated" thus brought those tidelands under the so-called Shellfish Proviso of the Stevans Treaties, which reserved to the Tribes the right of taking fish in common with all citizens of the Territory, "*Provided, however*, that they shall not take shellfish from any beds staked or cultivated by citizens." *United States v. Washington*, 157 F. 3d 630, 638 (9th Cir. 1998).

Apparently relying on the designation of "covered tidelands" as "staked and cultivated" beds in the Settlement Agreement, the Trust denied the Suquamish Tribe access to tidelands leased by the Trust at Chico Bay. The Tribe filed a Request for Dispute Resolution regarding these tidelands on June 14, 2007, and requested a preliminary injunction to enjoin any party from harvesting the clams until the matter could be resolved. The Trust and the Tribe stipulated to such an injunction, and as the additional party Clam Acres had not appeared in opposition, the injunction was entered. Dkt. ## 9, 13. The Tribe now seeks summary judgment on the issue presented in the Request for Dispute Resolution; that is, whether the designated tidelands leased by the Trust at Chico Bay are subject to treaty harvest by the

ORDER GRANTING SUQUAMISH TRIBE'S
MOTION FOR SUMMARY JUDGMENT - 2

Tribe, and whether the Tribe's proposal for organizing that harvest should be adopted.

In opposing the motion, the Trust first asserts that there are issues of fact as to whether it is entitled to intervene and participate in the Settlement Agreement. However, the Court has by separate Order granted the Suquamish Tribe's motion to deny the Trust's Notice and Request to Intervene in the Settlement Agreement. The Trust's tidelands at Chico Bay therefore do not qualify as "covered tidelands" within the meaning of that Agreement. In the absence of such qualification, this matter, like the previous dispute between the Tribe and the Trust, is governed by the terms of the Amended Shellfish Implementation Plan ("the Plan").

The Plan sets forth a specific procedure by which a shellfish grower and a Tribe with a treaty-based right to harvest naturally-occurring shellfish on tidelands owned or leased by that grower shall determine the Tribe's allocation of shellfish. Paragraph 6.1 of the Plan applies to shellfish beds on tidelands controlled by a grower who was licensed by the State of Washington as of August 28, 1995, the effective date of the original Shellfish Implementation Plan. The Court determined in the prior dispute between the Trust and the Suquamish Tribe that as of the relevant date, the Trust did not possess a grower's licence for the Erlands Point tidelands. Subproceeding C89-303, Dkt. # 31, p. 6. The Trust has submitted no evidence which would change that result for the Chico Bay tidelands.[2]

Shellfish beds which were not controlled by a licensed grower as of August 28, 1995 are addressed in ¶ 6.3 of the Plan. That paragraph sets forth specific procedures for a grower to give notice to Tribes who might be affected by the grower's aquatic farming activities on tidelands subject to that Tribe's treaty harvest rights. Nowhere has the Trust submitted any evidence that it has complied with the procedures set forth in ¶ 6.3 of the Plan. Instead, the Trust has offered inadmissible evidence purporting to demonstrate its efforts to develop some unspecified tidelands as commercial shellfish beds.

---

[2] The Trust has submitted as evidence of its shellfish farming activities a hand written memo from Paul Taylor of Taylor Shellfish Farms. The memo states in part, "We seeded 100,000 clams in 1997" and "I know you had oysters planted and at least a couple of predator nets when we first looked at the ground." The Tribe has objected to this memo as inadmissible hearsay, and the Court agrees. Even if the memo could be considered, it does not constitute evidence of shellfish farming activity by the Trust at Chico Bay; it does not identify who "we" are nor state where the clams were seeded and predator nets placed. Further, the only date given, 1997, is post-Implementation Plan.

ORDER GRANTING SUQUAMISH TRIBE'S
MOTION FOR SUMMARY JUDGMENT - 3

Trust's Response, Dkt. # 35, Exhibits A & B. At oral argument, the Trust argued that it is entitled to reap the fruits of its labor. However, ¶ 6.3 is crafted to ensure just that benefit to a shellfish grower. The Trust has failed to comply with the requirements of ¶ 6.3 of the Plan, and is not entitled to claim the benefits thereof.

## CONCLUSION

The Trust has presented no evidence that would create a factual issue with respect to the Suquamish Tribe's treaty-based right to harvest clams at the Trust's Chico Bay tidelands. Nor has the Trust presented any evidence or argument as to why the Court should not adopt the Tribe's proposal for proceeding with that harvest. Accordingly, the Tribe's motion for summary judgment is GRANTED. The Court shall sign and file the proposed Order presented by the Tribe, setting forth a reasonable and orderly procedure by which the parties may proceed with the harvest.

Dated this 13th day of June, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING SUQUAMISH TRIBE'S
MOTION FOR SUMMARY JUDGMENT - 4