Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, et al., <br><br> Defendants. | No. C70-9213 RSM <br><br> Subproceeding No. _____ <br><br> MAKAH INDIAN TRIBE'S REQUEST FOR DETERMINATION RE QUILEUTE AND QUINAULT USUAL AND ACCUSTOMED FISHING GROUNDS IN THE PACIFIC OCEAN |

1.  <u>Request for Determination.</u>  Plaintiff-Intervenor Makah Indian Tribe ("Makah") requests a determination of the usual and accustomed fishing grounds of Plaintiff-Intervenor Quileute Indian Tribe ("Quileute") and Plaintiff-Intervenor Quinault Indian Nation ("Quinault") in the Pacific Ocean, to the extent not specifically determined by Final Decision # I.

2.  <u>Jurisdiction.</u>  The Court has jurisdiction to make the requested determination pursuant to Paragraphs 25(a)(1) and 25(a)(6) of the Court's March 24, 1974, permanent injunction (384 F. Supp. at 419), as modified by the Court's Order Modifying Paragraph 25 of Permanent Injunction (Doc. No. 13599) dated August 23, 1993.

3.  <u>Factual and Legal Basis of the Request for Determination.</u>

    a.  <u>Prior Judicial Determinations of Usual and Accustomed Fishing Grounds in the Pacific Ocean.</u>

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 1

Case No. C70-9213, Subproceeding ____
(Quileute/Quinault U&A)

**ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM**
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

i.  In Final Decision # I, the Court determined that Makah, Quileute and Quinault had usual and accustomed fishing grounds in the Pacific Ocean.[1]  It determined that Makah's usual and accustomed fishing grounds "included the waters of the Strait of Juan de Fuca . . . extending out into the ocean to an area known as Swiftsure and then south along the Pacific coast to an area intermediate to Ozette village and the Quileute Reservation," as well as certain rivers and lakes.  384 F. Supp. at 364 (FF 65).  The Court determined that Quileute usual and accustomed grounds included certain rivers, lakes and streams and "the adjacent tidewater and saltwater areas."  384 F. Supp. at 372 (FF 108).  And, the Court determined that, in addition to certain rivers, lakes and streams, Quinault utilized "ocean fisheries" in "the waters adjacent to its territory."  384 F. Supp. at 374 (FF 120).

ii.  The Court did not define the precise boundaries of these Pacific Ocean usual and accustomed fishing grounds in Final Decision # I.  Moreover, the Court's decision was limited to waters within the jurisdiction of the State of Washington, *i.e.,* to waters within three miles of shore.  384 F. Supp. at 400 (CL 7).

iii.  After Final Decision # I, Makah invoked the Court's continuing jurisdiction to seek a determination that its usual and accustomed fishing grounds extended far offshore and a precise definition of the boundaries of those grounds.  In 1982, the Court determined that Makah's usual and accustomed fishing grounds extended approximately 40 miles offshore and were bounded on the west by longitude 125° 44' W. and on the south by a

---

[1] The Court also determined that the Hoh Indian Tribe ("Hoh") had usual and accustomed fishing grounds in the Pacific Ocean.  Because Hoh is not exercising or threatening to exercise its fishing rights in a manner that injures Makah, Makah is not seeking a determination of the location of Hoh's Pacific Ocean usual and accustomed fishing grounds in this subproceeding.

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 2

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

line drawn westerly from the Norwegian Memorial along latitude 48° 2' 15" N.  626 F. Supp. at 1467.  The Court's determination was affirmed by the Ninth Circuit Court of Appeals.  730 F.2d 1314.

   iv. Neither Quileute nor Quinault has sought a judicial determination of the offshore extent of its usual and accustomed fishing grounds in the Pacific Ocean or a precise definition of the boundaries of those grounds.  Except as otherwise noted below, the Court has made no such determination.

  b. <u>Treaty Fishing Areas Specified in Federal Regulations.</u>

   i. The Secretary of Commerce, acting through the National Marine Fisheries Services ("NMFS"), has promulgated regulations that specify boundaries in which Makah, Quileute and Quinault may exercise treaty rights to fish for salmon, halibut, groundfish, and highly migratory species in the Pacific Ocean.  The boundaries of the Makah fishing area in the NMFS' regulations are based on Makah's adjudicated usual and accustomed fishing grounds.  However, the boundaries of Quileute and Quinault's fishing areas in the NMFS' regulations are not based on a determination of those tribes' respective usual and accustomed fishing areas, but are an interim accommodation to Quileute and Quinault pending a judicial determination of those boundaries.

   ii. Non-treaty fishing organizations challenged NMFS' regulatory boundaries in a case involving the Pacific whiting fishery.  Quileute and Quinault submitted amicus briefs in this Court and in the Ninth Circuit Court of Appeals in which they argued: (1) the plaintiffs did not have standing to challenge NMFS' regulatory boundaries for their fishing areas because NMFS had not allocated Pacific whiting to them; and (2) even if the plaintiffs had

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 3

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

Z<small>IONTZ</small>, C<small>HESTNUT</small>, V<small>ARNELL</small>,
B<small>ERLEY</small> & S<small>LONIM</small>
2101 F<small>OURTH</small> A<small>VENUE</small>, S<small>UITE</small> 1230
S<small>EATTLE</small>, W<small>ASHINGTON</small> 98121
T<small>EL</small>. (206) 448-1230; F<small>AX</small> (206) 448-1230

standing, the courts could only determine whether NMFS' regulatory boundaries were a reasonable accommodation of their treaty right, leaving an actual determination of their usual and accustomed grounds to the Court in *United States v. Washington*. Without addressing the plaintiffs' standing, the District Court upheld NMFS' regulatory boundaries as reasonable in the absence of any judicial determination in *United States v. Washington* to the contrary. On appeal, the Ninth Circuit held that the plaintiffs did not have standing to challenge the regulatory boundaries for the Quileute or Quinault fishing areas because NMFS had not allocated any Pacific whiting to Quileute or Quinault. (Both the District Court and the Ninth Circuit upheld NMFS' regulatory boundaries for Makah's treaty fishing area.)

    iii. NMFS itself has stated repeatedly that its regulatory boundaries are not intended to establish usual and accustomed areas for purposes of *United States v. Washington* and are subject to revision based on a judicial determination of such areas in *United States v. Washington*. In the case referenced in the preceding paragraph, NMFS entered into a stipulation with the State of Washington in which NMFS stated that its regulatory boundaries are not intended to and do not prejudice the court proceedings in *United States v. Washington* and do not have any presumptive or precedential effect on any future or concurrent litigation in *United States v. Washington* to establish Quileute's or Quinault's usual and accustomed fishing grounds.

    iv. The western boundary of Quileute and Quinault fishing areas in the NMFS' regulations, in particular, was drawn by extending the adjudicated western boundary of Makah's usual and accustomed grounds (longitude 125° 44' W.) due south, and was not based on any determination of Quileute's or Quinault's actual usual and accustomed fishing grounds.

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 4

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

(Because of the shape of the coast, this boundary is approximately 40 to 50 miles offshore in the Quileute area and approximately 50 to 60 miles offshore in the Quinault area; in both cases it is farther offshore than in the Makah area.) Quileute and Quinault themselves have asserted that there was no factual basis for the western boundary established in the NMFS' regulations for their fishing areas and that the determination in the Makah case had no factual relevance to Quileute and Quinault usual and accustomed fishing grounds.

   v. In Subproceeding 96-1, in a joint preliminary injunction motion filed with Makah and Hoh, Quinault argued Quileute was fishing for black cod in Pacific Ocean areas south of Quileute's adjudicated usual and accustomed fishing grounds, even though it was fishing within NMFS' regulatory boundaries. Quinault argued that any reliance on NMFS' regulatory boundaries would be misplaced because it was the province of the Court to construe its judgment to give effect to the Court's original intention and because NMFS itself had been careful to note that its recognition of tribal fishing areas was subject to revision by the Court. In its ruling on the motion for preliminary injunction, the Court found Quinault had raised serious questions on the merits of this claim. However, the Court did not make a final determination of the matter because the subproceeding was settled after entry of the Court's preliminary injunction.

  c. <u>The Pacific Whiting Fishery.</u>

   i. Makah developed a treaty fishery for Pacific whiting beginning in 1996. Since then, Makah has been and remains the only tribe participating in the Pacific whiting fishery. Throughout this period, NMFS has made annual or biennial allocations or set-asides of Pacific whiting based on requests from Makah to accommodate the needs of the Makah fishery.

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 5

Case No. C70-9213, Subproceeding \_\_\_\_
(Quileute/Quinault U&A)

**ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM**
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

NMFS has determined that the amounts requested by Makah were within the scope of Makah's treaty entitlement based on the availability of Pacific whiting within Makah's adjudicated usual and accustomed fishing grounds. This Court and the Ninth Circuit Court of Appeals have affirmed NMFS' determination.

    ii.    Makah intensively manages its Pacific whiting fishery. The Tribe requires the presence of two observers on the at-sea mothership and a full-time port observer at the onshore plant that process fish harvested in the Tribe's fishery. To reduce bycatch of chinook salmon listed under the Endangered Species Act and Pacific coast rockfish stocks declared overfished under the Magnuson-Stevens Act, the Tribe requires the use of salmon excluder devices, conducts test fisheries to determine whether bycatch is low enough to open its fishery, restricts night fishing, immediately closes areas to fishing in which bycatch rates are high, and requires full retention and surrender of all overfished rockfish. All of these measures slow the harvest of Pacific whiting. In addition, Makah coordinates openings in the fishery to accommodate the fishing schedules of the Makah catcher boats and the mothership in Alaska pollock fisheries.

    iii.    In early 2008, Quileute and Quinault informed NMFS that they intended to participate in the Pacific whiting fishery. In written and oral communications since then, Quileute and/or Quinault have taken the following positions (among others): (1) they are entitled to harvest a portion of any Indian treaty allocation or set-aside in the Pacific whiting fishery, even if the allocation or set-aside is based on a request from Makah and is designed to meet the needs of the established Makah fishery; (2) NMFS has no legal authority to make, and Quileute and Quinault will not agree to, separate allocations or set-asides for each tribe in the

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 6

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

Pacific whiting fishery; (3) because Pacific whiting migrate from south to north in the spring, Quileute and Quinault intend to harvest Pacific whiting before they reach Makah fishing grounds, thereby preempting the Makah fishery; and (4) Quileute and Quinault intend to begin participating in the Pacific whiting fishery in 2009 or 2010, and ultimately expect to have five or six catcher boats each, with an anticipated annual harvest ranging from 35,000 to 42,000 metric tons per tribe.

    iv. Quileute's and Quinault's intent to participate in the Pacific whiting fishery in the manner described above threatens imminent harm to the established Makah fishery. Even if NMFS were to increase the overall Indian treaty allocation, the harvest strategy and harvest levels proposed by Quileute and Quinault would result in a substantial reduction of the Makah harvest. Moreover, by forcing Makah into a race to harvest Pacific whiting, Quileute and Quinault would force Makah to fish earlier in the year, when bycatch of listed chinook salmon and overfished rockfish stocks is higher, and would undermine Makah's entire management strategy for reducing bycatch. Increased bycatch of these stocks would have adverse effects on conservation of fishery resources and could trigger the need for allocations of these stocks between treaty and non-treaty fisheries, resulting in further restrictions on the treaty fishery. And, by forcing Makah into a race to harvest Pacific whiting, Quileute and Quinault would prevent Makah from being able to accommodate the fishing schedules of the catcher boats and processors in its fishery.

    v. In response to Quileute's and Quinault's stated intent to enter the Pacific whiting fishery, NMFS has begun a process to determine the overall Indian treaty allocation in the Pacific whiting fishery. That determination depends on the availability of Pacific whiting in

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 7

Case No. C70-9213, Subproceeding ____
(Quileute/Quinault U&A)

ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

the Tribes' usual and accustomed fishing grounds, and thus depends on a determination of the location of those grounds.

vi. Makah representatives met with Quileute and Quinault representatives on several occasions in May 2008 and explained Makah's concerns regarding the manner in which Quileute and Quinault proposed to enter the Pacific whiting fishery. Makah requested that Quileute and Quinault each provide a reasonable estimate of their anticipated Pacific whiting harvests and proposed that the Tribes seek separate allocations or set-asides to meet the needs of their respective fisheries. Quileute and Quinault repeatedly rejected these proposals.

vii. In June 2008, through a public submission to the Pacific Fishery Management Council, Makah informed Quileute and Quinault that the manner in which they proposed to participate in the Pacific whiting fishery and their threats to preempt the established Makah fishery would trigger the need for a judicial determination of their adjudicated usual and accustomed fishing grounds in the Pacific Ocean. Quileute and Quinault have not modified the manner in which they intend to participate in the Pacific whiting fishery or their threats to preempt the established Makah fishery since then. Although they have not participated in the 2009 fishery to date, Quileute stated at various times that it would have from one to four catcher boats in the 2009 fishery, and is now projecting that it will have one or two catcher boats in the 2010 fishery. Neither Quileute nor Quinault have modified their long term projections of each having five or six catcher boats in the fishery, with annual harvests of 35,000 to 42,000 metric tons per tribe.

viii. In September 2009, the Makah Tribal Council sought a meeting with the Quileute and Quinault Tribal Councils to discuss and seek to resolve Makah's concerns over the

MAKAH REQUEST FOR DETERMINATION RE
QUILEUTE AND QUINAULT USUAL AND
ACCUSTOMED FISHING GROUNDS – PAGE 8

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

ZIONTZ, CHESTNUT, VARNELL,
BERLEY & SLONIM
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

manner in which Quileute and Quinault intend to participate in the Pacific whiting fishery. In seeking the meeting, Makah again informed Quileute and Quinault that the manner in which they were proposing to participate in the fishery would trigger the need for a judicial determination of their usual and accustomed fishing grounds in the Pacific Ocean. Quinault responded that it was unavailable on the dates proposed by Makah and has not proposed an alternative date. Quileute proposed a date for such a meeting, to which Makah agreed, but Quileute then canceled the meeting and has not sought to reschedule it. Makah has made other efforts to address its concerns, including the meeting described in the Declaration of Marc D. Slonim which is filed herewith, but they too have been unsuccessful.

ix.     In response to the threat posed by Quileute's and Quinault's stated intent to participate in the Pacific whiting fishery in the manner described above, Makah has assembled archaeological, anthropological, historical and ethnographic information regarding Quileute and Quinault treaty-time fishing grounds. The information available to Makah indicates that Quileute and Quinault usual and accustomed grounds are much less extensive than the fishing areas described in NMFS' regulations. In particular, the western boundary of both Quileute and Quinault usual and accustomed grounds appears to be approximately 5 to 10 miles offshore, and the northern boundary of Quileute usual and accustomed grounds in the Pacific Ocean appears to be a line drawn westerly from the vicinity of the Norwegian Memorial.

x.     Given the migratory and schooling patterns of Pacific whiting, if Quileute and Quinault were limited to the usual and accustomed fishing grounds described in the preceding paragraph, they would not be able to preempt or otherwise threaten the established Makah fishery for Pacific whiting.

MAKAH REQUEST FOR DETERMINATION RE QUILEUTE AND QUINAULT USUAL AND ACCUSTOMED FISHING GROUNDS – PAGE 9

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

**ZIONTZ, CHESTNUT, VARNELL, BERLEY & SLONIM**
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

    d.    <u>Other Fisheries.</u>  On the basis of the information Makah assembled in response to the threat posed by Quileute's and Quinault's intent to participate in the Pacific whiting fishery in the manner described above, it appears that Quileute and Quinault have authorized and currently are conducting fisheries for salmon, halibut and black cod outside of their actual usual and accustomed fishing areas.  Although Makah, Quileute and Quinault have been able to resolve disputes over these fisheries in the past, the Quileute and Quinault fisheries for these species compete directly with Makah fisheries for the same species.

4.    <u>Relief Sought.</u>  Makah requests that the Court determine the boundaries of Quileute and Quinault usual and accustomed fishing grounds in the Pacific Ocean.  In particular, it requests that, on the basis of the evidence presented at trial and applicable law, the Court define the western boundary of such areas, which Makah currently believes is approximately 5 to 10 miles offshore, and the northern boundary of Quileute usual and accustomed fishing grounds, which Makah currently believes is a line drawn westerly from the vicinity of the Norwegian Memorial.

Dated: December 4, 2009.

          ZIONTZ, CHESTNUT, VARNELL,
          BERLEY & SLONIM


<u>s/ MARC SLONIM, WSBA # 11181</u>
2101 4th Avenue, Suite 1230
Seattle, WA 98121

Attorneys for Makah Indian Tribe

MAKAH REQUEST FOR DETERMINATION RE QUILEUTE AND QUINAULT USUAL AND ACCUSTOMED FISHING GROUNDS – PAGE 10

Case No. C70-9213, Subproceeding _____
(Quileute/Quinault U&A)

ZIONTZ, CHESTNUT, VARNELL, BERLEY & SLONIM
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230