UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE OF WASHINGTON, et al.,<br><br>    Defendants. | CASE NO. CV70-9213RSM<br>Subproceeding 11-sp-02<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court for consideration of the motion for summary judgment filed by the Requesting Tribes, namely the Jamestown S'Klallam, Lower Elwha Klallam, and Port Gamble S'Klallam Tribes (together, "the S'Klallam"). Dkt. # 40. They request that the Court grant summary judgment on the issues presented in their Request for Determination filed November 8, 2011. Dkt. # 1. The Request for Determination asks the Court to find that the actions of the Lummi Nation in fishing in the "case area"[1] is not in conformity with Final Decision # I. The Lummi Nation ("Lummi") has opposed the motion. Oral argument was heard on September 27, 2012, and the matter has been fully considered. The Court has jurisdiction pursuant to Paragraph 25(a)(1) of the Permanent Injunction, as modified August 11, 1993. C70-9213, Dkt. # 13599. For the reasons set forth below, the motion shall

---

[1] The case area is defined in the Request for Determination as the eastern end of the Strait of Juan de Fuca, specifically "the marine waters northeasterly of a line running from Trial Island near Victoria, British Columbia, to Point Wilson on the westerly opening of Admiralty Inlet, bounded on the east by Admiralty Inlet and Whidbey Island, and bounded on the north by Rosario Strait, the San Juan Islands, and Haro Strait." Request for Determination, Dkt. # 1, ¶ 2.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 1

be granted.

## BACKGROUND AND CASE HISTORY

The usual and accustomed fishing area of the Lummi Tribe was described by Judge Boldt in Findings of Fact ("FF") 45 and 46 in the original *U.S. v. Washington* decision.

> 45. Prior to the Treaty of Point Elliott, the Lummi, Semiahmoo and Samish Indians had been engaged in trade in salmon, halibut and shellfish both with other Indians and with non-Indians. (FPTO § 3-42) This trade continued after the treaty. (Ex. USA-30, p. 6) At the time of the treaty they maintained prosperous communities by virtue of their ownership of lucrative saltwater fisheries. The single most valuable fish resource was undoubtedly the sockeye, which the Lummis were able to intercept in the Straits on the annual migration of the sockeye from the ocean to the Fraser River. (Ex. USA-30, p. 11) Lummi Indians developed a highly efficient technique, known as reef netting, for taking large quantities of salmon in salt water. (Ex. USA-30, p. 11) Aboriginal Indian 'reef netting' differs from present methods and techniques described by the same term. (FPTO § 3-40) The Lummis had reef net sites on Orcas Island, San Juan Island, Lummi Island and Fidalgo Island, and near Point Roberts and Sandy Point. (Ex. USA-30, p. 23; Exs. USA-62, USA-63; Tr. 1699, l. 2 to 1701, l. 21) When nature did not provide optimum reef conditions the Indians artificially created them. (Ex. USA-30, p. 17) Reef netting was one of the two most important economic activities engaged in by these Indians, the other being the sale of dog fish oil. These Indians also took spring, silver and humpback salmon and steelhead by gill nets and harpoons near the mouth of the Nooksack River, and steelhead by harpoons and basketry traps on Whatcom Creek. They trolled the waters of the San Juan Islands for various species of salmon. (FPTO § 3-42; Ex. USA-30, pp. 6-25; Ex. G-21, pp. I-19-I-21)
>
> 46. In addition to the reef net locations listed above, the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay. Freshwater fisheries included the river drainage systems, especially the Nooksack, emptying into the bays from Boundary Bay south to Fidalgo Bay. (Exs. USA-20, p. 39; USA-30, pp. 23-26; Exs. PL-94a, b, c, d, e, t, u, v, w, x; Ex. G-26, pp. II-9 to II-13; Exs. USA-60, USA-61, USA-62, USA-63, USA-64; Tr. 1665, l. 4-11, l. 23-24).

*U.S. v. Washington*, 384 F. Supp. 312, 360 (W.D.Wash.1974) ("*Decision I*").

I. Judge Coyle's Decision

In 1989, the S'Klallam, along with the Skokomish Tribe, filed a Request for Determination ("Request") regarding the Lummi U&A, which was opened as Subproceeding 89-2 and assigned to United States District Judge Robert Coyle. They asked for a ruling that Lummi fishing in the case area was "not in conformity with" the Findings of Fact in *Decision I*, which is one way by which a party may invoke the Court's jurisdiction under Paragraph 25 of the Permanent Injunction. The Request asserted

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 2

that the Strait of Juan de Fuca, Admiralty Inlet, and the mouth of Hood Canal are all outside the Lummi U&A as it was described by Judge Boldt, and therefore, Lummi fishing in these areas is "not in conformity with" that decision.

The parties cross-moved for summary judgment. In a thorough and well-reasoned Order, dated February 13, 1990, Judge Coyle granted summary judgment to the S'Klallam, stating with respect to the case area, "There is no question in the court's mind from the evidence presented to Judge Boldt that the Lummis' usual and accustomed fishing places were not intended to include the Strait of Juan de Fuca." C70-9213, Dkt. # 11596, p. 13.

There are two concerns with this Order, which have led to the Lummi allegations of a lack of resolution in this matter. One is that Judge Coyle quoted extensively from a 1989 Declaration of Dr. Barbara Lane, the anthropologist upon whose reports Judge Boldt placed great reliance when he determined the U&A's of various tribes. Her post-*Decision I* testimony, offered in an attempt to clarify Judge Boldt's meaning, was subsequently found to be improper in a different subproceeding. ("The district court erred by considering Dr. Lane's latter-day testimony as evidence of Judge Boldt's intended meaning.") *Muckleshoot Indian Tribe v. Lummi Indian Nation,* 141 F. 3d 1355, 1359-60 (9th Cir. 1998) ("*Muckleshoot I"*). However, in considering this assertion by the Lummi in their appeal of Judge Coyle's Order, the Ninth Circuit found he did not improperly rely on the 1989 declaration, and upheld the decision as to the Strait of Juan de Fuca. This is now the law of the case, and the Lummi argument that Judge Coyle's decision is flawed is unavailing.

The other concern, as the Ninth Circuit later noted, was that judgment was never entered on Judge Coyle's decision, and the Lummi subsequently filed a Cross-Request for Determination in 89-2. The Lummi requested a determination that their U&A include:

> the waters of the Strait of Juan de Fuca east from the Hoko River to the mouth of Puget Sound, the waters west of Whidbey Island, Admiralty Inlet, the waters south of Whidbey Island to the present environs of Seattle, and the waters of Hood Canal south from Admiralty Inlet to a line drawn from Termination Point due East across Hood Canal.

C70-9213, Dkt. # 11690. The Ninth Circuit later characterized this Cross-Request as an "expansion" of

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 3

the Lummi U&A.  *U.S. v. Washington (Lower Elwha Band of S'Klallams, et al. v. Lummi Indian Tribe*, 235 F. 3d 443, 447 (9th Cir. 2000) ("*Lummi")*.  This "expansion" designation indicates that the Ninth Circuit did not, at that time, view any of these areas as included in the Lummi U&A as it was determined by Judge Boldt.

   II. <u>Judge Rothstein's Decisions</u>

  In 1993, the case was assigned to United States District Judge Barbara Rothstein.  The parties cross-moved for summary judgment on the Lummi Cross-Request for Determination, and Judge Rothstein denied both motions in an Order dated February 7, 1994.  Judge Rothstein found that the affidavit of anthropologist Wayne Suttles, which the Lummi presented as evidence of their fishing in the eastern area of the Strait of Juan de Fuca, constituted sufficient evidence to allow the Lummi to survive summary judgment.  She stated however, "The Court will expect Dr. Suttles to clarify the boundaries of the geographic areas to which he refers together with specific documentation pertinent to each area."  Order, Dkt. # 14056, p. 8.   This was four years before the Ninth Circuit pronounced such latter-day declarations improper in *Muckleshoot I*.

  The Ninth Circuit released the  *Muckleshoot I* decision on April 17, 1998.  In May of 1998, the S'Klallam moved to dismiss the Lummi Cross-Request on the basis that the issues had been decided by Judge Coyle, and that the Lummi were  precluded from re-litigating them.  In  opposing the motion, the Lummi attached a map identifying Admiralty Inlet, the Fraser River, and Haro Strait, and argued that its U&A included the waters between Haro Strait and Admiralty Inlet.  The Court ordered supplemental briefing on outstanding issues, and the Lummi then filed a cross-motion to dismiss the S'Klallam Request, or for summary judgment.   The Lummi objected to consideration of Dr. Lane's 1989 Declaration, on the basis of the recent *Muckleshoot* decision.   They did not re-submit the declaration of Wayne Suttles or rely on it.

  On September 1, 1998, Judge Rothstein denied the Lummi motions, and granted the S'Klallam motion to dismiss.  She described in her Order the issues raised in Subproceeding 89-2 as whether Lummi's U&A includes "the Strait of Juan de Fuca, Admiralty Inlet, or the mouth of Hood Canal."

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 4

Dkt. # 16550, p. 2.  The conclusion states, "the Court determines that Judge Boldt did not intend to include the Strait of Juan de Fuca, Admiralty Inlet, or the mouth of Hood Canal in the Lummi U&A."  *Id.*, p. 18.  The Clerk was directed to enter judgment in favor of the S'Klallam and Skokomish tribes, and dismiss the subproceeding. *Id.*, p. 19.   The Lummi appealed.

### III.  The Ninth Circuit Court of Appeals Decision

The Lummi "Statement of Issues Presented for Review" in the appeal listed three issues:  (1) whether "Judge Boldt intend[ed] to include within Lummi fishing areas all of the marine waters from the San Juan Islands south to the vicinity of Seattle when he . . . declared that Lummi fishing rights 'included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle";   (2) whether Judge Coyle erred when he considered matters outside the trial record (referring to the latter-day Declaration of Barbara Lane) in interpreting the final judgment entered by Judge Boldt; and (3) whether Judge Rothstein erred "when she declined to review and revise Judge Coyle's interpretation of the judgment"  in light of *Muckleshoot I*, 141 F. 3d 1355.  Declaration of Lauren Rasmussen, Dkt. # 20030, Exhibit A, p. 1.   In the Statement of the Case, the Lummi clarified that

> [t]he issue presented by this case is whether ***all*** of the marine waters between the Fraser and Seattle were included in this judgment or only some of them.  Specifically, based on the record before him, did Judge Boldt intend to exclude from the broad language of his ruling the marine waters of Admiralty Inlet and the open marine waters in the Strati of Juan de Fuca between Admiralty Inlet and Haro Strait on the western edge of the San Juan Islands?

*Id.*, p. 3.

The Ninth Circuit ruled that Judge Coyle's decision merged into the final judgment which was entered on September 2, 1998, and then proceeded to address the Lummi arguments against both Judge Coyle's and Judge Rothstein's Orders.  The court started by finding that Judge Boldt's language in describing the Lummi U&A is ambiguous, "because it does not delineate the western boundary of the Lummi's usual and accustomed fishing grounds and stations." *U.S. v. Washington (Lummi)*, 235 F. 3d at 449.   Next, the appellate court found that in resolving the ambiguity, Judge Coyle did not improperly use the 1989 Declaration of Dr. Lane.  Instead, he relied on the exhibits attached to it, notably, trial

 ORDER ON MOTION FOR SUMMARY
JUDGMENT- 5

exhibits USA-20 and USA-30, which were before Judge Boldt and from which he quoted extensively in *Decision I*.  The court rejected the Lummi argument that Judge Boldt's language should be interpreted broadly because of Dr. Lane's  statement that "it would be impossible to compile a complete inventory of any tribe's usual and accustomed fishing grounds.  Such an inventory is possible only by designating entire water systems." *See*  "Political and Economic Aspects of Indian-White Culture Contact in Western Washington in the Mid-19th Century (Summary Anthropological Report) Exhibit USA-20, filed in this case at Dkt. # 45, Declaration of Mary Neil, Exhibit 25.  In rejecting this argument, the Ninth Circuit noted that Judge Boldt cited to specific locations listed by Dr. Lane (Point Roberts, Birch Point, Cherry Point, and others) rather than general areas, so there was no basis to find that he intended to include an "entire water system" such as all the waterways in Puget Sound.  The court also rejected the Lummi argument that Judge Boldt intended to encompass the Strait of Juan de Fuca in the term Puget Sound, stating that "it is clear that Judge Boldt viewed Puget Sound and the Strait of Juan de Fuca as two distinct regions, with the Strait lying to the west of the Sound." *U.S. v. Washington (Lummi)*, 235 F. 3d at 451-52.  Thus, "had he intended to include the Strait of Juan de Fuca in the Lummi's usual and accustomed fishing grounds and stations, he would have used that specific term, as he did elsewhere in *Decision I*." *Id*. at 452.  These findings by the Ninth Circuit, which exclude the Strait of Juan de Fuca from the Lummi U&A, are now the law of the case.

With respect to Admiralty Inlet, the Ninth Circuit could find no guidance as to Judge Boldt's intent, as he did not use that term in the Lummi U&A or anywhere else in *Decision I*.  The S'Klallam argued that Judge Boldt could not have intended to include Admiralty Inlet in the Lummi U&A because he did not specifically name it, but this argument failed to persuade the Ninth Circuit.  In the absence of linguistic clues, the court determined that "[g]eographically, however, Admiralty Inlet was intended to be included within the 'marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle.'" *Id*. at 452.  The court reasoned that the Lummi must pass through this area (Admiralty Inlet) to go from the Fraser River south to Seattle: "Admiralty Inlet consists of the waters to the west of Whidbey Island, separating that island from the Olympic Peninsula.  Admiralty Inlet would

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 6

likely be a passage through which the Lummi would have traveled from the San Juan Islands in the north to the 'present environs of Seattle.'" *Id*. On the basis of this ruling, Admiralty Inlet became part of the Lummi U&A.

With respect to Judge Rothstein's decision, the Ninth Circuit ruled that she did not abuse her discretion in applying the law of the case and ruling in favor of the S'Klallam in dismissing the subproceeding. The court concluded,

> We are persuaded that Judge Boldt did not intend for either the Strait of Juan de Fuca or the mouth of the Hood Canal to be included within the Lummi's usual and accustomed grounds and stations. Based on the geography of the area, however, we conclude that Judge Boldt did intend to include Admiralty Inlet. We affirm Judge Rothstein's order of dismissal in part, and reverse in part.

*Lummi*, 235 F. 3d at 453.

In 2009, the S'Klallman filed a motion for an Order to Show Cause why the Lummi Nation should not be held in contempt for fishing in the eastern portion of the Strait of Juan de Fuca, in violation of this Court's Orders and the mandate of the Ninth Circuit Court of Appeals. The motion was filed in the closed 89-02 subproceeding. *U.S. v. Washington*, Subproceeding 89-2, Dkt. # 217. The Lummi moved to dismiss the motion for contempt and the Court granted that motion. Subproceeding 89-2, Dkt. #235. The Court agreed with the Lummi that the motion, filed in a closed subproceeding, was improper but granted the S'Klallam leave to initiate a new subproceeding to bring the issue before the Court. *Id*. The S'Klallam appeal of the dismissal was dismissed by the Ninth Circuit Court of Appeals for lack of jurisdiction. On November 11, 2011, the S'Klallam then filed a Request for Determination, opened as this subproceeding, to again bring the issue of Lummi fishing in the case area before the Court. *U.S. v. Washington,* Subproceeding 11-02, Dkt. # 1. The S'Klallam motion for summary judgment is now ripe for consideration.

ANALYSIS AND DISCUSSION

I. Legal Standard

In moving for summary judgment, the S'Klallam assert that it is now the law of the case that the

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 7

Strait of Juan de Fuca is not within the Lummi U&A, and that determination may not be altered or amended. The Ninth Circuit Court of Appeals clearly set forth the standards for application of the law of the case doctrine in the prior decision in this dispute:

> "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." Application of the doctrine is discretionary.

*U.S. v. Washington (S'Klallam v. Lummi),* 235 F. 3d at 452 (citations omitted).

II. Analysis

The S'Klallam have moved for summary judgment on the basis that it is now the law of the case that the Lummi U&A does not include the Strait of Juan de Fuca. Therefore, Lummi fishing in the case area, described as the waters of the Strait west of Whidbey Island and east of a line drawn between Trial Island and Point Wilson, is "not in conformity with" *Decision I*. The Court agrees that the issue with respect to the Strait of Juan de Fuca has been explicitly decided by this Court and affirmed by the Ninth Circuit Court of Appeals, and is now the law of the case. Contrary to the Lummi assertion that the burden of proof lies with the S'Klallam, it is for the Lummi to demonstrate that the case area does not lie within the Strait of Juan de Fuca. That is a heavy burden in light of the fact that the Lummi specifically described this area in their failed Cross-Request for Determination. Judge Rothstein determined that the area in the Lummi Cross-Request for Determination was the same as the case area as originally defined by the S'Klallam:

> This request [the Lummi Cross-Request for Determination] sought a declaration that the Lummi U&A included the waters of the Strait of Juan de Fuca east from the Hoko River to the mouth of Puget Sound, the waters west of Whidbey Island to the present environs of Seattle, and the waters of Hood Canal. . . . The Lummi's request is worded differently from the Four Tribes' original request. The Four Tribes contend, however the Lummi's cross-request covers essentially the same areas the Four Tribes challenged in the initial request for determination. The Lummi have not asserted that their cross-request covers a different area from the area covered by the Four Tribes' initial request and by Judge Coyle's decision. Rather, they argue that Judge Coyle's decision is not final and is of no precedential value. The court can discern no difference between the two requests for determination, nor have the Lummi convincingly argued that there is a difference. Thus, this order is intended to resolve both requests for determination.

ORDER ON MOTION FOR SUMMARY JUDGMENT- 8

C70-9213, Dkt. # 16550, p. 14.  Therefore, the question with respect to waters "west of Whidbey Island" was resolved by Judge Rothstein and affirmed in that respect by the Ninth Circuit Court of Appeals.[2]

In opposing the motion for summary judgment, the Lummi advance several different arguments for their contention that the case area waters are not part of the Strait of Juan de Fuca.  For one, they point to a map that was before Judge Boldt, namely Exhibit USA-62, which is a reproduction of a U.S. coastal survey map from 1853.  They assert that the placement of the lettering for "Strait of Juan de Fuca" on this map would have led Judge Boldt to conclude that the eastern extent of the Strait was approximately Angeles Point.  Lummi Nations's Memorandum in Opposition, Dkt. # 43, p. 18.  This argument is unavailing for many reasons, not the least of which is that it is purely speculative with respect to Judge Boldt's meaning or intent.[3]  While Judge Boldt did cite to USA-62 in FF 45, it was specifically in regard to the locations of Orcas Island, San Juan Island, Lummi Island, Fidalgo Island, Point Roberts, and Sandy Point.  *U.S. v. Washington*, 384 F. Supp. at 360.  Thus this map, while historically interesting, is of no import in the context of this subproceeding.

Second, the Lummi argue that their U&A includes the case area because:

> [t]he Ninth Circuit expressly held that Lummi's U&A includes Admiralty Inlet, which the Ninth Circuit defined as follows:
>
>> Admiralty Inlet consists of the waters to the west of Whidbey Island, separating that island from the Olympic Peninsula.

---

[2] The parties have argued at length in their briefs regarding whether the case area was actually included in the prior court rulings, pointing to statements made by one or the other in various briefs filed in the earlier proceedings.  The Court notes that it is the language of the courts, not of the parties, that is determinative of the law of the case.  The earlier briefs, while interesting, have not been considered and will not be  addressed in this Order.  It is only the court opinions, including Judge Boldt's, together with the evidence to which he pointed, that will be considered.  To the extent that the Lummi have moved to strike "discuss[ions of] what the parties to this subproceeding have said to other judges over the years" that motion is granted.  Memorandum in Opposition, Dkt. # 43, p. 19.  The Lummi motion to strike the latter-day Declaration of Barbara Lane, together with evidence of the Board of Geographic names definition of "Strait of Juan de Fuca" was granted at the motion hearing.

[3] By the same reasoning, Judge Boldt would have understood the western boundary of the Strait to be Klaholoh Rock, an inference which undoubtedly would be vigorously disputed by any tribe having a U&A in the Strait.

ORDER ON MOTION FOR SUMMARY JUDGMENT- 9

Lummi's Memorandum in Opposition, Dkt. # 43, p. 6, quoting *Lummi*, 235 F. 3d at 452.  This argument mis-reads the Ninth Circuit's definition of Admiralty Inlet and impermissibly expands its scope.  The correct reading of the Ninth Circuit language describes Admiralty Inlet as "(those) waters to the west of Whidbey Island (which) separate that island from the Olympic Peninsula;" in other words, only the southern portion of the waters west of Whidbey Island.  The fact that the Lummi understood the "waters west of Whidbey Island" to be distinct from Admiralty Inlet is evidenced from their own Cross-Request for Determination, filed in Subproceeding 89-2, set forth above at p. 3, which names them separately and disjunctively.  *See*  C70-9213, Dkt. # 11690.

>Next the Lummi assert that
>
>[t]he Ninth Circuit has developed a special two-step process for determining Judge Boldt's intent with regard to a Tribe's U&A.  First, Klallam must prove that a term used by Judge Boldt to describe Lummi's U&A is ambiguous or that he intended something other than the apparent meaning of the terms he used to describe Lummi's U&A.  If so, then Klallam must prove there was no evidence before Judge Boldt showing that Lummi fished the waters west of Whidbey island or traveled there en route from the Fraser River to the Seattle area.

Lummi Memorandum in Opposition, Dkt. # 43, p. 8.  This line of argument misstates the burden of proof and the Court's task here.  The two-step process has already been concluded by this Court in Subproceeding 89-02, and was affirmed (as to the Strait of Juan de Fuca and the mouth of Hood Canal) by the Ninth Circuit Court of Appeals.   It is the law of the case that the Lummi U&A does not include the Strait of Juan de Fuca, and it now is for the Lummi to point to evidence that would create an issue of fact as to whether the case area lies outside that Strait.   Specifically, they must point to evidence that would lead to the conclusion that the Ninth Circuit decision, excluding the Strait of Juan de Fuca but including Admiralty Inlet, somehow includes the case area as well.

To this end, the Lummi contend that "logic and linguistic clues from Judge Boldt and the Ninth Circuit lead inexorably to the conclusion that none of the waters between the San Juan Islands and the environs of Seattle were excluded from the Lummi's U&A." Lummi Memorandum in Opposition, Dkt. # 43, p. 22.  Thus, they assert that by using a "broad, sweeping description" of the Lummi U&A, Judge Boldt "resolved the factual question of whether Lummi had fished sufficiently in the areas" to have

 ORDER ON MOTION FOR SUMMARY
JUDGMENT- 10

them included in the U&A (referring to the waters west of Whidbey Island). *Id.*, p. 26. In support of this reasoning, the Lummi then point again to Dr. Lane's report:

> Dr. Lane testified that Lummi fishermen were "accustomed . . . to **visit fisheries** as distant as Fraser River in the north and Puget Sound in the South," *USA-30 at 25*, and that "**other fisheries** in the Straits and bays from the Fraser River south to the present environs of Seattle **were utilized**" by the Lummi. *USA-30 at 26 (emphasis added).*

*Id.* (emphasis and italics in original). They conclude this "logic and linguistic clues" line of argument with the assertion that "[t]he Ninth Circuit was merely using the natural pathway from the San Juan islands south to Seattle as a means of understanding the area Judge Boldt was describing," thus including the case area in the Lummi U&A along with Admiralty Inlet. *Id.*

At the oral argument, the Lummi pointed to FF 13 in *Decision I* as support for their "broad sweeping description" argument, noting that Judge Boldt stated "it would be impossible to compile a complete inventory" of any tribe's usual and accustomed fishing areas. However, when FF 13 is read in its entirety, and together with the following FF 14, they lead to the opposite conclusion from what the Lummi argue. These Findings of Fact, stated in full, read as follows:

> 13. Each of the Plaintiff tribes had usual and accustomed fishing places within the case area. Although there are extensive records and oral history from which many specific fishing locations can be pinpointed, it would be impossible to compile a complete inventory of any tribe's usual and accustomed grounds and stations. (FPTO § 3-34; Ex. USA-20, p. 21; Ex USA-52, p. 4, l. 7 to p. 5, l. 29) Among the reasons for this are the following: 1) Indian fisheries existed at all feasible places along a given drainage system. Fishing stations which were the site of weirs or permanent villages are more easily documented than riffles where fish were speared; 2) Indian fishermen shifted to those locales which seemed most productive at any given time depending upon such factors as changes in river flow, turbidity or water course; 3) some important recorded fishing sites are no longer extant because of subsequent man-made alterations in watersheds and water systems; and, 4) use of some sites has been discontinued because appropriate Indian gear for those sites has been outlawed or because competing uses and users have made utilization of the sites by Indian fishermen unfeasible. (Ex. USA-20, pp. 21-23; Ex. USA-27b, pp. 1-3) Documentation as to which Indians used specific fishing sites is incomplete. George Gibbs noted that:
>
>> 'As regards the fisheries, they are held in common, and no tribe pretends to claim from another, or from individuals, seignorage for the right of taking. In fact, such a claim would be inconvenient to all parties, as the Indians move about, on the sound particularly, from one to another locality, according to the season.' (Ex. USA-20, p. 18; Ex. USA-27b, p. 3; Ex. G-4, p. 186)

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 11

> 14. Although not all tribes fished to a considerable extent in marine areas, the Lummi reef net sites in Northern Puget Sound, the Makah halibut banks, Hood Canal and Commencement Bay and other bays and estuaries are examples of some Indian usual and accustomed fishing grounds and stations in marine waters. Marine waters were also used as thoroughfares for travel by Indians who trolled en route. (Ex. PL-75; Tr. 2847, l. 13 to 2850, l. 23) Such occasional and incidental trolling was not considered to make the marine waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians. (Tr. 2177, l. 24 to 2180, l. 4).

*U.S. v. Washington*, 384 F. Supp. at 353.

Thus, FF 13, with its references to drainage systems, riffles, weirs, river flow, turbidity, and so on in Reasons 1 through 3, appears to address only fishing sites along rivers. It would be pure speculation to infer that the "impossible to compile a complete inventory" statement applies as well to fishing in the marine areas where none are mentioned; indeed logic and linguistics lead to the opposite inference. Judge Boldt used terms specific to riverine areas in FF 13 when he listed reasons why it was "impossible to compile a complete inventory" of any tribe's usual fishing areas. On the other hand, marine areas, and specifically the Lummi reef net sites, are addressed in FF 14, which is also the basis for the oft-quoted principle that transit through an area does not, without more specific evidence of fishing, lead to inclusion of an area in a tribe's U&A. Thus, FF 13 fails to support the conclusion that Judge Boldt intended with his "broad sweeping description" to include the case area in the Lummi U&A, and FF 14 leads to the conclusion that the Lummi "natural pathway" argument must be rejected.

Nor does reference to Dr. Lane's language regarding Lummi's "other fisheries in the Straits and bays from the Fraser River south" (quoted from Exhibit USA-30, p. 26) aid the Lummi position. First, the case area is not a bay, and according to the Lummi argument it is not part of the Strait of Juan de Fuca either. Therefore they have not shown how the case area could be included in the "other fisheries in the Straits and bays" referenced by Dr. Lane. Second, this statement in her report is a summary conclusion, and must be read in context with the entire report, particularly the sections that were cited or quoted by Judge Boldt in FF 45 and 46. Notably, Judge Boldt did not quote Dr. Lane's "Straits and bays" conclusion in either Finding of Fact. Instead, he cited extensively and repeatedly to Dr. Lane's discussion of reefnetting, its uniqueness and importance to the Lummi, their system of individual ownership of reefnetting sites, and the

ORDER ON MOTION FOR SUMMARY JUDGMENT- 12

location of those sites. *See* FF 45, set forth above, and citations therein to Exhibit USA-30 at pp. 11, 23.

Dr. Lane went into great detail on reefnetting by the Lummi in her report, describing the equipment and techniques, and the reasons for its success, which was attributed in part to specialized knowledge of topography and salmon behavior and migration patterns. Exhibit USA-30, p. 12. "Usually the reefnet was located in a kelp-covered reef a short distance offshore. Often it was opposite a headland that caused a backward sweep of tidal current. The fish entered with the current." Exhibit USA-30, p. 17. "The more important reefnet locations of the Semiahmoo-Lummi-Samish are noted in the section on usual and accustomed fishing sites and are plotted on the accompanying map." Exhibit USA-30, p. 11. The map shows reefnet sites at various points from Point Roberts south to the southern shore of Lopez Island. All appear to be associated with promontories and headlands, and none are located south of Lopez Island, where the case area begins. The singular importance of reefnetting to the Lummi was acknowledged by Judge Boldt in FF 45, and the complete absence of any indicated sites from the case area is significant.

The section of Dr. Lane's report which was cited extensively, and sometimes quoted, by Judge Boldt states, in its entirety,

> USUAL AND ACCUSTOMED FISHING AREAS
>
> While it is not possible to pinpoint every fishing site used by the ancestors of the present Lummi Tribe of Indians prior to the Treaty of Point Elliot, **it is feasible to indicate the general area of their fishing operations and within the general area to designate certain sites as important or principle fishing locations**.
>
> The pre-treaty Lummi, along with the Semiahmoo and Samish, both of whom were subsumed with the Lummi at the Treaty of Point Elliot, owned reefnet locations in the San Juan Islands, off Point Roberts, off Lummi Island, and Fidalgo Island.
>
> The reefnetting grounds off Point Roberts were the largest in the entire area and were situated within the aboriginal territory of the Semiahmoo. They were used not only by the Semiahmoo but also by Saanich, Lummi, and other Indians.
>
> The grounds off Village Point, Lummi Island[,] were second in size to the point Roberts grounds. At least two of the Lummi signers of the Point Elliot Treaty owned reefnet locations off Village Point.
>
> The main Samish location was off Iceberg Point, Lopez Island[,] in the San Juans. Other

ORDER ON MOTION FOR SUMMARY JUDGMENT- 13

> Samish and Lummi locations were located off the southern shores of Lopez. The Samish also fished with reefnets off Langley Point on Fidalgo Island.
>
> Other Lummi reefnet grounds were located off Shaw Island, Orcas Island, Waldron Island, and off Cherry Point on the mainland.
>
> The Birch Point grounds off Birch Bay lay within the aboriginal territory of the Semiahmoo people.
>
> In addition to using the reefnetting grounds noted above, the ancestors of the present Lummi Tribe of Indians also trolled for salmon in the contiguous salt waters of Haro and Rosario Straits and in the islands, speared them in the bays and streams of the mainland, and took them by means of weirs and traps in the rivers. There were, in addition, other important fisheries, including halibut banks, but discussion here is limited to salmon (including steelhead) fisheries.
>
> **The traditional fishing areas discussed thus far extended from what is now the Canadian border south to Anacortes**. This description included the traditional fishing areas of the Semiahmoo and the Samish. Some of the present Lummi Tribe are descendants of the pre-treaty Semiahmoo and Samish groups. Other descendants of these pre-treaty entities have not become members of the Lummi Tribe and those descendants would, of course, legitimately make claim to some of the same usual and accustomed fishing area included here.
>
> **In addition to the home territory discussed to this point, Lummi fishermen were accustomed, at least in historic times, and probably earlier, to visit fisheries as distant as the Fraser River in the north and Puget Sound in the south.**
>
> In the same manner, Saanich, Clallam, Skagit and other Indians fished in waters described above as within Semiahmoo, Lummi and Samish territory. The Straits and Sound were traditional highways used in common by all Indians of the region and most saltwater fisheries traditionally were free access areas. This point is discussed at some length in the Summary Anthropological Report,[4] pages 15-19. While it is useful for certain purposes to speak of Lummi waters, or Samish territory, it is important to note that this by no means implies exclusive rights by one group. That these Indians travelled [sic] widely and frequently throughout the waters of the Sound and Straits is commented on by numerous early observers.

Exhibit USA-30, pp. 23-24 (emphasis added).

The Court finds several aspects of this section have significant implications for the Lummi "logic and linguistics" argument. First, Dr. Lane stated that it was feasible to indicate a general area for the fishing operations of the Lummi, and within that general area to designate important sites, but not all of them. This

---

[4] The Summary Anthropological Report, titled "Political and Economic Aspects of Indian-White Culture Contact in Western Washington in the Mid-19th Century," was before Judge Boldt as Exhibit USA-20.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 14

is contrary to the sense in which the Lummi would have the Court read the "impossible to compile a complete inventory" language in FF 13. They used this language to invite consideration of unnamed locations well outside the designated area, but this section shows that was not Dr. Lane's intent. (And as shown above, Judge Boldt's "complete inventory" remark appears to be addressed to river fishing sites, not marine areas.) Second, the "traditional fishing areas" of the Lummi were designated as extending only as far south as Anacortes, well above the case area. Judge Boldt cited specifically to this section of the report and used the specific place names in FF 45, thus indicating his reliance upon this section. Third, Dr. Lane named only two places, Fraser River in the north and Puget Sound to the south, as fisheries visited by Lummi fisherman; she did not report that they fished all the waters in between, or mention any intermediate fisheries. While Judge Boldt described the Lummi U&A in FF 46 as including marine areas from Fraser River south to the present environs of Seattle, "and particularly Bellingham Bay," the Lummi have pointed to no facts before Judge Boldt which would support the conclusion that he intended to include all the marine waters in between. Indeed, this Court has found in a previous subproceeding that Judge Boldt's "from" and "to" language in describing a U&A does not include all the waters in between.[5] Here, the pointed reference to Bellingham Bay, far to the north of the case area, is significant. Fourth, the description of the Straits and Sound as "highways" used by all tribes reinforces the rule set forth by Judge Boldt in FF 14 that incidental trolling during travel does not "make the marine waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians." *U.S. v. Washington*, 384 F. Supp. at 353.

## CONCLUSION

Based on this analysis of Dr. Lane's report and FF 45 and 46, the Court finds that neither logic nor linguistics would compel the conclusion that the waters to the west of Whidbey Island, designated as

---

[5] In a recent subproceeding addressing similar language by Judge Boldt in describing the Suquamish U&A ("the marine waters of Puget Sound **from** the northern tip of Vashon Island **to** the Fraser River including Haro and Rosario Straits, the streams draining into the western side of this portion of Puget Sound and also Hood Canal"), this Court found that Judge Boldt did not intend to include all of Puget Sound, and excluded certain area to the east of Whidbey Island. Subproceeding 05-03, *affirmed, U.S. v. Washington (Upper Skagit v. Suquamish)*, 590 F. 3d 1020 (9th Cir. 2010). This determination was made by examining the evidence that was before Judge Boldt, specifically Dr. Lane's report on Suquamish fishing areas.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 15

the case area, were intended by Judge Boldt to be included in the Lummi U&A. Nor were they awarded to the Lummi by the Ninth Circuit Court of Appeals as part of Admiralty Inlet, or a passage to it. The law of the case holds that the Lummi U&A does not include the Strait of Juan de Fuca or the waters west of Whidbey Island that were named in the Lummi Cross-Request for Determination. That issue has been finally determined and may not be re-litigated. Accordingly, the S'Klallam motion for summary judgment (Dkt. # 40) is GRANTED, and it is hereby ORDERED:

(1) The Usual and Accustomed Fishing Area (U&A) of the Lummi Nation does not include the eastern portion of the Strait of Juan de Fuca or the waters west of Whidbey Island, an area more specifically described as the marine waters east of a line running from Trial Island near Victoria, British Columbia, to Point Wilson at the westerly opening of Admiralty Inlet, bounded on the east by Admiralty Inlet and Whidbey Island, and bounded on the north by Rosario Strait, the San Juan Islands, and Haro Strait;

(2) The Lummi Nation is prohibited from issuing regulations or otherwise authorizing its fishers to exercise treaty fishing rights in the waters described above; and

(3) The Clerk shall enter judgment in favor of the S'Klallam, as Requesting Tribes, and shall close this subproceeding.

DATED this the 11th day of October 2012

.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 16