UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA, et al.,

Plaintiffs,

v.

STATE OF WASHINGTON, et al.,

Defendants.

CASE NO. CV 9213

Subproceeding 09-1

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT

This matter was initiated by the filing of a Request for Determination by the Makah Indian Tribe, asking for a determination of the Usual and Accustomed Fishing Grounds ("U&A") in the Pacific Ocean of the Quinault Indian Nation ("Quinault") and the Quileute Indian Tribe ("Quileute"). Dkt. # 1. It is now before the Court for consideration of a motion by the Makah for partial summary judgment. Dkt. # 125. The motion was opposed by the Quinault and the Quileute, as well as the Hoh Indian Tribe as an Interested Party. The State of Washington, also an Interested party under the procedures established in this case, also filed a response to the motion. The Court heard oral argument on May 22, 2013 and has fully considered the parties memoranda and exhibits, together with prior Orders in this case. For the reasons set forth below, the Makah motion shall be substantially granted.

BACKGROUND

The Makah filed this Request for Determination on December 4, 2009, invoking the continuing jurisdiction of the Court under two specified provisions of Paragraph 25 of the Permanent Injunction, as modified by the Court's Order Modifying Paragraph 25 (C70-9213, Dkt. # 13599) dated August 23,

1993).   Dkt. # 1.  The Makah requested a determination of the U&A's of the Quinault and Quileute in the Pacific Ocean, to the extent they were not specifically determined in Final Decision # 1, *U.S. v. Washington*, 384 F. Supp. 312 (W.D.Wash.1974) ("Final Decision # 1").   The Makah themselves have an adjudicated U&A in the Pacific Ocean extending forty miles offshore, specifically determined and described in proceedings subsequent to Final Decision # 1.  *U.S. v. Washington*, 626 F.Supp. 1405, 1467 (1985).

The sections of Paragraph 25 invoked by the Makah in the Request for Determination are Paragraph (a)(1) and Paragraph (a)(6).  As set forth in Paragraph 25,

> (a) The parties or any of them may invoke the continuing jurisdiction of this court in order to determine:
>
> > (1)   Whether or not the actions intended or effected by any party (including the party seeking a determination) are in conformity with Final Decision  # 1 or this injunction; [and]
> >
> > . . . .
> >
> > (6) The location of any of a tribe's usual and accustomed fishing grounds not specifically determined by Final Decision # 1[.]

*U.S. v. Washington,* 384 F.Supp. at 419.

The U&A of the Quinault with the *U.S. v. Washington* case area was determined by Judge George Boldt in Final Decision # 1, and is described as encompassing

> the following rivers and streams: Clearwater, Queets, Salmon, Quinault (including Lake Quinault and the Upper Quinault tributaries), Raft, Moclips, Copalis, and Joe Creek.  Ocean fisheries were utilized in the waters adjacent to their territory.

*U.S. v. Washington*, 384 F. Supp. at 374.  In the same Order, Judge Boldt described the U&A of the Quileute, determining that

> [b]efore, during, and after treaty times, the usual and accustomed fishing places of the Quileute and Hoh Indians included the Hoh River from the mouth to its uppermost reaches, its tributary creeks, the Quileute River and its tributary creeks, Dickey River, Soleduck River, Bogachiel River, Calawah River, Lake Dickey, Pleasant Lake, Lake Ozette, and the adjacent tidewater and saltwater areas.  In aboriginal times the Quileute Indians utilized fishing weirs where salmon were caught along the Quillayute River.  In 1861 James G. Swan encountered fish weirs about a mile up from the bend of the Quillayute River near its mouth and about a mile further upstream.  Along the adjacent Pacific Coast Quileutes caught smelt, bass, puggy, codfish, halibut, flatfish, bullheads, devilfish shark, herring, sardines, sturgeons, seal, sea lion, porpoise and whale.

*Id*. at 372.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

The Request for Determination ("RFD") asserts that the Quinault and Quileute have been fishing (along with Makah and other Tribes) for salmon, halibut, groundfish, and highly migratory species of fish in the Pacific Ocean under regulations promulgated by the Secretary of Commerce, acting through the National Marine Fisheries Service ("NMFS"). RFD ¶ 3(b)(i).[1] The Makah have been fishing for Pacific whiting in the offshore coast waters since 1996, under allocations or set-asides determined by NMFS. RFD ¶ 3(c)(i). Beginning in 2008, the Quileute and Quinault have informed NMFS that they intended to also participate in the Pacific whiting fishery. RFD ¶ 3(c)(iii). In response to this information, NMFS has begun the process to determine the "overall Indian treaty allocation in the Pacific whiting fishery." RFD ¶ 3(c)(v). Because the whiting migrate from south to north, any fishing for this species by the Quinault or Quileute in the offshore waters south of the Makah U&A would have an impact on the Makah whiting fishery. RFD ¶ 3(c)(iii), (iv). The Makah sought to engage the Quinault and Quileute in management planning discussions for the whiting fishery in 2008 and 2009 but the two tribes declined to participate. RFD ¶ 9(c)(vi) - (viii). Makah then informed Quinault and Quileute that "the manner in which they proposed to participate in the pacific whiting fishery" would "trigger the need for a judicial determination" of their U&A's in the Pacific Ocean. RFD ¶ 3(c)(vii). According to the Makah, the western (offshore) boundary of the other tribes' U&A's "appears to be approximately 5 to 10 miles offshore. . . ." RFD ¶ 3(c)(ix). If that is the case, asserts Makah, then the Quinault and Quileute have been conducting fisheries for salmon, halibut and black cod outside their U&A's. RFD ¶ 3(d).

The Quinault and Quileute initially responded to the Request for Determination with motions to dismiss. Dkt. ##51, 53. They argued that the RFD should be dismissed on various grounds including sovereign immunity, lack of standing, failure to state a claim, lack of ripeness, and laches. In addressing the sovereign immunity claim, the Court cited to previous rulings as well as to the Tribes' objections to the Court's proposed entry of a "Sunset Order" closing this case. Order on Motions to Dismiss, Dkt. # 86, pp. 3-4. The Court then stated,

---

[1] The Court notes that in the case of halibut, the Quinault and Quileute have been actively participating with other Tribes in developing management plans for the fishery. *See, U.S. v. Washington*, Subproceeding 91-1 (Halibut).

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

[t]he Quinault and Quileute benefitted from the Court's ruling on the tribes' waiver of sovereign immunity in their dispute with the Makah in 1983-1985. They joined the other tribes in arguing against the Sunset Order on the basis that continuation of this case is necessary because of the waivers of sovereign immunity that are in place. They will not now be heard to assert that their sovereign immunity bars consideration of the Makah Request.

*Id.*, p. 4.

With respect to standing of the Makah to request a determination of another Tribe's U&A, the Court pointed to the language of Paragraph 25 stating that "any party" may invoke the Court's continuing jurisdiction for the purposes specifically enumerated in the paragraph. Thus the Makah had standing to request definition of the Quinault and Quileute U&A's under Paragraph 25(a)(1) and 25(a)(6) as set froth in the RFD. *Id.* As for ripeness and laches, the Court dispensed with these arguments on grounds that need not be repeated here. *Id.* The Court concluded that its jurisdiction had been properly invoked under paragraph 25(a)(6), "because the western boundary of the Quinault and Quileute U&A's were not 'specifically determined' in Final Decision I." *Id.,* p. 5. This language was subsequently modified upon motion for clarification filed by several other Tribes who appeared as Interested parties under the custom and procedure of this case. The conclusion was amended to read, "This Court's jurisdiction has been properly invoked by the Makah under sections (a) and (6) of Paragraph 25 of the Permanent Injunction." Order on Motion for Reconsideration, Dkt. # 104, p. 2. The balance of the sentence, regarding the "western boundary" of the Quinault and Quileute U&A's was stricken. *Id.* The Court then stated that "it views this subproceeding as addressing the meaning of the term 'adjacent' as used by Judge Boldt in describing the Quinault and Quileute U&A's. Therefore it shall proceed under Paragraph 25(a)(1), and evidence shall be limited to the record that was before Judge Boldt." *Id.*

Following the Court's denial of the motions to dismiss, the parties filed their Joint Status Report and Discovery Plan ("JSR"). Dkt. # 114. The JSR described, under the heading "Nature and Complexity of the Case," several issues that the parties consider unresolved by the Court's Order on the motions to dismiss. The third and fourth of these issues have led to this motion for summary judgment by the Makah. As the parties set forth in the JSR,

Third, Quileute and Quinault have stated that they intend to continue to challenge Makah's

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

1    standing to seek an adjudication of their ocean usual and accustomed fishing grounds.  Hoh
     also intends to challenge Makah's standing to bring this subproceeding. . . . .

2

3    The fourth matter involves possible additional proceedings in this subproceeding under
     Paragraph 25(a)(6) of the Court's Permanent Injunction.  Some of the undersigned parties
     have expressed differing views on this matter, which are set forth below.

4

5    *Makah's Views*.  Makah believes that, if the Court determines that Judge Boldt's 1974
     findings did not specifically determine a western boundary for Quileute and Quinault
     ocean usual and accustomed fishing ground or a northern boundary for Quileute usual

6    and accustomed fishing grounds, the Court should hold further proceedings in this
     subproceeding pursuant to Paragraph 25(a)(6) to make such determinations.  Makah

7    believes that additional initial disclosures and discovery should take place if the Court
     agrees to hold such proceedings.

8

9    *Quileute, Quinault, and Hoh's View*.  Quileute, Quinault and Hoh believe that this is
     essentially a request that the Court reconsider its prior ruling about the scope of this
     proceeding, and that the Court bifurcate or phase various issues for later determination.

10   Quileute, Quinault and Hoh oppose any bifurcation or phasing of this Subproceeding and
     believe that the Court meant what it said about the issues to be litigated.  If additional

11   issues are to be resolved, Quileute, Quinault and Hoh believe such issues should be
     identified now, and that discovery on them should precede any trial or resolution of any

12   issues.

13   Joint Status Report, Dkt. # 114, pp. 5-6.

14          After the parties' JSR was filed, the Hoh Indian Tribe moved for leave to intervene, asserting

15   that "it is likely that any determination of Quileute ocean fishing usual and accustomed fishing grounds

16   will also affect and define Hoh ocean fishing usual and accustomed fishing grounds." Dkt. # 115, p. 2.

17   The Court denied the motion to intervene, noting that "[t]o the extent that factual and legal

18   determinations in this subproceeding have implication[s] for the scope of the usual and accustomed

19   fishing grounds of the Hoh, that Tribe may argue their position in memoranda filed in their status as [a]

20   participant under Paragraph 25." Order on Motion for Leave to Intervene, Dkt. # 128, p. 2.  The Hoh

21   did in fact file a response to the Makah motion for summary judgment, and as set forth below, it was

22   considered along with the responses filed by the Quinault and Quileute.  Dkt. # 152.

23          The motion for partial summary judgment brings before the Court the two issues identified by

24   the parties in the JSR, set forth above.  The Makah request a ruling that,

25          (1) it has standing to seek an adjudication of the location of the Pacific Ocean usual and
            accustomed fishing places of the Quileute Indian Tribe (Quileute) and the Quinault Indian

26          Nation (Quinault); and  (2) in Final Decision #1, the Court's finding that Quileute and
            Quinault had usual and accustomed fishing places in "adjacent " Pacific Ocean waters did

27          not specifically determine the location of those places (with the exception of certain beaches
            and river mouths) and did not include waters more than three miles offshore.

28

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5

1   Motion for Partial Summary Judgment, Dkt. # 125, p. 1.

2                                    DISCUSSION

3          In opposing the motion, the Quileute assert that it is essentially an improper motion for

4   reconsideration of the Court's prior Orders regarding the scope of this subproceeding, and should be

5   stricken.  Quileute Response, Dkt. # 157, p. 5.   However, the positions taken by the Quinault, Quileute

6   and Hoh could equally well be viewed as constituting a motion for reconsideration on the Court's prior

7   ruling on standing and jurisdiction.  The Court will therefore reiterate and, where necessary, clarify the

8   prior rulings with the expectation that the ruling will guide the parties in open meaningful negotiations

9   to resolve this issue by agreement.

10          (1) Scope of this Subproceeding

11          The Quileute point to the Court's language in the earlier Order on Motion for Reconsideration,

12   stating that this subproceeding "shall proceed under Paragraph 25(a)(1), and evidence shall be limited to

13   the record that was before Judge Boldt."  Dkt. # 104, p. 1.  According to the Quileute, this forecloses the

14   Makah from requesting a ruling that the U&A's of the two coastal tribes were not "specifically

15   determined" in Final Decision #1, and limits the subproceeding to an interpretation of Judge Boldt's

16   meaning under Paragraph 25(a)(1).   However, the Court's language was not intended to be so limiting.

17   As the Court has noted, the Makah properly invoked the Court's jurisdiction under both Paragraph

18   25(a)(1) and (a)(6).   Therefore the statement should be read, "this subproceeding shall proceed *initially*

19   under Paragraph 25(a)(1) . . . "  However, in the event that the issues cannot be resolved through a

20   Paragraph 25(a)(1) proceeding, the Court could find that the Quinault and Quileute U&A's were not

21   specifically determined by Judge Boldt, and turn to Paragraph 25(a)(6) for further proceedings.   While

22   the Quinault at oral argument raised the specter of "pre-emptive" Requests for Determination under

23   Paragraph 25 (a)(6) by all the Tribes, the Court does not view that as a serious threat.

24          The Makah motion shall accordingly be granted, to the extent that it asks for a ruling that they

25   may be allowed to proceed under Paragraph 25(a)(6).  However, the Court cannot find within the

26   context of this motion that the Quinault and Quileute U&A's were not "specifically determined" by

27   Judge Boldt.   While the parties are in agreement that his ruling was limited to the State of Washington

28

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6

1   coastal waters (within the three-mile limit), that does not answer the question of what he meant by the

2   term "adjacent." If the Court should find, in proceedings under Paragraph 25(a)(1), that "adjacent"

3   meant only one or two miles offshore, then the U&A's would have been "specifically determined." If,

4   on the other hand, there was evidence before Judge Boldt that the treaty-time Quinault and/or Quileute

5   fishermen went more than three miles out to sea in their quest for fish, then the extent of their U&A's in

6   the ocean would not have been specifically determined by him. Only in the latter case would the

7   Paragraph 25(a)(6) proceedings go forward.

8       (2) <u>Standing and Jurisdiction</u>

9       The Quileute and Quinault stated in the JSR that they intend to continue to challenge Makah's

10  standing to seek an adjudication of their ocean U&A's. The Hoh join in that challenge, although their

11  U&A is not in dispute in this subproceeding. In their responses to the Makah motion, the Hoh and

12  Quinault have also questioned the Court's subject matter jurisdiction, and the Hoh once again raised the

13  banner of sovereign immunity. Hoh Response, Dkt. # 152. The sovereign immunity issue was decided

14  in the Court's Order on Motion to Dismiss, a portion of which is quoted above. Dkt. # 86. The Court

15  will not revisit or reconsider that ruling.

16      The Hoh and Quinault both argue that the Court lacks subject matter jurisdiction because they

17  only waived sovereign immunity for the purpose of determining their treaty fishing rights vis-a-vis the

18  State of Washington. Hoh Response, Dkt. # 152, p. 1-2; Quinault Response, Dkt. # 153, p. 14. They

19  contend that the Court does not have jurisdiction over the waters outside the original case area, which

20  extended only to the three-mile limit. This is incorrect. The Court's subject matter jurisdiction in this

21  case arises from the treaties under 28 U.S.C. § 1331. That jurisdiction extends to all treaty-based fishing

22  and is not limited to State of Washington waters.

23      In 1975, in the "Herring Fisheries" proceedings, the court found,

24      The subject matter of the original trial in this action was limited to off-reservation treaty
        Indian fishing rights in the case area and the application of said rights to anadromous fish

25      resources.

26      The court has, however, expressly retained continuing jurisdiction to assure implementation
        of the court's ruling and to deal with environmental issues and other relevant matters. Issues

27      relating to fishing outside of the case area, on-reservation fishing, or nonanadromous fishing
        are clearly within the subject matter jurisdiction of this federal district court so that that [sic]

28

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

1  litigation with respect to such issues could clearly be brought before this court in separate
2  actions.  However, equity favors prevention of a multiplicity of actions, and in the opinion
   of this court, proper exercise of its jurisdiction permits, and efficient administration of justice
   requires, this court to deal with matters related to, but not included within, Final Decision # 1
3  such as possible treaty-right nonanadromous fishing.

4  *U.S. v. Washington*, 459 F.Supp. 1020, 1048 (W.D.Wash. 1978) (citations omitted).   The fact that the

5  Court's jurisdiction extended to all treaty fishing rights, whether within or outside the waters of the State

6  of Washington, was again recognized in the Makah's own determination of their ocean fishing rights.

7  There, the Court noted that the Treaty of Neah Bay,

8  secures to the Makah Tribe non-exclusive fishing rights in those portions of the fishing
   grounds described in Finding of Fact No. 346 that are under the fisheries management
9  jurisdiction of the United States, including jurisdiction conferred upon the State of
   Washington.
10
11 *U.S. v. Washington*, 626 F. Supp. 1405, 1468 (W.D.Wash. 1985).  Finding of Fact 346 described the

12 Makah U&A as including offshore waters well outside the State of Washington territorial limits.  *Id.* at

13 1467.  As the Ninth Circuit stated more recently, "Nothing in the plain language of the treaty provides a

14 geographic limitation, and longstanding case law establishes that U&A fishing grounds properly extend

15 into waters under United States jurisdiction."  *Mid-WinterTrawlers Cooperative v. Department of*

16 *commerce*, 282 F.3d 710, 718 (9th Cir. 2002).

17     These and other rulings clearly establish that the Court's subject matter jurisdiction extends to all

18 treaty-based fishing, whether within or outside the boundaries of the State of Washington.  Nevertheless,

19 the Quinault stated  at the oral argument that ,

20 We're asserting the treaty right to fish between the areas of three miles out to where we and
   the federal government have determined is the limit or the extent or the boundary of our treaty
   fishing right, which is now somewhere approximately 40 to 50 miles off the coast . . .  We are
21 fishing in that area legally.  We are fishing in that area legally pursuant to federal regulations.

22 Transcript of Hearing, pp. 27-28.  The argument is that NMFS has issued regulations allowing them to

23 fish for halibut, black cod and other species in the open ocean, so therefore their fishing is "legal."

24 There is no merit to this argument.   NMFS does not determine tribal U&A's; they can only be

25 established by this Court.  The Quileute tacitly acknowledged this when they referred to "Judge Boldt's

26 mandate that we each get 50 percent of what is in our U&As."  Transcript of Hearing, p. 37.  If there is

27 no adjudicated U&A, there is no right to take 50 percent.  And as counsel for the Port Gamble and

28
ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8

1  Jamestown S'Klallam pointed out in summary, U&A's cannot be established by federal regulators or

2  agencies; that would deny due process to other tribes and upset the very foundation of this case.

3          Long-established rulings in this case mandate that any Tribe wishing to exercise a treaty right to

4  take fish must do so within the confines of this case, by following the principles established by Judge

5  Boldt and others, and the procedures set forth in Paragraph 25.  The Tribes came to Court in 1970

6  asking the Court to determine and enforce their treaty rights, and they subjected themselves to the

7  Court's jurisdiction for all purposes relating to the exercise of their treaty rights.  The Quinault and

8  Quileute objections to the Makah motion for partial summary judgment on jurisdiction are thus without

9  merit.

10         As for standing, the Court earlier ruled that the Makah have standing to seek a determination of

11  the boundaries of the Quinault and Quileute U&A's.  Order on Motion to Dismiss, Dkt. # 86.  Their

12  assertion of a continued challenge to Makah's standing amounts to an improper motion for

13  reconsideration of that ruling.  The Court noted that Paragraph 25 allows "any party" to invoke the

14  jurisdiction of this Court to determine, among other things, the location of any tribe's U&A where it was

15  not specifically determined in Final Decision # 1.  The Court further found that the Makah have alleged

16  injury sufficient to meet the standing requirements, in that fishing by other tribes has an impact on the

17  Makah share of the treaty allocation.  The Court finds no basis for reconsideration.

18         The Makah motion for partial summary judgment is accordingly GRANTED, except as set forth

19  above regarding whether Judge Boldt "specifically determined" the extent of the Quinault and Quileute

20  U&A's in Final Decision # 1.  The Court now directs the parties to again confer and provide a revised

21  JSR so the Court can issue a scheduling order for further proceedings.

22         DATED July 8, 2013.

23

24                                          RICARDO S. MARTINEZ
                                            UNITED STATES DISTRICT JUDGE
25

26

27

28

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10