UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

UNITED STATES OF AMERICA, et al.,

                Plaintiffs,

    v.

STATE OF WASHINGTON, et al.,

                Defendants.

No. C70-9213RSM

Subproceeding No. 09-01

**ORDER DENYING MOTIONS FOR STAY PENDING APPEAL**

      This matter comes before the Court upon Motions For Stay Pending Appeal by the Quinault Indian Nation and Quileute Tribe (Dkt. # 187) as well as by the Hoh Tribe (Dkt. # 188) under Federal Rule of Appellate Procedure 8(a)(1). All three tribes move the Court to stay its July 8, 2013 Order (Dkt. # 171) granting in part the Makah Tribe's motion for summary judgment pending appeal of the Court's ruling that (1) it has jurisdiction to conduct a Paragraph 25(a)(6) adjudication of usual and accustomed fishing grounds in oceanic waters beyond three miles from shore; (2) a judicial determination of fishing areas in ocean waters outside Washington's jurisdiction is legally required; and (3) that in order to proceed to an (a)(6) adjudication, the treaty tribes must have submitted evidence of their fishing in the subject area before Judge Boldt. Dkt. ## 187, p. 2; 188, p. 1. The Hoh Tribe also moves the Court for a stay

ORDER DENYING MOTIONS TO STAY – 1

1  pending appeal of its decision (Dkt. # 128) to deny the Hoh Tribe's motion to intervene as the
2  Tribe is entitled to fully participate in this subproceeding as an interested party. *See* Dkt. # 188
3  at pp. 9-10. For the reasons set forth below, the motions for stay pending appeal are denied.

**I.   Background**

The Makah Tribe filed this Request for Determination ("RFD") on December 4, 2009, invoking the continuing jurisdiction of this Court under Paragraph 25(a)(1) and Paragraph 25(a)(6) of the Permanent Injunction, as modified by the Court's Order Modifying Paragraph 25 (C70-9213, Dkt. # 13599). Dkt. # 1. The Makah request a determination of the western boundary of the Quinault Indian Nation and Quileute Tribe's usual and accustomed fishing grounds (U&A) in the Pacific Ocean, to the extent that their U&A's were not specifically determined in *U.S. v. Washington*, 384 F.Supp. 312 (W.D. Wash. 1974) ("Final Decision #1"). At issue are the descriptions of the Quinault and Quileute U&A's by Judge Boldt in Final Decision # 1, both of which reference ocean areas "adjacent" to specified rivers, lakes, and tributaries. *See U.S. v. Washington*, 384 F.Supp. at 372, 419; Dkt. # 171, p. 2.

The Quinault and Quileute initially responded to the Request for Determination with a motion to dismiss on a number of grounds, including lack of subject matter jurisdiction and sovereign immunity. Dkt. ## 51, 53. In its Order denying the Tribes' motion, the Court cited to previous rulings as well as the Tribes' own objections to the Court's proposed entry of a "Sunset Order" closing the case in finding that the Tribes had waived their sovereign immunity. The Court stated,

> [t]he Quinault and Quileute benefited from the Court's ruling on the tribes' waiver of sovereign immunity in their dispute with the Makah in 1983 – 1985. They joined the

   other tribes in arguing against the Sunset Order on the basis that continuation of this
   case is necessary because of the waivers of sovereign immunity that are in place. They
   will not now be heard to assert that their sovereign immunity bars consideration of the
   Makah request.

Dkt. # 86, p. 4. The Court further found that the Makah had standing to request definition of the Quinault and Quileute U&A's under both Paragraphs 25(a)(1) and 25(a)(6) as invoked in the RFD. *Id.*

  With regards to jurisdiction, the Court found that it had been properly invoked under Paragraph 25(a)(6) "because the western boundary of the Quinault and Quileute U&A's were not 'specifically determined' in Final Decision I." *Id.* at p. 5. The Court subsequently modified this language upon motion for reconsideration by several other Tribes to read, "This Court's jurisdiction has been properly invoked by the Makah under sections (1) and (6) of Paragraph 25 of the Permanent Injunction." Dkt. # 104, p. 2. The Court then stated that "it views this subproceeding as addressing the meaning of the term 'adjacent' as used by Judge Boldt in describing the Quinault and Quileute U&A's. Therefore, it shall proceed under Paragraph 25(a)(1), and evidence shall be limited to the record that was before Judge Boldt." *Id.*

  The Hoh Tribe subsequently moved for leave to intervene, asserting that "it is likely that any determination of Quileute ocean [sic] usual and accustomed fishing grounds will also affect and define Hoh ocean [sic] usual and accustomed fishing grounds." Dkt. # 115, p. 2. In denying the motion to intervene, the Court explained that "the Hoh are entitled to participate fully in this subproceeding without formally intervening as a responding party." Dkt. # 128, p. 2. The Hoh Tribe has since filed several responses (*See* Dkt. ## 137, 152), joined with the

Quinault and Quileute in their Motion for Reconsideration (Dkt. # 173), and filed the instant Motion for Stay (Dkt. # 188).

The instant motions concern the Court's Order of July 8, 2013 (Dkt. # 171), substantially granting the Makah Tribe's motion for partial summary judgment. The Makah Tribe moved the Court for a ruling that (1) it has standing to seek adjudication of the Quileute and Quinault's Pacific Ocean U&A's and (2) that in Final Decision # 1, the Court did not specifically determine the U&A's in question. In its Order, the Court clarified first that the Makah "may be allowed to proceed under Paragraph 25(a)(6)" as opposed to solely Paragraph 25(a)(1). Dkt. # 171, p. 6. The Court explained that its previous Order "should be read" to indicate that the "subproceeding shall proceed *initially* under Paragraph 25(a)(1)" and shift to Paragraph 25(a)(6) for further proceedings if the Court finds that the Quinault and Quileute U&A's were not specifically determined by Judge Boldt. *Id.* The Court clarified that if "there was evidence before Judge Boldt that the treaty-time Quinault and/or Quileute fishermen went more than three miles out to sea in their quest for fish, then the extent of their U&A's in the ocean would not have been specifically determined by him," in which case adjudication would proceed under Paragraph 25(a)(6). Dkt. # 171. The Court also found that it possesses subject matter jurisdiction as its previous rulings "clearly establish that the Court's subject matter jurisdiction extends to all treaty-based fishing, whether within or outside the boundaries of the State of Washington." The Court expressly declined to reconsider its prior rulings that the Tribes had waived their sovereign immunity and that the Makah Tribe has standing to seek determination of the U&A's in question. *See* Dkt. # 86.

The Quinault Indian Nation and Quileute Tribe, joined by the Hoh Tribe, then moved the Court to reconsider its July 8, 2013 Order on Motion for Partial Summary Judgment, or, in

ORDER DENYING MOTIONS TO STAY – 4

the alternative to certify for immediate appeal. Dkt. ## 172, 173. The Court denied the motion as to both reconsideration and to certification for appeal. Dkt. # 179. As to the Tribes' assertion that the Court's Order "wrongfully denies" their sovereign immunity, the Court found that reconsideration on this issue is "both untimely and lacking in merit." Dkt. # 179, p. 3. As to the Tribes' contention that the Order "turned paragraph 25(a)(6) on its head," the Court informed the Tribes that they "could expedite final resolution of this matter by simply stipulating in their Joint Status Report…that Judge Boldt did not 'specifically determine' the western and northern extent of the Tribes' U&A, and the subproceeding will go forward under paragraph 25(a)(6)," in which case the proceeding "is not limited to the evidence before Judge Boldt." Dkt. # 179, p. 4. Through their Joint Status Report filed on October 1, 2013, the Quinault, Quileute, Makah, and Tulalip Tribes did so stipulate that Judge Boldt "did not 'specifically determine' the western extent of the Quileute and Quinault's ocean usual and accustomed fishing grounds or the northern extent of the Quileute's ocean usual and accustomed fishing grounds." Dkt. # 181, p. 2.

Despite the Court's denial of certification for appeal, the Quileute and Quinault as well as the Hoh appealed the Court's Order on summary judgment (Dkt. # 171) and Order denying reconsideration (Dkt. # 179) to the Ninth Circuit Court of Appeals. The Hoh Tribe additionally appealed the Court's Order denying its motion to intervene (Dkt. # 128) and its Order denying the Tribes' motion to dismiss (Dkt. # 86). The Quinault and Quileute as well as the Hoh now move the Court to stay its Order substantially granting partial summary judgment pending these appeals. *See* Dkt. ## 178, 188.

## II. Discussion

1. **Legal Standard**

The Court possesses discretionary authority to grant a stay pending appeal from an interlocutory order. The Supreme Court has recognized that a court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to grant a stay "is an exercise of discretion" rather than "a matter or right, even if irreparable injury would result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "The party requesting the stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. Courts are guided by four factors in determining whether to issue a stay pending appeal of a civil order:

> (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Lieva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). While "[t]he first two factors are the most critical," *Nken v. Holder*, 557 U.S. 418, 434 (2009), all four factors are considered under the flexible "sliding scale approach" endorsed by the Ninth Circuit. *Lieva-Perez*, 640 F.3d at 964-66. Through the instant motions, the moving Tribes fail to carry their burden of demonstrating that these four factors, alone or in combination, justify the issuance of a stay.

2. **Likelihood of Success on the Merits**

ORDER DENYING MOTIONS TO STAY – 6

In order to satisfy the first prong of the four-part test for issuance of a stay, "a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Lieva-Perez*, 640 F.3d at 968. Under the Ninth Circuit's formulation, the petitioner need not show that "success is more likely than not," but she must make a threshold showing that she has a "fair prospect" of success. *Id. See also*, *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). In evaluating a litigant's likelihood of success, courts consider "the likelihood that the Court of Appeals has jurisdiction over the order appealed from as well as the prospects for reversal assuming the existence of appellate jurisdiction." *In re Application of Chevron Corp.*, 709 F.Supp. 2d 283, 300 (S.D.N.Y. 2010). The Quinault, Quileute, and Hoh Tribes fail both to demonstrate the existence of appellate jurisdiction and to establish a minimum likelihood of success on the merits even if appellate jurisdiction were proper.

Federal appellate jurisdiction is generally limited to review of final decisions of the district courts. *See* 28 U.S.C. § 1291. Decisions that do not end the litigation on the merits are not final appealable orders under 28 U.S.C. § 1291. Rather, such interlocutory decisions may be subject to discretionary appeal under 28 U.S.C. § 1292(b) if the district court first certifies that they "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Absent such certification, interlocutory decisions may still be appealable as effective final judgments under the collateral order doctrine or, under 28 U.S.C. § 1292(a), if they grant, modify, or dissolve an injunction. *See SEC v. Capital Consultant LLC,* 453 F.3d 1166, 1170 (9th Cir. 2006) (explaining that "in certain circumstances, a decision that does not end the litigation may be considered final under the statute.").

The collateral order doctrine allows for appeal from a "narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system[,] nonetheless be treated as final." *Id.* at 1171 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). Collateral orders are those that (1) conclusively determine a disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) are effectively unreviewable from a final judgment. *Id.* at 1171. These requirements are to be strictly construed so as to avoid allowing for the narrow exception to swallow the general rule. *Digital Equip. Corp.*, 511 U.S. at 868. "As with all final decisions, the time for appeal of an appealable collateral order begins to run on the date the court enters the order." *SEC*, 453 F.3d at 1173.

Of the issues that the Quinault and Quileute have appealed – lack of subject matter jurisdiction, alleged modification of Paragraph 25, and sovereign immunity – only the latter may properly be considered a collateral order. The Court's holding that it possess subject matter jurisdiction over the instant dispute, as it does over all Treaty-based fishing, is not a collateral order because it is reviewable upon post-judgment appeal from a final order. *See U.S. v. Layton*, 645 F.2d 681, 683 (9th Cir. 1981) (noting that "the requirement that a federal court have subject matter jurisdiction "does not ... encompass a right not to be tried which must be upheld prior to trial if it is to be enjoyed at all.'" (quoting *U.S. v. Macdonald,* 435 U.S. 850, 861 (1978)).

Furthermore, the Court is not persuaded that the moving Tribes have a fair chance of succeeding on the merits of this claim. The Quinault and Quileute's argument that federal regulations addressing their oceanic fishing rights displace this Court's jurisdiction is misplaced. As the United States has itself noted, "NOAA's regulations addressing the Quinault

1   and Quileute U&A's were not intended or interpreted to be a conclusive boundary
2   determination, but instead were a 'reasonable accommodation' necessary for the agency's
3   management of the ocean fisheries in the absence of a judicial determination of the boundaries
4   of the Tribes' U&A's." Dkt. # 58, p. 7. In 1974, the Court expressly retained jurisdiction to
5   determine "the location of any of a tribe's usual and accustomed fishing grounds not
6   specifically determined in Final Decision # 1." *U.S. v. Washington*, 384 F.Supp. at 419. The
7   Court has since recognized and exercised its jurisdiction to determine usual and accustomed
8   fishing grounds in waters beyond those of the State of Washington. *See, e.g.*, *U.S. v.*
9   *Washington*, 459 F.Supp. 1020, 1048 (W.D. Wash. 1078)(finding that "proper exercise of its
10  jurisdiction permits, and efficient administration of justice requires, this court to deal with
11  matters related to, but not included within, Final Decision # 1"); *U.S. v. Washington*, 626
12  F.Supp. 1405, 1468 (W.D. Wash. 1985)(determining Makah U&A's well outside State of
13  Washington territorial limits); *Mid-WinterTrawlers Cooperative v. Dept. of Commerce*, 282
14  F.3d 710, 718 (9th Cir. 2002)("Nothing in the plain language of the treaty provides a
15  geographic limitation, and longstanding case-law establishes that U&A fishing grounds
16  properly extend into waters under United States jurisdiction."). The Court fails to identify any
17  reasonable basis for disagreement as to its subject matter jurisdiction over the instant RFD.
18         The Court's ruling as to the evidentiary requirements of Paragraph 25 is also not a
19  collateral order both because it is intertwined with the merits of the Makah Tribes' underlying
20  Request for Determination and because it is reviewable upon appeal from a final judgment. The
21  Quinault and Quileute's argument that the Court's decision as to Paragraph 25 is appealable
22  under 28 U.S.C. § 1292(a)(1) is also unavailing. *See* Dkt. # 198, p. 6. The Court's decision,
23  requiring that there have been some evidence presented to Judge Boldt that the Tribes fished

ORDER DENYING MOTIONS TO STAY – 9

beyond three miles from shore to effect proceedings under Paragraph 25(a)(6), did not have the "practical effect of refusing" an injunction, *Carson v. American Brands*, 450 U.S. 79, 83(1981), as none was sought. Nor did it modify the terms of or dissolve an injunction, as the Court has never enjoined the Treaty Tribes from fishing in areas that have not yet been subject to a request for determination.

The Quinault and Quileute evidently attempt to construe Final Decision # 1 as the relevant injunction whose modification would subject this Court's order to immediate interlocutory appeal. This argument too is unavailing, as the Court's July 8, 2013 Order on summary judgment did not "alter the legal relationship between the parties" so as to have the practical effect of modifying an injunction. *Public Serv. Co. of Colorado & U.S. v. Batt*, 67 F.3d 234, 237 (9th Cir. 1995). The Court merely clarified the process by which it would proceed to an adjudication under Paragraph 25(a)(6); it did nothing to alter the rules under which this longstanding case has operated. Moreover, the parties' stipulation in their Joint Status Report of October 1, 2013 that "this subproceeding will go forward under Paragraph 25(a)(6)" (Dkt. # 181, at 2-3) renders any dispute about the evidentiary requirements for proceeding under Paragraph 25(a)(6) moot for the purposes of this subproceeding. Interlocutory appeals are precluded "[u]nless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence.'" *Carson*, 450 U.S. at 84. As the adjudication is already proceeding under Paragraph 25(a)(6) pursuant to the parties' stipulation, the Court's interpretation of Paragraph 25 in its July 8 order cannot have caused any serious prejudice to the parties in the instant matter.

By contrast, the Court's decision that the Quinault and Quileute have waived their sovereign immunity for adjudications of their Treaty fishing rights would have been appealable

ORDER DENYING MOTIONS TO STAY – 10

under the collateral order doctrine were it not untimely. An order denying a claim of tribal sovereign immunity is an appealable collateral order. *See Burlington Northern & Santa Fe Rwy. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007). *See also*, *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1014 (9th Cir. 2013) (noting that "the Supreme Court had held that orders pertaining to immunities created by federal law ought to be immediately appealable via the collateral order doctrine."). However, appealable collateral orders are still subject to mandatory timeliness requirements. *See Harmston v. City & San Francisco*, 627 F.3d 1273, 1279 (9th Cir. 2010) ("Rule 4(a)'s timeliness requirement is both mandatory and jurisdictional" (internal quotations omitted)). Under Federal Rule of Appellate Procedure 4(a)(1)(B), notice of appeal must be filed within 60 days of the entry of the order appealed from in cases, such as the present, where the United States is a party.

Here, the Court entered its decision on the Quinault and Quileute's motion to dismiss on September 28, 2011 (Dkt. # 86), expressly rejecting the Tribes' assertion "that their tribal sovereign immunity bars consideration of this request." Dkt. # 86, pp. 3-4. Nowhere did the Court limit its findings as to the Tribes' waiver of their sovereign immunity to the original case area or to Paragraph 25(a)(1) proceedings. Rather, the Court construed the waiver broadly, declaring that the Tribes "would not now be heard to assert that their sovereign immunity bars consideration of the Makah request," a request which extended to determination of the Tribes' usual and accustomed fishing grounds in the Pacific Ocean. *Id.* at pp. 1, 4. Even if the Tribes could have misconstrued the Court's decision as limiting their waiver to Paragraph 25(a)(1) proceedings, any question over the scope of the waiver was settled by the Court's decision on March 14, 2012, amending its September 28 Order to state that the Court's jurisdiction "has

been properly invoked by the Makah under sections (1) and (6) of Paragraph 25 of the Permanent Injunction." Dkt. # 104, p. 2.

The Orders appealed from in the instant matter both expressly declined the revisit the Court's sovereign immunity decision. *See* Dkt. # 171, p. 7 (stating that "[t]he sovereign immunity issue was decided in the Court's Order on Motion to dismiss" and declining to "revisit or reconsider that ruling."); Dkt. # 179, p. 3 (declaring that "[t]he motion for reconsideration on the issue of sovereign immunity is both untimely and lacking in merit."). As the Court's July 8 and September 13, 2013 Orders did not "determine" or "resolve" the sovereign immunity issue, they are not appealable under the collateral order doctrine. *See SEC*, 453 F.3d at 1171. The window to appeal the Court's decision on sovereign immunity lapsed 60 days after entrance of its Orders of September 28, 2011 or March 4, 2012. Appeal of the Court's decision on sovereign immunity is consequently time-barred.

Moreover, even was timeliness not a bar, the moving parties have still failed to demonstrate that they have a substantial case for relief on the merits. As it stated in denying certification for appeal, the Court "cannot find that there is substantial ground for a difference of opinion" on the issue of sovereign immunity. Dkt. # 179, p. 6. When the Tribes came to this Court in 1970 seeking enforcement of their treaty fishing rights, they submitted themselves to the Court's jurisdiction and accordingly waived their sovereign immunity for the general purpose of determining their usual and accustomed fishing grounds. Nothing in the history of this long-running case suggests that the Tribes targeted their waiver of sovereign immunity to certain jurisdictional provisions of Final Decision # 1 but not to others.

Finally, the Hoh Tribe's attempt to appeal the Court's Order denying the Hoh's motion to intervene (Dkt. # 128) is both time-barred and fails to meet the substantive jurisdictional

criteria of the collateral order doctrine. The window to appeal the Court's Order lapsed 60 days after it was entered on August 9, 2012. Moreover, the Court's decision is not a collateral order because it is "effectively unreviewable on appeal from a final judgment." *SEC*, 453 F.3d 1171. The Court's decision did not preclude the Hoh from participation but rather clarified that they are already "entitled to participate fully in this subproceeding without formally intervening as a responding party." Dkt. # 128, p. 2. In *Stringfellow v. Concern Neighbors in Action*, 480 U.S. 370, 373 (1978), the Supreme Court similarly found that the district court's decision denying a request to intervene as of right but granting it permissively with significant limitations was not a reviewable collateral order. The Court explained that because the intervenor "is now a party to the suit by virtue of its permissible intervention, it can obtain effective review of its claims on appeal from the final judgment." *Id.* at 375. Similarly, the Hoh Tribe, as an active participant in the subproceeding, has not lost its right to appeal the Court's decision denying formal intervention upon final disposition of the subproceeding.

Moreover, the Court cannot find that the Hoh have a fair chance of prevailing on the merits even apart from the issue of appellate jurisdiction. The Court did not limit the Hoh's ability to fully participate in the subproceeding but simply clarified its scope as limited to the determination of the Quileute and Quinault's usual and accustomed fishing grounds. The Hoh have not presented any substantive reason to reconsider this decision.

**3. Irreparable Injury**

The party moving for a stay must show that irreparable harm is probable if a stay is not granted. *Lieva-Perez*, 640 F.3d at 968. *See also*, *Rajagopalan v. Noteworld, LLC*, 2012 WL 2115482, * 2 (W.D. Wash. 2012). The moving Tribes only claim to this effect is that irreparable harm will ensue were the case to proceed in a court that lacks jurisdiction due to

ORDER DENYING MOTIONS TO STAY  – 13

tribal sovereign immunity. Dkt. # 187, p. 10. The Tribes are correct that infringement of tribal sovereign immunity may constitute irreparable harm by invading tribal self-government in a way that "cannot be adequately compensated for in the form of monetary damages" and because the loss of tribal sovereignty may not be subject to remedy upon final determination on the merits. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250-51 (10th Cir. 2001). *See also*, *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d at 1090. However, the weight of this argument is diminished where the Tribes fail to establish the converse: that is, the Tribes fail to establish that irreparable harm could be avoided if a stay were granted. As explained supra, the Tribes' failure to timely appeal the Court's ruling on their waiver of sovereign immunity and to raise a serious legal question makes it highly improbable that a stay would avert any harm.

Furthermore, the Tribes have failed to establish that their waiver of sovereign immunity was, in fact, involuntary. As this Court explained in denying certification for appeal, the Quinault, Quileute, and Hoh Tribes voluntarily waived their sovereign immunity in submitting themselves to the Court's jurisdiction to determine their Treaty fishing rights in 1970, and again invoked this waiver "to their own benefit in proceedings between them and the Makah Tribe in 1983." Dkt. # 179, p. 6. The Tribes cannot establish that they would be irreparably harmed by a waiver that they voluntarily affected.

The moving Tribes' claim that they will be injured by incurring litigation expenses pending a ruling on appeal (*See* Dkt. # 187, pp. 11-12) is also unavailing as it fails to rise to the level of irreparable harm. *See, e.g.*, *Guifu Li v. A Perfection Franchise, Inc.,* 2011 WL 2293221 (N.D. Cal. 2011) ("Many courts…have concluded that incurring litigation expenses does not amount to an irreparable harm."); *Sample v. Brookdale Senior Living Communities, Inc.*, 2012

ORDER DENYING MOTIONS TO STAY – 14

WL 195175, at *2 (explaining that "monetary expenses incurred in litigation are normally not considered irreparable").

### 4. Harm to Other Parties and to the Public Interest

The Quinault and Quileute argue that the Makah will be not be substantially harmed by a stay as they have already entered into management agreements governing their fisheries to which Makah has been a party and because the Quinault and Quileute have not entered the whiting fishery, the threat of which precipitated the Makah's request for determination. The moving Tribes are correct that the Makah are unlikely to be severely harmed by further protraction of the RFD, though the Makah would be injured were the Quinault and Quileute to act on their threatened entrance into the whiting fishery outside of their usual and accustomed fishing grounds. However, the moving Tribes elide the injury to the other interested parties to the case as well as to the public interest.

As the Port Gamble and Jamestown S'Klallam Tribes note, "[a] public interest here is the necessity of not providing an equitable remedy as reward to a party that engages in unilateral conduct in derogation of the rights of other Tribes." Dkt # 192, p. 5. The requested stay injures the many Tribes who have dutifully followed the process established by this Court by carving out a favorable process for ocean Tribes and, in particular, for those two Tribes who seek to avail of this Court's jurisdiction only when to their advantage. The need to protect the integrity of the process established under Final Decision # 1 and followed since and to treat equally all those tribes who have consented to the jurisdiction of this Court warrants heavily against a stay.

### III. Conclusion

The Quinault, Quileute, and Hoh Tribes have failed to carry their burden of demonstrating that the four factors described herein, individually or in combination, favor a stay. In particular, the moving Tribes' inability to establish that the Ninth Circuit possesses jurisdiction over the appealed interlocutory orders alone provides sufficient grounds for denying a stay. The unlikeliness of irreparable harm to the moving parties combined with the likely harm to the public interest were a stay to issue provide more than sufficient grounds for this Court to deny the requested stay. For the reasons stated herein, the Court ORDERS that the Motion to Stay by the Quinault Indian Nation and Quileute Tribe (Dkt. #187) and the Motion to Stay by the Hoh Tribe (Dkt. # 188) are DENIED.

DATED this 5th day of December 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE