UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | Case No. C70-9213RSM |
| Plaintiffs, | Subproceeding No. 91-1 |
| v. | ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

THIS MATTER comes before the Court on the Quileute Indian Tribe's Motion for Temporary Restraining Order. Subproceeding 91-1, Dkt. #461.[1] Quileute seeks an Order from the Court restraining the Tribes in this subproceeding from conducting the first sub-fishery in the tribal halibut fishery until authorized by the tribal halibut management plan. *Id.* The Court has reviewed Quileute's motion, along with its supporting exhibits and related briefing, as well as oppositions from the Port Gamble S'Klallam, Swinomish, Jamestown S'Klallam, Lummi, Tulalip, Suquamish and Lower Elwha Klallam Tribes, and their supporting briefing. Dkts. #461, #462-67 and #469. The Court also considered motions to strike filed by Swinomish, Suquamish, and Lower Elwha.[2] Dkts. #471, #474, #475 and #479. Further, the Court

---

[1] C70-9213RSM, Dkt. #21421. All remaining citations refer to those documents filed in Subproceeding 91-1.

[2] The Court DENIES those motions to strike and deems Quileute's Reply brief to be a supplement to the record.

ORDER
PAGE - 1

considered the oral arguments presented via telephone hearing before the Court on March 20, 2017. The participating Tribes included: Quileute, Quinault, Makah, Lower Elwha Klallam, Jamestown S'Klallam, Port Gamble Clallam, Suquamish, Swinomish, Tulalip, Lummi, Nooksack, Hoh, Nisqually and Skokomish. A representative from the State of Washington Department of Fish and Wildlife also attended the hearing.

A federal court may issue a TRO "with or without written or oral notice to the adverse party" only if "specific facts in the affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the moving party "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). The standards for issuing a TRO are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995).

The Ninth Circuit has described the standards for deciding whether to grant a motion for a preliminary injunction:

> To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury.

*Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989) (citations omitted). The speculative risk of a possible injury is not enough; the threatened harm must be imminent. *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); Fed. R. Civ. Proc. 65(b)(1)(A).

At present, the halibut fisheries are governed by a patchwork of different agreements. The parties agree that the 2011 management measures remain in place, and that paragraph 6.a. of those measures allows the coastal tribes to defer the opening of the initial unrestricted fishery based on weather criteria.  The parties also appear to agree that a side agreement entered into by the coastal tribes sets forth certain weather criteria for an automatic deferral of the opening.  However, the parties' agreements stop there.  While Quileute relies on paragraph 2 of the coastal weather criteria side agreement to argue that the unrestricted opener may always be deferred by the agreement of the four coastal tribes, the Inside Tribes insist that such provision was never adopted by the Court as part of the management measures.  The Tribes also disagree on the true reasons for the instant motion.

The difficulty with working under the patchwork scheme that now governs the halibut fisheries, is that every piece means something individually, but it is not always easy to determine what those pieces mean as a whole.  That has led to years of arguments between the Tribes, and almost yearly requests of the Court to determine which Tribes may fish and when, and how much they may catch.  This is an inefficient way of managing the halibut fisheries long term, and impacts both the Court's and the Tribes already limited resources.  Further, it leads to decisions like the one herein, that produce negative results for all of the Tribes.

In this case, the 2011 management measures state that the coastal tribes will keep the remaining parties informed of any decision that would affect the opening of the initial unrestricted fishery based on weather criteria.  Days ago, the four coastal tribes made a decision to defer the opening based on the weather, and informed the parties as much.  The 2011 side agreement allows the coastal tribes to take such action.  The 2012 transcript of this Court's oral ruling on the parties' prior motions to change the *status quo* management plan in this is

ORDER
PAGE - 3

consistent with the notion that the coastal Tribes may unilaterally defer the initial unrestricted halibut fishery opening.  Accordingly, based on the record before it, the Court finds that the coastal tribes have demonstrated a likelihood of success on the merits.

In addition, the Court finds that the coastal tribes have demonstrated irreparable harm if the Inside Tribes are allowed to continue fishing, and that the remainder of the criteria for a TRO have been met.  Accordingly the Court will grant their motion.

The Court acknowledges that this is not the best outcome for all of the Tribes.  The Court also reminds the Tribes that it has pushed them for nearly two decades to meet and confer to reach an agreement on a workable halibut management plan.  The Tribes are, and always have been, in a better position than the courts to resolve these types of disputes in a way that balances all of their interests.  Until a resolution can be reached among them, the Court will continue to make decisions that adversely affect one Tribe or another, as that is the nature of civil court proceedings.  Thus, the Court again reminds the parties that should they wish to return to settlement negotiations following this year's halibut fishery, they may request a referral to Magistrate Judge Tsuchida.

Accordingly, the Court hereby finds and ORDERS:

1. The Motions to Strike filed by Swinomish, Suquamish, and Lower Elwha (Dkts. #471, #474, #475 and #479) are DENIED.

2. Quileute's Motion for Temporary Restraining Order (Dkt. #461) is GRANTED.

3. As directed by the Court during its telephonic hearing, all Inside Tribes must CEASE halibut fishing **no later than 6:00 p.m. on Monday, March 20, 2017**. Any tribe that has engaged in such fishing to date must report the current catch no later than **March 22, 2017, at noon.**

ORDER
PAGE - 4

4. Quileute shall submit a proposed plan for the initial unrestricted halibut fishery to the Court.  This proposed plan shall be filed **no later than 6:00 p.m. on Wednesday, March 22, 2017.**

5. Any opposition to Quileute's proposed plan shall be filed **no later than 6:00 p.m. on Friday, March 24, 2017.**

6. **No later than Monday, March 27, 2017**, the parties shall meet and confer and jointly propose to the Court several dates and times of availability for a hearing on a Preliminary Injunction between April 11 and April 14, 2017.

DATED this 21 day of March, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 5