UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA, et al.,

   Plaintiffs,

v.

STATE OF WASHINGTON, et al.,

   Defendants.

Case No. C70-9213

Sub-proceeding No. 17-sp-01

ORDER GRANTING S'KLALLAM AND SQUAXIN ISLAND TRIBES' MOTIONS FOR SUMMARY JUDGMENT AND DENYING SKOKOMISH INDIAN TRIBE'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter comes before the Court on the Jamestown S'Klallam and Port Gamble S'Klallam Tribes' (collectively "S'Klallam") and Squaxin Island Tribe's ("Squaxin") motions to dismiss, or in the alternative, for summary judgment, and Skokomish Indian Tribe's ("Skokomish") cross-motion for summary judgment. Dkts. #21, #23 and #32.[1] In addition, the Court resolves what remains of Skokomish's motion to stay the proceedings. Dkt. #19.

---

[1] These filings appear at Dkts. #21495, #21498 and #21513 in the main case, *USA v. Washington*, C70-9213RSM. For ease of reference, the Court will cite only to the subproceeding docket number in the body of this Order, unless it is citing to filings in a different proceeding.

S'Klallam requests that the Court grant it summary judgment on three bases: 1) the Skokomish request for determination is procedurally improper because the Skokomish fail to allege which jurisdictional provision they invoke; 2) the Skokomish request is legally invalid because it violates a settlement agreement: The Hood Canal Agreement; and 3) the Court has previously determined, unambiguously, that the Skokomish U&A is the Hood Canal and its drainage basin, and therefore it is not entitled to any ruling that it has primary fishing rights outside of that established U&A. Dkt. #21 at 3-5. The Squaxin move for summary judgment on essentially the same bases, albeit with slightly different legal arguments, and include an additional argument for dismissal on the basis that Skokomish failed to follow the pre-filing requirements established by this Court. Dkt. #23.[2]

Skokomish have opposed the S'Klallam and Squaxin motions and also move for summary judgment in their favor. Dkt. #32. Skokomish assert that they have complied with all pre-filing requirements and have appropriately asserted jurisdiction over this matter, and argue that both this Court and the Ninth Circuit Court of Appeals have already determined that their U&A and primary fishing right extend beyond the Hood Canal and its drainage basin. *Id.* Accordingly, they assert that summary judgment in their favor is appropriate.

The matter having been fully briefed, and having determined that oral argument is not necessary in this matter, the Court now GRANTS S'Klallam's and Squaxin's motions for

---

[2] The Swinomish Indian Tribal Community ("Swinomish") and the State of Washington support dismissal of the Skokomish Request for Determination on the bases argued by S'Klallam and Squaxin, and oppose Skokomish's cross-motion for summary judgment. Dkts. #31 and #38.

summary judgment for the reasons set forth herein, and DENIES Skokomish's cross-motion for summary judgment.

## II. BACKGROUND

On April 27, 2017, Skokomish filed an *ex parte* Motion for Leave to File a New Subproceeding. Dkt. #1. The motion was granted, and Skokomish filed their Request for Determination ("RFD") in this matter. Dkts. #2 and #3. In their RFD, Skokomish seek the following relief:

> (A) An Order confirming the Skokomish Indian Tribe's right to take fish and to exercise Skokomish's primary right within those portions of Skokomish (or Twana) Territory lying outside of the Hood Canal Drainage Basin; and
>
> (B) A preliminary and permanent injunction prohibiting interference with the Skokomish Indian Tribe's right to take fish and to exercise Skokomish's primary right within those portions of Skokomish (or Twana) Territory lying outside of the Hood Canal Drainage Basin . . . .

Dkt. #3 at 8.

After the Court issued its Order Regarding Initial Disclosures and Joint Status Report, the parties engaged in a Rule 26(f) conference. During that conference, Skokomish was informed that some parties planned to file motions to dismiss for failure to follow pre-filing requirements and for lack of jurisdiction. *See* Dkt. #19. Accordingly, on May 31, 2017, Skokomish filed a motion requesting a stay of the deadlines set forth in the Court's Order Regarding Initial Disclosures and Joint Status Report, and asking the Court to direct the parties to return to mediation. *Id.*

On June 2, 2017, the Court held a telephonic status conference to discuss the motion made by Skokomish. Ultimately, the Court stayed the pending initial disclosures and joint

status report headlines, but deferred any ruling on whether the parties should return to mediation. Dkt. #20.

The current motions to dismiss, or alternatively for summary judgment, followed and are now ripe for review.

### III. DISCUSSION

**A. Legal Standards**

*1. Motions to Dismiss Under 12(b)(6)*

S'Klallam and Squaxin initially bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's failure to state a claim upon which relief may be granted. On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, a plaintiff's claims must be dismissed. *Twombly*, 550 U.S. at 570.

The Court typically limits its Rule 12(b)(6) review to allegations set forth in the Complaint. Here, all parties request that the Court examine documents outside the Complaint, and have moved for summary judgment in the alternative. Although the Court recognizes that

it can take judicial notice of most of the offered documents, in an abundance of caution the Court converts these motions to ones for summary judgment, and will analyze them under the applicable summary judgment standard.

   2.  *Motions for Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

The parties have cross-moved for summary judgment. However, cross motions for summary judgment do not warrant the conclusion that one of the motions must be granted. The Court must still determine whether summary judgment for either party is appropriate. *See*

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-1137 (9th Cir. 2001).

## B. Alleged Pre-Filing Deficiencies

As an initial matter, the Court addresses Squaxin's argument that this Court lacks jurisdiction over the Skokomish Request for Determination ("RFD") because they failed to comply with the pre-filing requirements. Dkts. #23 at 11-2. Prior to bringing new subproceedings in this matter, parties must comply with Paragraph (b) of Final Decision #1, 384 F. Supp. at 419, as modified by this Court's August 23, 1993 Order Modifying Paragraph 25 of Permanent Injunction (Case No. 70-9213, Dkt. #13599). That Order provides:

> To invoke this court's continuing jurisdiction, the party seeking relief shall initiate a subproceeding in this action by filing a request for determination. Subproceedings will be conducted in accordance with the following procedures:
>
> (1) Before a request for determination is filed . . ., the party seeking relief ("requesting party") shall meet and confer with all parties that may be directly affected by the request ("affected party") and attempt to negotiate a settlement of the matter in issue. . . . In addition to other matters the parties may wish to address, the parties shall discuss at the meeting (A) the basis for the relief sought by the requesting party; (B) the possibility of settlement; (C) whether the matter is properly one for the Fisheries Advisory Board (FAB); (D) identification of technical issues relevant to the matter in controversy, areas of agreement and disagreement on such issues, and methods for developing an agreed technical basis to narrow or resolve the controversy; (E) whether independent extra-judicial actions . . . may remove the need for or warrant deferral of an adjudication; (F) whether earlier rulings of the court may have addressed or resolved the matter in issue in whole or in part; and (G) whether the parties can agree to mediation or arbitration of the issues before or in lieu of litigation. The parties shall continue to meet and negotiate as long as there appears to them to be a substantial possibility of settlement. . . .

Case No. 70-9213, Dkt. #13599 at 2-4.

Squaxin argues that Skokomish's meet and confer and mediation did not conform to the requirements of ¶ 25(b)(1) in several ways. First, Squaxin asserts that Skokomish, during the meet and confer, "at best" stated an intent to adjudicate this matter under ¶ 25(a)(6) regarding an additional U&A and a primary fishing right in the "entire Satsop Fishery". Dkt. #23 at 11. However, in contrast to that position, Squaxin notes that Skokomish now seeks a determination through its RFD of a much larger U&A and a primary fishing right in all or part of the "entire Satsop Fishery" and in the southwestern Puget Sound inlets and the freshwaters that flow into them where Squaxin has adjudicated U&A. *Id.* Squaxin asserts those areas were never discussed at the meet and confer. Accordingly, Squaxin argues that significant differences exist between the "matter in issue" as presented at the meet and confer and the RFD, namely (1) the geographic area where Skokomish asserts previously adjudicated U&A and primary fishing rights, and (2) the kind of relief it seeks – *i.e.*, confirmation of previously adjudicated rights, as opposed to a declaration of additional U&A under ¶ 25(a)(6) and a primary fishing right that had never been litigated. *Id.*

Second, Squaxin argues that ¶ 25(b)(1)(F) requires that Skokomish have "discuss[ed]" at the meet and confer "whether earlier rulings of the court may have addressed or resolved in the matter in issue in whole or in part". Dkt. #23 at 12. Squaxin asserts that Skokomish did not discuss at the meet and confer its current claim that it possesses previously adjudicated U&A and a primary fishing right outside of Hood Canal. *Id.* Squaxin further asserts that Skokomish did not mention its interpretation of the Court's 1984 decision until March 9, 2017, well after it had concluded the meet and confer and mediation. *Id.*

Finally, Squaxin argues that Skokomish violated ¶ 25(b)(1)(A)'s requirement that the parties "discuss" at the meet and confer "the basis for the relief sought by the requesting party." Dkt. #23 at 12. Squaxin asserts that at the meet and confer, Skokomish generally described some anthropological and historical evidence that it intended to use to support its claim to U&A and primary fishing rights in the entire Satsop Fishery, but did not take the position that it would seek the Court's continuing jurisdiction to confirm that the "entire Satsop Fishery", much less all of the area described in George Gibbs' journal (Finding of Fact #353), had previously been adjudicated as Skokomish U&A with a primary fishing right.[3] *Id.*

Skokomish responds that it satisfied the pre-filing requirements. Dkt. #32 at 16-21. Skokomish notes that a meet and confer was held on November 4, 2015, followed by a mediation (demanded by Skokomish) that took place on April 28-29, 2016. Dkt. #32 at 16. Further, on April 29, 2016, Skokomish agreed to keep mediation open until July 31, 2016, to further consider "requests, comments and questions."[4] *Id.* Skokomish asserts that if no settlement could be reached by July 31, 2016, then commencing August 1, 2016, it was free to

---

[3] In its Answer to the RFD, the State of Washington states "[t]he Skokomish Tribe's Request for Determination (RFD) appears to rely on a completely different legal theory than what had been presented at the Meet and Confer." Dkt. #27 at 2.

[4] Skokomish have cited to at least one exhibit, an email dated June 14, 2016 at 1:25 pm, without providing a copy of that email to the Court through a Declaration or otherwise, and without citing to any specific docket number where it might appear elsewhere in the record. *See* Dkt. #32 at 16. Accordingly, the Court is unable to consider that exhibit. Further, Skokomish cite to other emails without identifying specifically where they appear in the record, *i.e.*, an email dated August 5, 2016 at 8:55 a.m., although the Court has managed to locate it. The Court does not appreciate the assumption that it will scour a docket containing tens of thousands of documents in an effort to locate certain exhibits, and reminds Skokomish of its obligation under Federal Rule of Civil Procedure 56(a) to support motions for summary judgment with specific citations to the record.

ORDER -8

file a Request for Determination, which it did. *Id*. On August 5, 2016, Skokomish wrote to the mediator and counsel stating that because no settlement had been reached, it intended to file a Request for Determination, the scope of which had been "modified . . . based on the comments and legal concerns raised by parties to *US v. Washington* and other Indian tribes." Dkt. #23-3, Ex. 13. Skokomish did not explain how the scope had been modified. *Id.*

The Court does not agree with Skokomish that these actions are "entirely consistent with the principals espoused in Paragraph 25(b)." *See* Dkt. #32 at 17. As Squaxin points out, these procedures require the parties to negotiate and mediate issues in a <u>meaningful</u> way, and to seriously explore the potential for compromise, before initiating a formal proceeding. Dkt. #23 at 11. It should be very clear to the parties by now that these procedures are intended to reduce litigation, conserve the Court's and the parties' resources, and make subproceedings more efficient and manageable by narrowing inter-party disputes. While, Skokomish argues that the parties were well aware of its position now raised in the instant proceedings, primarily referring to arguments made in other cases, it also acknowledges that it modified the scope of its RFD after mediation was completed. This "modification" was clearly different than what was actually discussed at the meet and confer, and defeats the purpose of any meaningful attempt to resolve the issue amongst the tribes. As a result, the Court agrees that Skokomish failed to follow the pre-filing procedures prior to filing the instant suit, and the Court could dismiss this matter on that basis. However, as further discussed below, there are additional reasons for dismissal.

///

///

## C. Lack of Jurisdiction Under Paragraph 25

S'Klallam and Squaxin argue that this Court lacks jurisdiction to hear Skokomish's RFD because Skokomish fail to invoke jurisdiction under any specific subsection of Paragraph 25(a). Dkts. #21 and #23. Instead, Skokomish initiated this subproceeding through an RFD that generally invokes Paragraphs 25(a)(1)-(a)(7) of Final Decision #1, 384 F. Supp. at 419, as modified by this Court's August 23, 1993 Order Modifying Paragraph 25 of Permanent Injunction (Case No. 70-9213, Dkt. #13599). *See* Dkt. # 3 at ¶ 3.12. Skokomish makes no effort to identify which of these subparagraphs provides jurisdiction over the relief it seeks.

Paragraph 25 of the Permanent Injunction, as modified, instructs the parties as follows:

> 25. (a) The parties or any of them may invoke the continuing jurisdiction of this court in order to determine:
>
> (1) Whether or not the actions intended or effected by any party (including the party seeking a determination) are in conformity with Final Decision #1 or this injunction;
>
> (2) Whether a proposed state regulation is reasonable and necessary for conservation;
>
> (3) Whether a tribe is entitled to exercise powers of self-regulation;
>
> (4) Disputes concerning the subject matter of this case which the parties have been unable to resolve among themselves;
>
> (5) Claims to returns of seized or damaged fishing gear or its value, as provided for in this injunction;
>
> (6) The location of any of a tribe's usual and accustomed fishing grounds not specifically determined by Final Decision #1; and
>
> (7) Such other matters as the court may deem appropriate.

Case No. 70-9213, Dkt. #13599 at 1-2. Skokomish's RFD does not implicate matters under 25(a)(2), (a)(3) or (a)(5), therefore those subsections cannot confer continuing jurisdiction in this Court. Skokomish oddly states, "[t]he Request for Determination is correctly brought pursuant to Paragraphs (a)(1) through 25(a)(7), as the participants cannot agree on the applicability of any one subsection." Dkt. #32 at 21. Even if that was accurate with respect to the parties' agreement or disagreement as to which subsection invoked jurisdiction, it is of no import. It is Skokomish's burden, as the filing party, to identify the basis of jurisdiction. Skokomish fails to do so.

Moreover, Skokomish's reliance on other general bases for federal jurisdiction does not salvage their position. They have filed a RFD pursuant to this Court's continuing jurisdiction as set forth in the injunction issued by Judge Boldt more than 40 years ago. To take advantage of that continuing jurisdiction, Skokomish must comply with Paragraph 25 of Final Decision #1 as modified by this Court's August 23, 1993 Order Modifying Paragraph 25 of Permanent Injunction. Case No. 70-9213, Dkt. #13599. That includes identifying a specific basis of jurisdiction. On Reply in support of their cross-motion for summary judgment, Skokomish suggests that either 25(a)(1) or 25(a)(6) are the appropriate bases for jurisdiction. *See* Dkts. #32 and #41. Setting aside that this Court is not required to guess at the asserted basis for jurisdiction, it will assume for the sake of argument that Skokomish adequately pleaded these subsections.

Paragraph 25(a)(1) provides the Court with jurisdiction to determine whether actions by a party are in conformity with Judge Boldt's findings in Final Decision # 1. While Paragraph 25(a)(1) jurisdiction comes into play where there is potential ambiguity in Judge Boldt's

findings, Paragraph 25(a)(6) provides jurisdiction to resolve "the location of any of a tribe's usual and accustomed fishing grounds [("U&A")] not specifically determined by Final Decision # 1." Paragraph 25(a)(6) jurisdiction is thus contingent on the Court's finding, or the parties agreeing, that the disputed waters in question were not specifically determined by Judge Boldt. For the reasons discussed below, neither of these subparagraphs confer jurisdiction over the RFD because there is no ambiguity in Judge Boldt's determination of the Skokomish U&A, and the scope of that U&A has been determined in a manner contrary to the assertions now made by Skokomish.

**D. Skokomish U&A and Primary Right**

As noted above, Skokomish have asked the Court for:

(A) An Order confirming the Skokomish Indian Tribe's right to take fish and to exercise Skokomish's primary right within those portions of Skokomish (or Twana) Territory lying outside of the Hood Canal Drainage Basin; and

(B) A preliminary and permanent injunction prohibiting interference with the Skokomish Indian Tribe's right to take fish and to exercise Skokomish's primary right within those portions of Skokomish (or Twana) Territory lying outside of the Hood Canal Drainage Basin . . . .

Dkt. #3 at 8. Thus, the Court finds it appropriate to proceed initially under Paragraph 25(a)(1) in order to determine whether the waters "lying outside of the Hood Canal Drainage Basin" have already been determined to be part of Skokomish's U&A, as described by Judge Boldt in Findings of Fact 137 in Final Decision # 1. Only if that question cannot be resolved by looking at the record before Judge Boldt, and should the Court find that Skokomish's U&A in question was not specifically determined in Final Decision # 1, would it be appropriate to turn to Paragraph 25(a)(6) for further proceedings.

Judge Boldt's original court decision regarding the Skokomishs U&A, found in Finding of Fact 137, provides as follows:

> The usual and accustomed fishing places of the Skokomish Indians before, during and after treaty times included all the waterways draining into Hood Canal and the Canal itself.

*United States v. Washington*, 384 F. Supp. 312, 377 (1974). There is no ambiguity in that decision.[5] However, Skokomish argue that its U&A was further defined as part of a 1984 subproceeding before United States District Judge Craig, and rely on that alleged expanded scope of their U&A to support their instant RFP and request for summary judgment. Dkt. #32.

On March 22, 1984, Judge Craig issued an "Order Adopting the Special Master's Report and Recommendation Re Skokomish Indian Tribe's Request for Determination of Primary Right in Hood Canal Fishery." 626 F. Supp. 1405, 1486 (W.D. Wash. 1984), *aff'd* 764 F.2d 670 (9th Cir. 1985). In that Order, Judge Craig found that:

> The Skokomish Indian Tribe holds the primary right to take fish in Hood Canal and on all rivers and streams draining into Hood Canal south of the line displayed on Exhibit A (attached to Special Master's Report and Recommendation, etc.) commencing on the west shore of Hood Canal at Termination Point and following the course of the Hood Canal Floating Bridge to the east shore of the canal.

*Id.* at 1486-87. In reaching that conclusion, Judge Craig "fully" adopted the Findings of Fact in the Special Master's Report and Recommendation. *Id.* at 1487. One such Finding of Fact provided:

> In his 1854-55 journal, George Gibbs, a lawyer, ethnographer and secretary to the 1855 Treaty Commission, described Skokomish (or Twana) territory as:

---

[5] Skokomish agree that there is no ambiguity in the scope of their U&A, but focus on their 1984 primary right subproceeding rather than on Judge Boldt's decision. Dkt. #32 at 4. For the reasons discussed herein, that focus is misplaced.

> Extend[ing] from Wilkes' Portage northwest across to the arm of Hood Canal up to the old limits of the Tchimakum, thence westerly to the summit of the Coast Range, thence southerly to the head of the west branch of the Satsop, down that branch to the main fork, thence east to the summit of the Black Hills, then north and east to the place of beginning.
>
> (Tr. at Hearing, p. 29-30.) Gibbs' description of Twana territory embraces Hood Canal and its drainage basin northward along the canal to the point on the west shore now known as Termination Point, which was the southern limit of the Tchimakum shown on a map prepared by Gibbs in 1856. (Ex. SK-SM-4; *see also* Ex. SK-SM-5 for contemporary names). Gibbs' description of Twana territory was based on information gathered from Indians at and before the treaty councils and at contemporaneous meetings. The Court finds it to be the best available evidence of treaty-time locations of Twana territory.

626 F. Supp. at 1489. Skokomish asserts that there is no ambiguity in that determination and asserts that Judge Craig, in adopting the Finding of Fact, thereby determined that its U&A encompassed the entire area described by Mr. Gibbs. Dkt. #32. In further support of their position, Skokomish point to an Order referring the matter to the Special Master for "the issue of determining the 'usual and accustomed fishing grounds' of the Skokomish Tribe," as evidence that Judge Craig ultimately expanded their U&A to the area described by Mr. Gibbs. Dkt. #32 at 1-2. As a result, Skokomish now argue that they are entitled to the relief they seek through the current RFD, and that all other parties are precluded from challenging such a finding. Dkt. #32. The Court disagrees.

As an initial matter, Skokomish has blatantly misrepresented the record in the 1984 subproceeding.[6] Skokomish rely heavily on Judge Craig's Order referring the subproceeding

---

[6] That misrepresentation has caused this Court to consider sanctions, as further discussed below.

to a Special Master, arguing that the purpose of the referral was to determine the scope of its U&A, as demonstrated by the language of Order of referral. Dkt. #32 at 9. However, Skokomish ignore that the Order of reference upon which they rely was expressly amended to make clear that the Skokomish U&A was not at issue in that subproceeding; rather, the subproceeding was to determine whether Skokomish had a primary right in the Hood Canal and its drainage basin – the very U&A defined by Judge Boldt. Dkt. #23-3, Ex. 9. The amended Order stated:

> The court has previously made an Order of Reference to the Special Master to determine usual and accustomed fishing grounds of the Skokomish Indian Tribe. **It appears that the request of the tribe was for determination of the primary right of Skokomish Indian Tribe in Hood Canal Fishery. The previous Order of Reference to the Special Master is therefore amended to cover the determination of this request**.

*Id.* (emphasis added).

Moreover, the RFD filed in the 1984 subproceeding expressly stated that Skokomish were seeking a resolution of whether it had a primary right in the U&A already determined by Judge Boldt. Dkt. #22, Ex. F. That context is important. The subproceeding simply did not adjudicate the scope of the Skokomish U&A. Indeed, Judge Boldt's original ruling establishes the standard for what a tribe must demonstrate to prove off-reservation fishing rights at usual and accustomed grounds and stations. A tribe must provide evidence of fishing grounds where its members "customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe . . . ." *United States v. Washington*, 384 F. Supp. 312, 332 (1974). The phrase "usual and accustomed" applies in a restrictive sense and does not apply to sites used only occasionally or incidentally. *Id.* at 356. As the State of Washington

points out, Mr. Gibbs' description of Twana territory did not identify or discuss any locations where fishing occurred. Further, Skokomish cite no legal authority for their assertion that Mr. Gibbs' reference to Twana "territory" – by itself and without supporting evidence of regular and customary fishing practices at identified locations – satisfies the standard to establish additional U&A. *See* Dkt. #38.

Having reviewed all of the arguments made by S'Klallam and Squaxin in their motions for summary judgment, as well as those of the other supporting Tribes and the State of Washington, the Court agrees that Judge Boldt's determination of the Skokomish U&A was unambiguous, and that the 1984 subproceeding neither changed that determination nor expanded it. Accordingly, the Court rejects the arguments by Skokomish that any party is precluded from challenging the scope of the U&A Skokomish now asserts. Further, the Court finds it unnecessary to specifically address whether the RFD filed in the instant subproceeding is precluded by the Hood Canal Agreement. *See* Dkt. #21. Likewise, because Judge Boldt's original determination is not ambiguous, there is no need to engage in a Paragraph 26(a)(6) analysis. The RFD will be dismissed with prejudice for all of the reasons above.

**E. Sanctions**

Although not specifically requested by the S'Klallam and Squaxin, the Court has considered whether sanctions are appropriate against Skokomish for bringing this matter. The Court is concerned with the way Skokomish presented the record of the underlying proceedings in an attempt to support their legal claims and circumvent jurisdictional issues in this proceeding. What the Court finds particularly egregious is the fact that Skokomish not only misrepresented what the Special Master was tasked with reviewing, but that even after several

parties pointed out the Order Skokomish relied on had been amended to clarify the nature of the subproceeding, Skokomish failed to correct the record, and indeed failed to acknowledge their misrepresentation at all. *See* Dkt. #41.

There are serious ramifications for this conduct, as it greatly affects the way this Court views its ongoing jurisdiction over these matters. For 40 years this Court has interpreted Judge Boldt's findings, and there are questions as to how many genuine disputes actually remain. As this Court has noted in other Orders:

> . . . Judge Andrew Kleinfeld eloquently stated in his dissent from the amended opinion filed in the dispute between the upper Skagit Indian Tribe and the Suquamish Indian Tribe (Subproceeding 05-03),
>
> > Continually revisiting Judge Boldt's decades-old opinions (and the limited record supporting them) in an attempt to discern what he thought the customs of multiple peoples were in the 1850's and earlier, besides being extremely burdensome and expensive, is a fundamentally futile undertaking. The truth is not knowable. "This exercise is not law, and is not a reliable way to find facts, so it is hard to see why courts are doing it and how it could be preferable to the Indian tribes working some dispute resolution system out for themselves."

*United States v. Washington*, 20 F. Supp.3d 899, 986 (W.D. Wash. Dec. 5, 2012) (citations omitted). Bringing disputes such as the instant one, where the filing party has failed to engage in the proper pre-filing requirements, has failed to identify the basis for continuing jurisdiction, and has misrepresented the record in what appears to be an attempt to circumvent the limitations of this Court's continuing jurisdiction, only bolsters the idea that perhaps the sun has set on Judge Boldt's injunction and this Court's continuing jurisdiction under it.

Ultimately, the Court will not order sanctions here. However, Skokomish, and in fact all of the Tribes, are reminded that their actions may ultimately be the impetus for the

dissolution of any oversight by this Court. This reminder should be the driving force behind real efforts to resolve matters without Court intervention, and motivation to engage in genuine attempts to resolve conflicts without asking the Court to do so for them. Time and time again, this Court has stated that the Tribes are in the best position to craft agreements that will adequately meet their needs. This matter is no different.

## IV. CONCLUSION

Having reviewed the parties' motions, the briefs in opposition thereto and in support thereof, along with the Declarations and Exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. S'Klallam's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Dkt. #21) is GRANTED for the reasons set forth above.[7]

2. Squaxin's Motion to Dismiss Skokomish Indian Tribe's Request for Determination Or, In the Alternative, Motion for Summary Judgment (Dkt. #23) is GRANTED for the reasons set forth above.[8]

3. Skokomish Indian Tribe's Cross-Motion for Summary Judgment (Dkt. #32) is DENIED.[9] This case is dismissed <u>with prejudice</u> and is now CLOSED.

4. Skokomish Indian Tribes' Motion for Order to Stay (Dkt. #19), what remains of it, is DENIED AS MOOT.[10]

---

[7] Dkt. #21495 in the main case, *USA v. Washington*, C70-9213RSM.

[8] Dkt. #21498 in the main case, *USA v. Washington*, C70-9213RSM.

[9] Dkt. #21513 in the main case, *USA v. Washington*, C70-9213RSM.

[10] Dkt. #21494 in the main case, *USA v. Washington*, C70-9213RSM.

DATED this 30th day of August 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE