UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, et al., <br><br> Defendants. | No. C70-9213RSM <br><br> Subproceeding No. 09-01 <br><br> AMENDED ORDER REGARDING BOUNDARIES OF QUINAULT AND QUILEUTE U&AS |

THIS MATTER comes before the Court on the State's Unopposed Motion for Correction of Scrivener's Error. Dkt. #447. The Court GRANTS the State's motion, and issues the following Amended Order which VACATES and REPLACES the Court's prior Order regarding boundaries found at Dkt. #439.

On July 9, 2015, the Court entered lengthy Findings of Fact and Conclusions of Law, determining that the western boundary of the Quinault Indian Nation's usual and accustomed fishing ground in the Pacific Ocean is 30 miles from shore, that the western boundary of the Quileute Tribe's usual and accustomed fishing ground in the Pacific Ocean is 40 miles offshore, and the northern boundary of the Quileute Tribe's usual and accustomed fishing ground is a line drawn westerly from Cape Alava. Dkt. #369. However, the Court also noted that it had not received evidence at trial specifying the longitudes associated with the U&A boundaries determined therein. Accordingly, in order to delineate the boundaries with certainty, the Court

ORDER
PAGE - 1

directed the parties and interested parties to brief the precise longitudinal coordinates associated with the boundaries set forth herein. Dkts. #369 and #387. The Quileute, joined by the Quinault and Hoh Indian Tribes, submitted proposed longitudinal coordinates of its longitudinal boundaries. Dkts. #372, #374, #376. The Makah proposed different longitudinal boundaries. Dkt. #377. The State of Washington also filed a response, generally concurring with the Makah, but proposing still different boundaries. Dkt. #381. Pursuant to Court Order, the Quileute, Quinault and Hoh then filed a supplemental response to the Makah's and State's proposals. Dkt. #388.

In consideration of its prior Orders, the Court adopted the longitudinal and latitudinal boundaries proposed by the Quileute, Quinault and Hoh. Dkt. #394. The Court explained:

> All parties agree that the latitude of Quileute's northern boundary at Cape Alava is 48°10'00" N. latitude, and that the longitude of Quileute's western boundary begins in the north at 125°44'00" W. The parties also agree that the latitude of Quinault's northern boundary is 47°40'06" N. latitude, and the longitude of Quinault's western boundary begins in the north at 125°08´30"W. The dispute is how the parties believe the Western boundary for the Quileute and Quinault should be demarcated as the line proceeds south. The Court agrees with the Quileute, Quinault and Hoh that the methodology applied by this Court in the Makah's prior ocean RFD, *see U.S. v. Washington*, 626 F. Supp. 1405, 1467 (W.D. Wash. 1985), is the appropriate method to use in the instant case. The Court finds that equity and fairness demand the same methodology for delineating the boundary at issue here, and agrees that it is the *status quo* method of delineating U&A ocean boundaries by this Court.

Dkt. #394 at 2. Accordingly, the Court found that:

1. Quileute's usual and accustomed ocean fishing boundaries are:

    a. Northern boundary: 48°10'00" N. latitude (Cape Alava).

    b. Western boundary: 125°44'00" W. longitude.

    c. Southern boundary: 47°31'42" N. latitude (Queets River).

2. Quinault's usual and accustomed western fishing boundary as determined by the Court is 30 nautical miles offshore at longitude 125°08'30" W. and runs in a straight line running north to south between Quinault's northern boundary (47°40'06" N. latitude) and its southern boundary (46°53'18" N. latitude). Quinault's ocean U&A is:

   a. Northern boundary: 47°40'06" N. latitude.

   b. Western boundary: 125°08'30" W. longitude.

   c. Southern boundary: 46°53'18" N. latitude.

Dkt. #394 at 3.

This matter was then appealed to the Ninth Circuit Court of Appeals. Dkts. #396 and #398. While the Court of Appeals affirmed in large part this Court's determinations, it reversed this Court with respect to its determination of the Quileute's and Quinault's U&A boundaries. Dkt. #435. The Court of Appeals stated:

> The parties agreed as to the northern boundaries but "dispute how the parties believe the Western boundary for the Quileute and Quinault should be demarcated as the line proceeds south." The court decided to use longitudinal lines because it had done so in a prior proceeding with respect to the Makah's boundaries. The court started at the northernmost point of the Quileute's U&A, drew a line 40 miles west, and used that longitudinal position as the western boundary for the entire area. The court did the same with 30 miles for the Quinault. The map below depicts the final result.
>
> [graphic omitted]
>
> The Makah takes issue with the court's use of a straight vertical line because the coastline trends eastward as one moves south. The Makah calculates the coast-to-longitude distance at the southernmost point as 56 miles for the Quileute and 41 miles for the Quinault. In other words, the Quileute's and Quinault's southernmost boundaries respectively extend 16 miles and 11 miles beyond the court's finding of usual and accustomed fishing, and their total areas respectively sweep in an extra 413 square miles (16.9% of the total 2,228 miles). The result would be different, for example, had the boundary lines been drawn parallel to the coastline.

ORDER
PAGE - 3

> These significant disparities underscore the deficiencies in the court's longitudinal boundaries. . . .
>
> . . .
>
> Accordingly, we reverse the district court's order imposing longitudinal boundaries. Because the law does not dictate any particular approach or remedy that the court should institute, we leave it to the court on remand to draw boundaries that are fair and consistent with the court's findings.

Dkt. #435 at 23-27.

After remand, this Court reviewed its Findings of Fact and Conclusions of Law and Memorandum Order (Dkt. #83), along with its Amended Order Regarding the Boundaries of Quinault and Quileute U&As (Dkt. #394), and the following documents:

1. Quinault Indian Nation's Notice of Longitudinal Boundary Line of the Quinault Usual and Accustomed Fishing Area (Dkt. #372);

2. Declaration of Anthony Hartrich In Support of Quinault Indian Nation's Notice of Westerly Boundary of the Quinault Usual and Accustomed Fishing Area (Dkt. #373);

3. Quileute Indian Tribe's Notice of Usual and Accustomed Fishing Grounds (Dkt. #374);

4. Declaration of Garrett L. Rasmussen In Support of Quileute's Notice of Usual and Accustomed Fishing Grounds (Dkt. #375);

5. Hoh's Response In Support of Quileute Indian Tribe's Notice of Usual & Accustomed Fishing Grounds and Quinault Indian Nation's Notice of Longitudinal Boundary Line of the Quinault Usual and Accustomed Fishing Area (Dkt. #376);

6. Makah's Response to Quileute and Quinault's Notices of Usual and Accustomed Fishing Grounds (Dkt. #377);

7. Declaration of Dale Johnson In Support of Makah's Response to Quileute and Quinault's Notices of Western Boundaries (Dkt. #378);

8. Declaration of Eian Ray In Support of Makah's Response to Quileute and Quinault's Notices of Western Boundaries (Dkt. #379);

9. Fourth Declaration of Stephen Joner (Dkt. #380);

10. State's Response to Quileute and Quinault Tribes' Notices of Usual and Accustomed Fishing Grounds (Dkt. #381);

11. Declaration of Captain Dan Chadwick (Dkt. #382);

12. Declaration of Andrew Weiss (Dkt. #383);

13. Quileute Indian Tribe, Quinault Indian Nation and Hoh Indian Tribe's Reply Re: Notice of Usual and Accustomed Fishing Grounds (Dkt. #388); and

14. Second Declaration of Garrett Rasmussen.

In light of the analysis and instructions of the Ninth Circuit Court of Appeals, the Court now finds and ORDERS as follows:

1. The State of Washington's method of determining the boundaries at issue are most consistent with this Court's determinations regarding boundaries in this matter, and addresses the Court of Appeals' concerns with the Court prior conclusions. *See* Dkts. #381 at 3-4 and #435 at 23-27.

2. As described in Mr. Weiss's and Captain Chadwick's Declarations, the State's method is also consistent with how ancient mariners would navigate in offshore waters without aid of modern navigation tools, and it poses no barrier to location and compliance by typical vessels engaged in coastal fisheries. *See* Dkts. #382 and #383.

3. Utilizing the State's method, the narrative description for each U&A is:

**Quileute offshore U&A:** A polygon commencing at Cape Alava, located at latitude 48°10'00" north, longitude 124°43'56.9" west; then proceeding west approximately forty nautical miles at that latitude to a northwestern point located at latitude 48°10'00" north, longitude 125°44'00" west; then proceeding in a southeasterly direction mirroring the coastline at a distance no farther than forty nautical miles from the mainland Pacific coast shoreline at any line of latitude, to a southwestern point at latitude 47°31'42" north, longitude 125°20'26" west; then proceeding east along that line of latitude to the pacific coast shoreline at latitude 47°31'42" north, longitude 124°21'9.0" west.

**Quinault Offshore U&A:** A polygon commencing at the Pacific coast shoreline near Destruction Island, located at latitude 47°40'06" north, longitude 124°23'51.362" west; then proceeding west approximately thirty nautical miles at that latitude to a northwestern point located at latitude 47°40'06" north, longitude 125°08'30" west; then proceeding in a southeasterly direction mirroring the coastline no farther than thirty nautical miles from the mainland Pacific coast shoreline at any line of latitude, to a southwestern point at latitude 46°53'18" north, longitude 124°53'53" west; then proceeding east along that line of latitude to the pacific coast shoreline at latitude 46°53'18" north, longitude 124°7'36.6" west.

*See* Dkt. #383 at ¶ 15.

DATED this 21 day of March, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 6