UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>                            Plaintiffs,<br><br>    v.<br><br>STATE OF WASHINGTON, et al.,<br><br>                            Defendants. | CASE NO. C70-9213RSM<br><br>SUBPROCEEDING NO. 19-01RSM<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER |

## I.    INTRODUCTION

The Swinomish Indian Tribal Community ("Swinomish"), the Tulalip Tribes ("Tulalip"), and the Upper Skagit Indian Tribe ("Upper Skagit") initiated this subproceeding against the Lummi Nation ("Lummi"). Dkt. #3.[1] Swinomish, Tulalip, and Upper Skagit (collectively, the "Region 2 East Tribes"), seek to establish that "[t]he adjudicated usual and accustomed fishing places of the Lummi Nation do not include Region 2 East." *Id.* On November 4, 2019, the Lummi Indian Business Council filed a regulation purporting to open portions of Region 2 East to crab fishing on November 6, 2019. Dkt. #10-1[2] at 4. That same day, Swinomish filed its

---

[1] Dkt. #22,063 in Case No. C70-9213RSM. The Court provides citations to the docket of the underlying case the first time a filing is cited. Thereafter, citations are only to the docket of Subproceeding 19-01RSM.

[2] Dkt. #22,078-1 in Case No. C70-9213RSM.

ORDER – 1

motion for a temporary restraining order. Dkt. #8.[3]  Upper Skagit and Tulalip filed similar motions for temporary restraining orders on November 5, 2019. Dkts. #13[4] and #16.[5]  The motions all seek an order enjoining Lummi from opening the Shellfish Region 2 East (generally, the waters east of Whidbey Island) winter crab fishery.

After the motions were filed, Swinomish informed the Court of the unfortunate passing of a Tulalip tribal leader and elder. Dkt. #19.[6]  Swinomish informed the Court that all involved had agreed to delay the opening of the Region 2 East winter crab fishery. *Id.*  The Court struck the noting dates, set a time specific for responses, and directed the parties to renote their motions for consideration at the appropriate time. Dkt. #22.[7]  Lummi subsequently responded. Dkt. #29.[8]  As an interested party, the Jamestown S'Klallam Tribe and Port Gamble S'Klallam Tribe (collectively, "S'Klallam"), also responded.[9]  Dkt. #26.[10]

On November 7, 2019, Swinomish filed notice renoting the motions for the Court's consideration on that date. Dkt. #35.[11]  Swinomish further indicated that the Region 2 East winter crab fishery is now "scheduled to resume on Thursday, November 14, 2019, at 9:00 a.m." *Id.* at 2. Having reviewed the motions and the record herein, the Court enters this temporary restraining order.

//

//

---

[3] Dkt. #22,076 in Case No. C70-9213RSM.
[4] Dkt. #22,081 in Case No. C70-9213RSM.
[5] Dkt. #22,084 in Case No. C70-9213RSM.
[6] Dkt. #22,088 in Case No. C70-9213RSM.
[7] Dkt. #22,090 in Case No. C70-9213RSM.
[8] Dkt. #22,099 in Case No. C70-9213RSM.
[9] S'Klallam's response was directed less at the merits of the pending motions and instead sought to clarify several representations of the parties as it relates to Lummi's U&A. *See* Dkt. #26.
[10] Dkt. #22,095 in Case No. C70-9213RSM.
[11] Dkt. #22,107 in Case No. C70-9213RSM.

ORDER – 2

## II. BACKGROUND

Judge Boldt determined the Lummi usual and accustomed fishing places ("U&A") in 1974. *United States v. Washington*, 384 F. Supp. 312, 360 (W.D. Wash. 1974). Judge Boldt determined that "the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay." *Id.* Since that time, Lummi has not opened any portion of Region 2 East to crab fishing. Dkt. #10[12] at ¶ 30; Dkt. #14[13] at ¶ 13; Dkt. #17[14] at ¶ 7. Nevertheless, on November 4, 2019, Lummi "issued a regulation opening a portion of Region 2 East in the winter crab fishery." Dkt. #11[15] at ¶ 21; Dkt. #11-1 at 50.

The State of Washington and the treaty tribes share management responsibility and, as relevant here, "enter into shellfish management agreements for each shellfish management area in order to regulate treaty and non-treaty harvest in accordance with the principles of fairness, conservation, and sharing." Dkt. #11 at ¶ 4. Overall harvest quota is allocated 50% to the State and 50% to the tribes. *Id.* The tribal harvest quota within Region 2 East has historically been managed by the Region 2 East Tribes and the Suquamish Indian Tribe ("Suquamish"), which has a limited U&A in the southern tip of Region 2 East. *Id.* at ¶ 7. The tribes collaborate to a considerable degree to assure that the harvest is appropriate in scope, that the timing of the opening provides advantageous conditions, and that the overall harvest stays within the tribal quota. *Id.* at ¶¶ 6–7. In the past, Lummi has participated in some of the collaborative planning but has not opened any portion of Region 2 East to Lummi crab fishing. *Id.* at ¶¶ 6–16.

---

[12] Dkt. #22,078 in Case No. C70-9213RSM.
[13] Dkt. #22,082 in Case No. C70-9213RSM.
[14] Dkt. #22,085 in Case No. C70-9213RSM.
[15] Dkt. #22,079 in Case No. C70-9213RSM.

ORDER – 3

1        In 2018, Lummi communicated its intent to open Region 2 East to crab fishing. Swinomish and Upper Skagit immediately sought injunctive relief from this Court. *United States v. Washington*, Subproceeding 18-01RSM, Dkts. #3[16] and #7.[17] However, Lummi responded that it did not actually plan to fish in Region 2 East and the Court found injunctive relief unnecessary at that time. Subproceeding 18-01RSM, Dkt. #27.[18] Subsequently, that subproceeding was voluntarily dismissed so the tribes could satisfy prefiling requirements. Subproceeding 18-01RSM, Dkt. #38.[19]

       Since then, the tribes have continued to dispute whether Lummi may participate in the Region 2 East crab fishery. Lummi points out that it is a signatory to the tribes' management plan with the State, the "2019-202 Region 2 East Dungeness Crab Harvest Management Plan for Fisheries Conducted by U.S. v. Washington, Subproceeding 89-3 Treaty Tribes and the State of Washington" (the "Region 2 East 2019-2020 Plan"). Dkt. #30[20] at ¶ 5. Concerned over "a slowly declining catch rate over the past 4 years," the Region 2 East 2019-2020 Plan set an overall tribal harvest quota of 1,000,000 pounds, the lowest quota in the history of the Region 2 East crab fishery. Dkt. #11 at ¶ 17. During the summer openings, the Region 2 East Tribes and Suquamish harvested 688,000 pounds of crab, leaving 312,000 pounds for the winter crab fishery. *Id.* at ¶ 19.[21]

       The Region 2 East Tribes and Suquamish have generally carried on management of the tribal quota, as they have done in the past. The tribes use the harvest quota and anticipated fleet

---

[16] Dkt. #21,749 in Case No. C70-9213RSM.
[17] Dkt. #21,754 in Case No. C70-9213RSM.
[18] Dkt. #21,773 in Case No. C70-9213RSM.
[19] Dkt. #21,794 in Case No. C70-9213RSM.
[20] Dkt. #22,100 in Case No. C70-9213RSM.
[21] The Court notes that the record is unclear on the total tribal harvest quota remaining and there is a possibility that the tribes may exceed their harvest quota because the State harvested more than its quota during the management year. Dkt. #11 at ¶¶ 18–19.

ORDER – 4

sizes of the Region 2 East Tribes and Suquamish to set regulations opening the fishery for a set number of hours and limiting the amount of fishing gear that can be used by each boat in an effort to stay within the tribal harvest quota. *Id.* at ¶ 28. Lummi asserts that it "regularly participates" in management discussions involving Region 2 East "when notified," but has been "regularly excluded." Dkt. #30 at ¶¶ 7–8.[22] Specifically, Lummi indicates that it was asked to leave a September 27, 2019 meeting after confirming its "intent to participate in the next Region 2 East crab fishery." *Id.* at ¶ 13. Thereafter, the other tribes set regulations with the expectation that Lummi would not be participating in the Region 2 East winter crab fishery. Dkt. #11 at ¶ 17.

On November 4, 2019, the Region 2 East Tribes and the Suquamish shared their regulations with the Lummi, giving notice of their intent to open the Region 2 East crab fishery on November 6, 2019. Dkt. #30 at ¶¶ 14–17. Those regulations anticipated an opening of 248 hours—or, most likely, until the remaining tribal harvest quota was caught—and anticipated a fleet of approximately 170 boats using up to 50 pots per boat. *Id.* Upon receiving notice of the opening, Lummi issued regulations opening fishing in a portion of Region 2 East for the same time and for an "expected effort" of 10 boats. Dkt. #11-1 at 50; Dkt. #30 at ¶ 18. Shortly thereafter the Region 2 East Tribes filed their motions seeking temporary restraining orders preventing Lummi from participating in the Region 2 East winter crab fishery.

### III.  DISCUSSION

The standards for issuing a TRO are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Ca.

---

[22] Tulalip indicates that it understood Lummi participation in Region 2 East management meetings as seeking to understand the process and any potential impacts outside of Region 2 East. Dkt. #17 at ¶ 7.

ORDER – 5

1995). The Ninth Circuit has described the standards for deciding whether to grant a motion for a preliminary injunction as follows:

> To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury.

*Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989) (citations omitted). The speculative risk of a possible injury is not enough; the threatened harm must be imminent. *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); FED. R. CIV. PROC. 65(b)(1)(A).

**A. Likelihood of Success on the Merits**

The underlying question in this action is whether Lummi U&A extends into or through Region 2 East. While not determinative, perhaps the most obvious starting point is that Lummi has largely not pursued any such rights for 45 years. Additionally, Upper Skagit notes that this Court, and the Ninth Circuit, have previously determined that Lummi's U&A is ambiguous. Dkt. #13 at 6. In determining whether Lummi U&A encompasses waters east of Whidbey Island, the Region 2 East Tribes point out that Lummi's U&A does not include any "geographic anchors or features listed" within those waters. *Id.* at 12;[23] *see also* Dkt. #8 at 11–12. Conversely, the Region 2 East Tribes focus on the fact that geographic anchors or features are listed for Lummi U&A to the north and west of Whidbey. Dkt. #8 at 11–12. The Region 2 East Tribes further draw support from earlier decisions in this case and rely on inconsistent positions taken by

---

[23] Upper Skagit in fact takes the position that Lummi in fact did not have any *pre-treaty* fishing sites south of Anacortes. Dkt. #13 at 9–12

ORDER – 6

Lummi as to whether they traveled south through the waters west of Whidbey or the waters east of Whidbey. *Id.* at 12–13; Dkt. #13 at 12–14.

In opposition, Lummi primarily makes a procedural argument seeking to avoid the issue in full. Dkt. #29 at 9 (arguing that the request for determination sets forth a scope broader than the scope of the issues discussed in the pre-filing meet and confer). The argument is not overly persuasive, and the Court does not find it appropriate to wade into the issue at this stage. Beyond that, Lummi relies on the burden of proof that the Region 2 East Tribes will be required to satisfy and argues that they will not satisfy their burden. *Id.* at 10–15 (arguing that the Region 2 East Tribes will not find sufficient evidence in the record to establish that Judge Boldt intended to exclude waters east of Whidbey from Lummi's U&A).

On this record, the Court does not find that the likelihood of success on the merits tips sharply in favor of either side. But the Court also concludes that from the motions, briefing, and declarations submitted, there is little question that there are serious questions as to the geographic boundaries of the Lummi U&A, and whether the Lummi has U&A in Region 2 East.

**B. Irreparable Harm**

The Court does find that the Region 2 East Tribes have adequately demonstrated that irreparable harm is likely in the absence of the relief they seek. The Court begins by considering the status quo. As noted, the Lummi U&A was determined in 1974 and since that time, Lummi has never conducted a crab fishery in Region 2 East. Dkt. #10 at ¶ 30; Dkt. #14 at ¶ 13; Dkt. #17 at ¶ 7. Lummi represents that it opened a shrimp fishery in Region 2 East, but does not indicate that it actually participated in the fishery. Dkt. #29 at 2. Lummi does not establish any actual fishing within Region 2 East, while the Region 2 East Tribes have participated in the Region 2 East crab fishery since their U&As were established. Dkt. #10 at ¶ 30.

ORDER – 7

The Court further finds that disruption of this status quo would occasion irreparable harm on the Region 2 East Tribes. The Region 2 East Tribes paint the picture of a strained resource that has become even more important as salmon harvests have declined since the 1970s. Dkt. #10 at ¶ 13; Dkt. #18[24] at ¶ 3. The fishery is further strained this year as the state has overharvested its quota, leaving some question as to whether the Region 2 East Tribes will even be able to harvest their full treaty share. Dkt. #11 at ¶ 24. Pointing to already crowded fishing grounds, the Region 2 East Tribes establish that Lummi participation in the fishery would place "additional strain on the resource." *Id.* As Upper Skagit notes, the Region 2 East Tribes have worked to prospectively manage the crab fishery and allowing unplanned Lummi participation would significantly harm the "hard won effort to achieve cooperative planning and management of the fishery that protects the resource." Dkt. #14 at ¶ 19.

The Region 2 East Tribes also focus on the economic harm that would befall them and their members. Swinomish points out that many of the members participating in the winter fishery rely on it to bridge the gap to the next fishing season. Dkt. #11 at ¶ 24. "A decline in [Swinomish's] commercial crab fisheries would seriously affect [Swinomish's] economy and the Swinomish as a whole." Dkt. #10 at ¶ 16. More drastically, Upper Skagit specifies that because of its limited marine U&A, Lummi fishing will harm its "[p]rimary opportunity to harvest crab." Dkt. #14 at ¶ 5. "Because crab is the only economic shellfish resource for Upper Skagit, if that income goes down, Upper Skagit's boats likely will go out of business." *Id.* at ¶ 17.

There is some dispute as to the scope of potential Lummi fishing. Lummi argues that its regulation anticipates only 10 boats, far more limited participation than most of the other tribes. Dkt. #29 at 7. But the Region 2 East Tribes note that Lummi's regulation may not actually be

---

[24] Dkt. #22,086 in Case No. C70-9213RSM.

ORDER – 8

limited to 10 boats, as this is only the "expected effort."  Dkt. #11 at ¶ 22 ("To the best of my knowledge, if the entire Lummi fleet chose to fish in Region [2 East] that morning, they would be authorized to do so.").  Lummi has a large fishing fleet and has the potential to overrun the crab fishery and stop the Region 2 East Tribes well short of their anticipated harvests.  Dkt. #11 at ¶ 26.  Lummi's only response is that it is "preparing a recording for the Fishing Regulation Hotline" to clarify that permits are required and limited to 10.  Dkt. #30 at ¶ 19.  Beyond Lummi's representation that it "has successfully used this approach to restrict participation in other fisheries," there is little to imply that this is a meaningful restriction on Lummi fishing.

Lummi also argues that it is opening crab fishing in only a portion of Region 2 East (Area 24C), further limiting the scope of any impact.  Dkt. #29 at 8.  But Swinomish points out the illusory nature of this limitation.  Limiting Lummi fishing to Area 24C does not limit the total impact as the quota is set across all of Region 2 East regardless of whether the crab is caught in Area 24C.  Dkt. #8 at 6.  The Region 2 East Tribes explain that "[i]n a competitive fishery like Region 2 East, each participating tribe harvests as much as it can in a set number of hours, regardless of cumulative catch."  Dkt. #11 at ¶ 27.  The Region 2 East Tribes typically would "be able to take the entirety of the remaining treaty quota."  *Id.* at ¶¶ 28, 31.  But an influx of fishers would increase the simultaneous catch, perhaps resulting in a drastically shortened season or overharvest.  The risk of overfishing is increased because of the nature of regulation does not allow for real-time monitoring and any delay in reporting increases the risk of overharvest.  *Id.* at ¶ 27.  This is doubly important as any overfishing of the tribes' harvest quota this year will directly decrease the tribal harvest quota for next year.  *Id.* at ¶ 28 (asserting that Region 2 East Tribes may suffer twice).

Lummi also questions the true impact of its opening as compared to the full scope of the Region 2 East crab fishery.  Dkt. #29 at 6.  Lummi points that its 10 "expected" boats will only

ORDER – 9

harvest 21,000 pounds of crab, by Swinomish's own estimates, and that this is a mere 2% of the yearly Region 2 East crab harvest. *Id.* at 7 (citing Dkt. #8 at 7; Dkt. #10 at ¶ 31). But Lummi does not adequately establish why the inquiry should focus on the yearly catch instead of the winter crab fishery. Viewed from the more focused perspective, potential Lummi harvest is more significant at 6.7% of the remaining tribal harvest quota. In economic terms, Swinomish explains that this amounts to approximately $110,000. Dkt. #11 at ¶ 25. Moreover, the Region 2 East Tribes point out that recovery for such an economic harm is not possible due to Lummi's sovereign immunity. Dkt. #8 at 6; Dkt. #13 at 17. While Lummi argues that the irreparable harm will be small, it does not argue that there is no irreparable harm. *See also* Dkt. #13 at 16 (noting precedent establishing that "intangible injuries may qualify as irreparable harm" and that the "magnitude of the injury" is irrelevant). Further, Lummi focuses largely on the financial impact, discounting the cultural impact.

Swinomish establishes that the fishery is important to the tribe because it keeps members employed in "deeply meaningful and rewarding work that is a central part of our history, identity, culture, and spirituality." Dkt. #10 at ¶ 17. Likewise, Upper Skagit stresses the importance of Region 2 East fishing on its "cultural and religious identity." Dkt. #14 at ¶ 4 ("Fishing is an essential element of the survival and continuity of our fishing culture. It is sacred to our people. It is an essential part of who we are."). Further, to the extent Lummi fishing decreases the open season, Upper Skagit will suffer a diminished cultural experience as its members will have less time on the water. *Id.*; *see also* Dkt. #10 at ¶¶ 20–29 (Swinomish noting the subsistence and cultural importance of the Region 2 East crab fishery); Dkt. #18 at ¶ 3 (noting importance of fishery on Tulalip members, including economic, historic, and cultural importance). In sum, and as specified by Swinomish, "allowing Lummi to participate in the Region 2 East crab fishery before it has established its right to do so will visit irreparable harm on Swinomish and its

ORDER – 10

members, as well as the other Region 2 East Tribes, not only commercially but culturally and spiritually." Dkt. #10 at ¶ 33.

As the foregoing discussion makes clear, the co-management and regulation of the treaty tribes' harvest quota is interrelated, the outcome of the fishing is variable, and the fishery is deeply ingrained in the cultural identities of the Region 2 East Tribes. The Court concludes that allowing Lummi entrance into a fishery that it has not participated in for the last 45 years is likely to result in irreparable injury to the Region 2 East Tribes.

### C. Equities and Public Interest

The Court has little problem concluding that the equities and the public interest favor injunctive relief here. Put most succinctly, "Lummi will suffer no harm if this Court preserves the status quo. Its fisheries can proceed as they have for the last 45 years." Dkt. #8 at 14. More specifically, Upper Skagit points out that Lummi has extensive shellfish fisheries in areas outside of Region 2 East while Upper Skagit's limited U&A is entirely within Region 2 East. Dkt. #14 at ¶ 14. Likewise, this Court has previously explained that "it is in the public interest to ensure the orderly management of disputes within this long-running case and to discourage Tribes from opening fisheries without establishing a right to do so in accordance with paragraph 25 of the permanent injunction in Final Decision #1." *United States v. Washington*, 2015 WL 12670517 *2 (W.D. Wash. Mar. 27, 2015). Both factors weigh in favor of injunctive relief.

### IV. CONCLUSION

Accordingly, having reviewed the motions, the briefing, declarations and exhibits in support of the briefing, and the remainder of the record, and having made the findings above, the Court further finds and ORDERS:

1. The Swinomish Motion for Temporary Restraining Order (Dkt. #8); Upper Skagit Indian Tribe's Motion for Temporary Restraining Order (Dkt. #13); and the Tulalip Motion for Temporary Restraining Order (Dkt. #16) are GRANTED.

2. The Lummi Nation is hereby ENJOINED from opening or participating in any crab fishery in Region 2 East, until the Court has ruled on the parties' motions for preliminary injunction and shall take action necessary to assure its members comply with this Order.

3. The Court construes the motions and briefs filed in support of and opposition to the motions for TROs as motions and briefs for preliminary injunctions. No additional written briefing is necessary at this time. The parties will not be precluded from introducing additional exhibits at a later hearing.

4. The parties shall confer as to possible dates to schedule a preliminary injunction hearing and shall coordinate with the Court's in-court Clerk.

Dated this 13th day of November 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 12