1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA, et al.,

                    Plaintiff,

          v.

STATE OF WASHINGTON, et al.,

                    Defendant.

CASE NO. 2:70-CV-09213-RSM

Subproceeding No. 89-3-12 (Shellfish)

PERMANENT INJUNCTION

On May 8, 2015, the Skokomish Indian Tribe ("Skokomish") filed a Request for Dispute Resolution under § 9 of the Revised Shellfish Implementation Plan ("RFD"), requesting the Court resolve ongoing disputes between Skokomish and Gold Coast Oyster, LLC ("Gold Coast"). Dkt. 1. On January 31, 2020, the Court entered an Order on Request for Dispute Resolution and, on April 20, 2020, entered an Amended Order on Request for Dispute Resolution ("Order"). Dkt. 122, 142. In the Order, the Court found Gold Coast violated the Revised Shellfish Implementation Plan ("SIP"). *Id*. The Court found Skokomish and the Port Gamble S'Klallam and the Jamestown S'Klallam Tribes (S'Klallam") had not shown they were

entitled to compensatory damages, but found a permanent injunction was appropriate in this case. *Id.* at p. 30.

The Court directed the parties to meet and confer and present a stipulated proposed order detailing appropriate injunctive relief. Dkt. 122, p. 30-31. If the parties were unable to agree on a stipulated proposed order, the Court directed Skokomish and S'Klallam to present a proposed order and directed Gold Coast and any interested party to file responses to the proposed order. *Id.* at p. 30. Skokomish and S'Klallam each filed a Proposed Order on March 5, 2020. Dkt. 132, 133. Gold Coast filed a Response on March 25, 2020. Dkt. 137. Squaxin Island Tribe submitted its Response on April 9, 2020. Dkt. 138. Skokomish filed a reply on April 13, 2020. Dkt. 139. S'Klallam filed a Reply on April 14, 2020. Dkt. 140.

After review of the relevant record and the Proposed Orders, Responses, and Replies, the Court enters the following permanent injunction that is unique to the particular facts of this case. This Permanent Injunction is applicable only to the parties in this case as related to issues raised in the RFD.

## I.    Definitions

For the purposes of this Permanent Injunction only:

1.    The term "SIP" means the Revised Shellfish Implementation Plan (C70-9213, Dkt. No. 14331);

2.    The term "PSA" means the Partial Settlement Agreement (Sp. 89-3-12, Dkt. No. 63);

3.    The term "Order" means the Amended Order on Request for Dispute Resolution (Sp. 89-3-12, Dkt. No. 142);

4.      The following are individually a "Party" and collectively the "Parties" to the Permanent Injunction: the Skokomish Indian Tribe, Jamestown S'Klallam Tribe, Lower Elwha Klallam Tribe, Port Gamble S'Klallam Tribe, Suquamish Indian Tribe, Gold Coast Oyster, LLC and their respective officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with any of the foregoing persons or entities;

5.      Shellfishing Activities means any cultivating, enhancing, producing, harvesting, removing, or transferring of shellfish on a Property;[1] and

6.      The term "Property" means real property located in the State of Washington that has a tideland in Hood Canal, on which:

   a.   Gold Coast Oyster, LLC holds any active registration, license or permit (including but not limited to Aquatic Farm Registrations, Harvest Site Certifications, Emerging Commercial Fishery Permits/Licenses, Trial Commercial Fishery Permits/Licenses, and/or US Army Corps of Engineer issued Permits/Licenses); or

   b.    Gold Coast Oyster, LLC controls by agreement, contract, lease, license or by other arrangement; or

   c.   Gold Coast Oyster, LLC engages in Shellfishing Activities.

**II.      Required Conduct for All Parties**

1.   All Parties shall comply with all provisions of the SIP and the PSA.

2.   Conditions Applicable to Shellfishing Activities:

---

[1] The Court reiterates the definition of Shellfishing Activities is applicable to this Permanent Injunction only based on evidence of Gold Coast's conduct and activities.

PERMANENT INJUNCTION - 3

a.  Except for the notice requirements set forth in this Permanent Injunction, Tribal notice requirements have been satisfied and no notices, as required under the SIP, need to be re-served prior to a Tribe conducting inspections, surveys, and/or population estimates on each Property.

b.  A Party shall not, for any reason whatsoever, obstruct, limit or restrict any other Party's access or inspections, surveys, and/or population estimates.

c.  A Party must conduct inspections, surveys, and/or population estimates on each Property prior to engaging in any Shellfishing Activities on that Property.

   i.  The survey must be consistent with or more precise than those utilized by the State of Washington.

   ii.  Gold Coast is required to engage a biologist or similarly qualified expert, using sound and accepted management methods, to perform surveys and population estimates and to determine the "sustainable harvest biomass."

   iii.  No later than fourteen (14) days after an inspection, survey, and/or population estimate is completed, the Party that conducted the survey and/or population estimate must provide a copy of the results to all affected Parties.

   iv.  Parties may dispense with an inspection, survey, and/or population estimate for each specific Property if the affected Parties so agree and enter into a harvest plan prior to engaging in any Shellfishing Activities.

d.  Affected Parties must enter into a harvest plan prior to engaging in Shellfishing Activities.

    i.  Within thirty (30) days of the results of a survey and/or population estimate, the Party conducting the survey and/or population estimate must present a reasonable harvest plan to the affected Parties.

    ii.  A Party shall not object to the proposed harvest plan without good cause.

    iii.  The harvest plan shall contain agreed upon or judicially determined harvest amounts.

    iv.  If a Party does not agree to the proposed harvest plan within five (5) business days of when notice was provided, the Parties may file a new request for dispute resolution as to the specific Property, using procedures that will be established by the Court.

3.  Engaging in Shellfishing Activities:

a.  Except for the notice requirements set forth in this Permanent Injunction, Tribal notice requirements have been satisfied and no notices, as required under the SIP, need to be re-served prior to a Tribe engaging in Shellfishing Activities.

b.  No Party shall obstruct, limit or restrict any other Party's harvest of shellfish, which may be conducted in compliance with this Permanent Injunction.

      c.  Harvest quotas are limited to each Parties' allocation of shellfish (e.g., Treaty and non-Treaty shares) as set forth in the SIP.

      d.  Tribal access to harvest any Property governed by Section 7 of the SIP is subject to the terms of the SIP (*see* SIP at § 7.2.4) and prior decisions in *United States v. Washington* (SIP at § 1.3).

4. Required record-keeping for Shellfishing Activities:

      a.  A detailed report accounting for all cultivating, enhancing, producing, harvesting, removing, or transferring of shellfish from each Property shall be exchanged by the Parties within thirty (30) days of such Shellfishing Activity.

      b.  For a harvest, removal, or transfer of shellfish, the detailed report shall include the following information:

           i.  The dates of each harvest or removal of shellfish;

          ii.  The quantity (in dozens for oysters and pounds for clams), size (in standard metric measurement), and species of shellfish harvested or removed from each specific property as identified by County parcel number; and

        iii.  The dates of each transfer along with the quantity (in dozens for oysters and pounds for clams), size (in standard metric measurement), species, origin, and destination of shellfish transferred to and/or from each specific property as identified by County parcel number, as well as, the permit associated with the transfer.

c.  Gold Coast must retain detailed records and reports of all Shellfishing

Activities specific to each Property – as identified by County parcel

number -- for ten (10) years from the date of the Shellfishing Activities.[2]

## III.  Conduct Specific to Tribes

1.  This Permanent Injunction does not constitute a waiver of the Skokomish Indian

Tribe's primary right vis-à-vis other Indian tribes or an invitation to shellfish.

2.  The Skokomish Indian Tribe may exclude any other Indian tribe and/or regulate

any other Indian tribe's Shellfishing Activities within Skokomish's primary right

area subject only to the decisions in *United States v. Washington*, 626 F. Supp.

1405, 1486 (W.D. Wash. 1984), *aff'd*, 764 F.2d 670 (9th Cir. 1985).

3.  Each Tribe shall comply with the terms of any applicable inter-tribal sharing

agreement.

## IV.  Conduct Specific to Gold Coast

In addition to any required conduct specific to Gold Coast detailed in other sections of

this Permanent Injunction,

1.  Until compliance with Section IV.2. of this Permanent Injunction, Gold Coast

must not engage, directly or indirectly, in any commercial shellfish growing

and/or production on the Properties.

2.  Gold Coast may engage in commercial Shellfishing Activities on the Properties

after full compliance with Section 6 of the SIP, the PSA, and this Permanent

Injunction.

---

[2] The record indicates a single harvest cycle is typically four years for Pacific oysters and three years for Manila clams. Dkt. 108, p. 86.  Thus, this ten-year time period is intended to require Gold Coast to retain records of Shellfishing Activities for a period exceeding at least two typical harvest cycles as to each Property.

3.  After providing a proper and complete Section 6.3 Notice to the affected Parties for a specific Property, Gold Coast must wait at least ninety (90) days before making any enhancements or conducting any cultivation on the Property.

4.  Gold Coast is prohibited from transferring, selling, or assigning its assets to another entity for the purpose of avoiding this Permanent Injunction.

5.  Gold Coast shall not circumvent the requirements of the SIP, the PSA, and this Permanent Injunction. This includes, but is not limited to Gold Coast having a private property owner: comply with state law regarding shellfishing requirements, conduct harvests, or maintain records to shield Gold Coast from the requirements of the SIP, the PSA, and this Permanent Injunction.

6.  Gold Coast shall not obstruct a Tribe's access to any Property or take any action that results in delay or otherwise causes a loss of opportunity or a loss of access to a particular Property. This includes, but is not limited to, restricting a Tribe from landing boats on a Property, unreasonably denying upland access,[3] objecting to a Tribe's Property access by characterizing the access as a trespass, or impeding communications between a Tribe and a private landowner.

7.  Gold Coast shall not take any actions intended to frustrate the purpose of the SIP, the PSA, and this Permanent Injunction.

---

[3] Under the modification to the SIP, "the Special Master should refuse access across privately owned upland property unless 'tribal members can demonstrate the *reasonable* absence of access by boat, public road, or public right of way.'" *United States v. Washington*, 19 F. Supp. 3d 1252, 1316 (W.D. Wash. 1997).

**V.     Notice Requirements**

1.  A Party is required to provide notice to each affected Party at least twenty-one (21) days prior to accessing a Property for the purpose of an inspection, survey, and/or population estimate or for harvesting, transferring, or removing shellfish from a Property.

2.  The requirements of the notices referenced in this Section are as follows:

    a.  A Party may provide the notice through the process and email addresses provided under Section (n) of the PSA.

    b.  The notice shall provide the date(s) the Party intends to access or conduct activities on the Property.

3.  A Party shall not prohibit access or activities on the Property on the date(s) provided in the notice.

**VI.    Time Periods**

1.  The time periods in this Permanent Injunction may be modified on a Property-by-Property basis by written agreement of all affected Parties.

**VII.   Relationship to Other Matters**

1.  This Permanent Injunction does not supersede or impair any decisions, judgments and/or orders issued or to be issued as part of administrative or State court proceedings relating to Curtis Scott Grout (aka Scott Grout) and/or Gold Coast Oyster, LLC.

2.  This Permanent Injunction does not supersede or impair any previous agreement or proceeding in this Court related to Gold Coasts' activities and other Tribes.

3.   All Interested Parties retain their limited role in this subproceeding as to matters of general applicability and/or to any actions of Gold Coast covered by this Permanent Injunction which implicate tidelands within an Interested Party's usual and accustomed fishing area.

**VIII.  Remedies**

A.  Failure to comply with this injunction may result in a finding of contempt and an imposition of remedial sanctions to induce performance. Persistent refusal to comply with this Permanent Injunction may result in the Court instituting criminal contempt proceedings.

B.  This Permanent Injunction may be amended by Court order or by stipulation of all parties and the entry of an appropriate Court order.

C.  The Court shall retain continuing jurisdiction to enforce the terms of this Permanent Injunction, now in effect or as may be amended by Court order in the future.

Dated this 20th day of April, 2020.

David W. Christel
United States Magistrate Judge