UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. C70-9213 RSM |
| Plaintiffs, | SUBPROCEEDING NO. 20-01 RSM |
| v. | ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

## I.   INTRODUCTION[1]

This matter is before the Court on the Upper Skagit Indian Tribe's Motion for a Temporary Restraining Order. Dkt. #2.[2] The Upper Skagit Indian Tribe ("Upper Skagit") requests that this Court restrain the Sauk-Suiattle Tribe ("Sauk-Suiattle") from permitting its members to fish on a section of the Skagit River. Sauk-Suiattle responds, challenging both the Court's jurisdiction to hear the matter and the merits of Upper Skagit's motion for a temporary

---

[1] Throughout, the Court provides citations to the docket of the underlying case the first time a filing is cited. Thereafter, citations are only to the docket of Subproceeding 20-01RSM.

[2] Dkt. #22,262 in Case No. C70-9213RSM. Upper Skagit later filed a praecipe, correcting an error in its original motion. Dkt. #5 (Dkt. #22,267 in Case No. C70-9213RSM). Because the correction is effectively non-substantive, the Court cites to the first-filed motion.

ORDER – 1

1   restraining order ("TRO"). Dkts. #6[3] and #7.[4]  Having considered the motion, the briefing of the

2   parties, the declarations and evidence submitted in support thereof, and the remainder of the

3   record, the Court denies the motion.

4               II.         BACKGROUND

5       On Thursday, September 24, 2020, Sauk-Suiattle issued fishing regulations for the year

6   2020.  Dkt. #3-1[5] at 2.  Those regulations opened "Area 78D: Skagit River from 100 yards

7   upstream of the Cascade River Road Bridge downstream to Rocky Creek just above Illabot Creek

8   complex."  *Id.*  In the past, Sauk-Suiattle has only fished in the Skagit River at the invitation of

9   the Swinomish Indian Tribal Community ("Swinomish") and Upper Skagit.  Dkt. #4[6] at ¶ 5.

10  Upper Skagit expressed concerns about Sauk-Suiattle's planned fishing on the Skagit River and

11  issued a Request for Meet and Confer[7] pursuant to Paragraph 25 of the injunction previously

12  entered in this matter, as subsequently modified.  *See United States v. Washington*, 384 F. Supp.

13  312, 419 (W.D. Wash. 1974) ("*Final Decision I*").  When that meet and confer was unsuccessful

14  at resolving the issue, Upper Skagit filed a motion requesting that this Court open a

15  subproceeding to hear the matter and concurrently sought a TRO.  Dkts. #1[8] and #2.

16      The dispute centers on the parties differing interpretations of Judge Boldt's 1974 decision.

17  Therein, Judge Boldt determined Sauk-Suiattle's usual and accustomed fishing places ("U&A")

18  "included Sauk River, Cascade River, Suiattle River and the following creeks which are tributary

---

[3] Dkts. #22,268 and #22,269 in Case No. C70-9213RSM.

[4]

[5] Dkt. #22,263-1 in Case No. C70-9213RSM.

[6] Dkt. #22,264 in Case No. C70-9213RSM.

[7] Dkt. #22,259 in Case No. C70-9213RSM.

[8] Dkt. #22,261 in Case No. C70-9213RSM.

ORDER – 2

to the Suiattle River—Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur Creek, Downey Creek, Straight Creek, and Milk Creek. Bedal Creek, tributary to the Sauk River, was also a Sauk fishing ground." *Final Decision I*, 384 F. Supp. at 376 (citations omitted). Upper Skagit notes that this provision expressly excludes mention of the Skagit River. Dkt. #2 at 2–3. Sauk-Suiattle disagrees. Looking to additional language within *Final Decision I*, Sauk-Suiattle argues that Judge Boldt necessarily recognized that Sauk-Suiattle had U&A along the Skagit River. Dkt. #7 at 5–8.

### III. DISCUSSION

**A. Legal Standard**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable injury

ORDER – 3

and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

### B. Jurisdictional Issues

As an initial matter, Sauk-Suiattle argues that this Court lacks jurisdiction under Paragraph 25 because Upper Skagit has failed to comply with the Court's pre-filing requirements. *See United States v. Washington*, 18 F. Supp. 3d 1172, 1213 (W.D. Wash. 1993) (adding pre-filing procedures aimed at resolving disputes prior to proceeding before this Court). Sauk-Suiattle argues essentially that Upper Skagit moved too fast and did not provide adequate opportunity to resolve the matter short of its motion for a TRO. Dkt. #6 at 2–3 (arguing that Upper Skagit was required to wait 12 days after unsuccessful negotiations, to allow Sauk-Suiattle to demand mediation, before seeking relief from this Court); *see also United States v. Washington*, 18 F. Supp. 3d at 1214 (Paragraph 25(b)(1) providing that absent emergencies, "no request for determination shall be filed sooner than 15 days after the conclusion of negotiations").

While Upper Skagit has not had the opportunity to respond, the obvious retort is that Upper Skagit is seeking emergency relief. In fact, Paragraph 25(b)(7) expressly addresses emergencies:

> Any party may seek determination of an emergency matter subject to satisfaction of the following conditions: (A) the party shall initiate a subproceeding (if not previously initiated) by filing and serving on all parties a request for determination; (B) the requesting party shall file with the request and serve on all parties a motion for temporary restraining order or preliminary injunction, which shall comply with and be decided in accordance with the civil rules and legal standards generally governing such motions; and (C) the requesting party shall file and serve a declaration of counsel stating that the party has made a bona fide effort to resolve the emergency issue with the affected parties and has failed to do so; that actual notice of the motion has been provided to each party that is the subject of the motion; and that the matter in issue constitutes an emergency in the judgment of the party and its attorney. Motions for temporary restraining orders

ORDER – 4

>   shall be filed only in circumstances where irreparable harm is likely to occur before a hearing on a motion for preliminary injunction can be scheduled.

*Id.* at 1215 (emphasis in original).  However, because Paragraph 25(b)(7) limits motions for TROs to "circumstances where irreparable harm is likely to occur before a hearing on a motion for preliminary injunction can be scheduled," the distinction does little to resolve the matter and the Court proceeds to consider the motion on its merits.

**C. Likelihood of Success on the Merits**

The underlying question is whether Sauk-Suiattle's U&A, as determined by Judge Boldt, extended to portions, or all, of the Skagit River.  As noted, Judge Boldt determined that Sauk-Suiattle's U&A "included Sauk River, Cascade River, Suiattle River and the following creeks which are tributary to the Suiattle River—Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur Creek, Downey Creek, Straight Creek, and Milk Creek[—and] Bedal Creek, tributary to the Sauk River." *Final Decision I*, 384 F. Supp. at 376 (citations omitted).  As discussed further below, Judge Boldt did reference the Skagit River in relation to Sauk-Suiattle, but did not include it in his express listing of Sauk-Suiattle's U&A.  The Court is left with the obvious conclusion that the omission was intentional.

Sauk-Suiattle argues that a different result is reached when reading *Final Decision I* as a whole.  Because Judge Boldt discussed a Sauk-Suiattle village "at the confluence of the Sauk and Skagit Rivers," generally accepted the findings of Dr. Lane, and Dr. Lane testified that Sauk-Suiattle "principal fisheries . . . were the headwaters of Skagit River," Sauk-Suiattle argues that Judge Boldt necessarily included "the upper reaches of the Skagit River" in its U&A. Dkt. #7 at 6.  Further, Sauk-Suiattle points to evidence that its ancestors "lived 'up and down the Skagit River' and that members of the Tribe fished 'wherever the people were.'"  *Id.*  While these references may allow for contrary arguments, the clear language with which Judge Boldt set forth

ORDER – 5

his summation of Sauk-Suiattle's U&A supports a finding that Upper Skagit is more likely to succeed on the merits.

### D. Irreparable Harm

Upper Skagit alleges that it will suffer irreparable harm because Sauk-Suiattle fishing will place an unlawful limitation on Upper Skagit's treaty right to fish, will harm fragile fisheries, and will disrupt sound management of Skagit River fisheries. Dkt. #2 at 12–14. But the Court finds Upper Skagit's arguments too general and unsubstantiated to find that irreparable harm is imminent in this case.

Upper Skagit itself recognizes that it "has never opened a fishery in the area now opened by" Sauk-Suiattle. Dkt. #4 at ¶ 4. In fact, Sauk-Suiattle indicates that the area it opened is confined to the confluence of the Skagit and Cascade Rivers and that it is 17 miles upstream of any area that Upper Skagit has opened to Coho fishing. Dkt. #22,271 at ¶ 5. Upper Skagit indicates that it has not opened fishing in this area because "it consists of chinook spawning grounds." Dkt. #4 at ¶ 4. Yet Upper Skagit gives no indication of how Sauk-Suiattle fishing will negatively impact either the chinook spawning grounds or the chinook themselves.

Upper Skagit also argues that Sauk-Suiattle was not involved in planning the fishing season as Upper Skagit was, along with Swinomish and Washington State. Dkt. #2 at 13–14; *see also* Dkt. #4 at 4 ("Because [Sauk-Suiattle] has no U&A in the Skagit River, its expected effort . . . was not factored into the season."). But Sauk-Suiattle indicates that it had fishing quotas of 400 Chinook and 2000 Coho and that these quotas were incorporated into management plans. Dkt. #22,271 at ¶ 4. Upper Skagit does not establish how it will be irreparably harmed either by

ORDER – 6

Sauk-Suiattle harvesting fish far upstream after the fish have passed through Upper Skagit fishing areas or by Sauk-Suiattle harvesting fish already accounted for under management plans.[9]

### E. Equities and Public Interest

Given that the Court has determined that Upper Skagit has not carried its burden of establishing irreparable harm and is therefore not entitled to a TRO, the Court does not need to reach the remaining elements. *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003) ("movant must establish at the very least both of the first two factors"—likelihood of success and irreparable harm).

### IV.   CONCLUSION

Accordingly, having reviewed the motions, the briefing, declarations and exhibits in support of the briefing, and the remainder of the record, the Court finds and ORDERS that Upper Skagit Indian Tribe's Motion for a Temporary Restraining Order (Dkt. #2) is DENIED.

Dated this 5th day of October, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The Court does not find an absence of harm, rather the Court finds that the record does not demonstrate that irreparable harm is imminent in the absence of injunctive relief.

ORDER – 7