THE HONORABLE RICARDO S. MARTINEZ

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STILLAGUAMISH TRIBE OF INDIANS,

       Petitioner,

     v.

STATE OF WASHINGTON

       Respondent.

No. C70-9213 RSM

Subproceeding: 17-3

THE TULALIP TRIBES' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
JANUARY 29, 2021

1.    Introduction

In this subproceeding, the Stillaguamish Tribe seeks to expand its usual and accustomed fishing areas. After informal discussions with some affected tribes, Stillaguamish served a written "Meet and Confer" notice pursuant to Paragraph 25 of the Permanent Injunction herein on parties to this case. Following that notice discussions were held between some of the parties which yielded no positive results. On September 11, 2017, Stillaguamish filed a formal Request for Determination with the court. Dkt No. 21583. That Request was filed out of time and not in compliance with the terms of Paragraph 25 and the requirement to allow affected parties to demand mediation. On October 10, 2017, after one party demanded a mediation, the parties were directed to mediation by the court. Dkt. No. 21677. Mediation sessions were held by United States District Judge Robert Lasnik.

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 1
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

1    Mediation did not achieve a settlement and on July 16, 2018, Judge Lasnik returned the

2    matter to the court.  Dkt. No. 45.  On July 20, 2018, the court issued an Order setting a pretrial

3    briefing schedule.  Dkt. No. 21805.  That schedule resulted in two Motions to Dismiss, one

4    each filed by the Swinomish and Upper Skagit Tribes, and a Motion for Partial Summary

5    Judgment filed by the Tulalip Tribes, on or about October 5, 2018. On March 21, 2019, the

6    Court issued its "Order Denying Motions to Dismiss and Motion for Partial Summary

7    Judgment," denying all three motions. A subsequent order of March 20, 2020 set a deadline of

8    January 7, 2021 for filing dispositive motions.

9    This motion pertains to wider areas claimed by

10   Stillaguamish, including the marine waters of Whidbey Island

11   and both shores of Camano Island, including Port Susan, Skagit

12   Bay, Saratoga Passage, Penn Cove, Holmes Harbor, and

13   Deception Pass (also known as WDFW Shellfish Areas 24A-D,

14   and a small portion of northern 26A, or as WDFW Salmon Areas

15   8-1 and 8-2), excluding the waters directly adjacent to the Tulalip

16   Reservation and any other Indian Reservation (*see* Map).



17                  2.    <u>Motion for Partial Summary Judgement—Standard of Review</u>

18   Pursuant to FRCP 56 Tulalip moves for Partial Summary Judgement that the

19   Stillaguamish Tribe has not met its burden to prove usual and accustomed marine fishing

20   areas as defined in the decisions of this Court.  This motion does not pertain to the waters

21   described in the May 1, 1984 Settlement Agreement between Tulalip and Stillaguamish,

22   pursuant to that agreement of May 1, 1984. Appendix 1, hereto.  Tulalip continues to support

23   Stillaguamish expansion into those limited areas.[1]

24   _____

25   [1] The Agreement provides in paragraph IV B: (Appendix 1 hereto)

26   "B. The Tulalip Tribes recognize that portion of Area 8A north of a line from Kayak Point due west
     to Camano Island (hereafter "Northern 8A"), as a non-exclusive usual and accustomed fishing area of
     the Stillaguamish Tribe and will affirmatively support the Stillaguamish Tribe's request for a

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2]  Courts view inferences to be drawn from the underlying facts in the light most favorable to the non-moving party.[3]  Once the moving party meets its burden under Rule 56(c), the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."[4]  The non-moving party must do more than simply show "some metaphysical doubt as to the material facts."[5]  The mere existence of "a scintilla of evidence" supporting the non-moving party's position is insufficient; there must be evidence on which the finder of fact could reasonably find for the non-moving party.[6]

3.    Determination of Stillaguamish Usual and Accustomed Grounds and Stations

In 1974, the Court found: "The Stillaguamish Tribe is composed of descendants of the 1855 Sto-luch-wa-mish of the Stoluch-wa-mish River. The population in 1855 resided on the main branch of the river as well as the north and south forks." FF 144, 384 F. Supp. 312, 378 (W.D. Wash. 1974). There is no finding that they resided on marine waters or fished there.

The Stillaguamish were a riverine tribe. The name Stillaguamish, under various spellings, has been used since about 1850 to refer to those Indians who lived along the Stillaguamish River and camped along its tributary creeks.  They were a party to the Treaty of Point Elliot. *Id.* During treaty times and for many years following the Treaty of Point Elliott, fishing constituted a means of subsistence for the Indians inhabiting the area embracing the

---

determination that the Stillaguamish Tribe's usual and accustomed fishing areas extend throughout Northern 8A and that portion of Area 8 southerly of a line drawn from Milltown to Polnell Point and northeasterly of a line drawn from Polnell Point to Rocky Point.."
Thus, the agreed area recognizing Stillaguamish Usual and Accustomed fishing area is confined to the areas stated. See map, attached to Appendix 1 hereto.
[2] FED. R. CIV. P. 56(c).
[3] *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).
[4] FED. R. CIV. P. 56(e).
[5] *Matsushita*, 475 U.S. at 586.
[6] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986).

Stillaguamish River and its north and south forks, which river system constituted the usual and accustomed fishing places of the tribe." 384 F. Supp. 312, 378-379. There was no finding that any marine waters constituted a usual and accustomed fishing place. Stillaguamish was not an original party to United States v. Washington and was not a federally recognized Tribe. 348 F. Supp. 312, 379.

Despite Stillaguamish Tribe not being federally-recognized until 1976, the Court set out Stillaguamish usual and accustomed fishing areas in Final Decision No. 1. The Court determined that the Stillaguamish usual and accustomed fishing area was located on the Stillaguamish River. It did not include marine waters in its Stillaguamish usual and accustomed finding:

> "During treaty times and for many years following the Treaty of Point Elliott, fishing constituted a means of subsistence for the Indians inhabiting the area embracing the Stillaguamish River and its north and south forks, which river system constituted the usual and accustomed fishing places of the tribe." Id. at 379 [FF 146].

In August 1974, Stillaguamish filed Fishing Regulations and Ordinances of the Stillaguamish Tribe that applied to the northern portion of Port Susan, north of a line which runs due west of Kayak Point to Camano Island" ("northern Port Susan").

Tulalip objected to Stillaguamish's 1974 and 1975 fishing regulations on several grounds, including that Final Decision #1 prohibited Stillaguamish from fishing in northern Port Susan. 459 F. Supp. 1020, 1068. (W.D. Wash. 1978).

On March 1, 1976, the Court issued its Order Regarding Tulalip Tribes' Objections to Stillaguamish Fishing Regulations. *See United States v. Washington*, 459 F. Supp. 1020, 1068 (W.D. Wash. 1978) (the "March 1976 Order"). The Court confirmed Finding of Fact #146 from Final Decision #1 holding that:

> "During treaty times and for many years following the Treaty of Point Elliott, fishing constituted a means of subsistence for the Indians inhabiting the area embracing the Stillaguamish River and its north and south forks, which river system

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-4
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

constituted the usual and accustomed fishing places of the tribe." Id. at 379 [FF 146].

The Court further held:

"Paragraph 25 of the Court's Injunction in Final Decision #1 establishes the mechanism whereby further usual and accustomed fishing grounds may be established and recognized by the Court.  The Stillaguamish Tribe has not sought to expand its fishing places to include the northern portion of Port Susan by following the procedures set forth in paragraph 25 of the Injunction.  It is only as a result of the Tulalip objections that the Court has been made fully aware that the Stillaguamish Tribe has, apparently unilaterally, expanded its fishing places beyond those areas recognized and determined in Final Decision #1.  For all of the foregoing reasons the Court sustains the objections of the Tulalip Tribes of Washington to the Stillaguamish fishing regulations insofar as they authorize tribal fishing activities at grounds and stations beyond those determined and recognized in Final Decision #1.  Id.

The Court struck Stillaguamish's 1975 and future regulations purporting to open tribal fisheries at places other than set forth in Final Decision #1 Finding of Fact #146.  Id. at 1069.

A. Subproceeding 79-1

After the March 1976 Order, and over objection, Stillaguamish continued issuing fishing regulations that applied to not only the Stillaguamish River but also (1) northern Port Susan and (2) lower Skagit Bay.

In October 1976, Stillaguamish filed a Request for Determination seeking to expand its usual and accustomed fishing area beyond the Final Decision #1 determination into Port Susan and Skagit Bay.  Dkt. # 2584.

Stillaguamish, however, failed to prosecute its claim further, and the Court never decided that Judge Boldt had not specifically determined Stillaguamish's usual and accustomed fishing area. This court dismissed Subproceeding 79-1 without prejudice.

B. Subproceeding 80-1

In 1980, Tulalip filed a new subproceeding to determine expansion of its usual and accustomed fishing area, considered provisional, in its original case. See 459 F. Supp 1020,

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-5
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

1060. A Stipulation and Agreement between Stillaguamish and Tulalip Tribes, dated May 1, 1984 ("Stipulation"), was approved and entered by Order of this Court dated May 8, 1985 ("May 8, 1985 Order" [Dkt. #10042]; *see* Appendix 1).

     C.  <u>Subproceeding 89-3</u>

In Subproceeding 89-3, Stillaguamish filed a "Statement of usual and accustomed Areas and Species Claimed" on May 3, 1993, to include, at least, "Port Susan and that portion of Skagit Bay south and easterly of a line drawn from Milltown southwesterly to Polnell Point then due south to Rocky Point." Dkt # 13102. However, the Tribe also moved to voluntarily dismiss that claim without prejudice on August 19, 1993. Dkt. # 13587.

On December 8, 1993, the Court granted the Tribe's motion and ordered "dismiss[al] without prejudice". Order of December 8, 1993. Dkt. No. 13907.

Thus, Stillaguamish launched several abortive thrusts at establishing a usual and accustomed fishing area but never followed through until filing this action. This checkered dalliance with the issue of location fishing areas underscores the lack of legal support for the issue here. For over 35 years Stillaguamish sat on their claim and only now is pressing a final request for determination of fishing areas.

     4.    <u>The Paucity of Evidence Presented by Stillaguamish</u>

Stillaguamish has the burden of proof to establish their usual and accustomed fishing areas. Despite reams of paper presented by Stillaguamish and a 217-page report (plus end notes) issued through their designated expert, Dr. Chris Friday, Stillaguamish presents no reliable evidence of Stillaguamish marine water fishing at treaty times. They rely primarily on Dr. Friday's report for their case, however, Dr. Friday appears to have little experience nor knowledge of treaty time fishing of the subject tribes in this case. As a historian, he lacks anthropological training and knowledge necessary to properly evaluate the Stillaguamish

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-6
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

claims. His attempts to mesh disjointed pieces of information to make a case are contra indicated by the experts in this case. The Friday[7] report contains no direct evidence of fishing by Stillaguamish in marine waters.

    A.  The Friday Report, Prehistory

    The first sections of the Friday report deal with the natural history of Northwest Washington and is irrelevant to these proceedings. Nothing in that section deals with who fished where at treaty time.  It provides no support for the Stillaguamish case.

    B.  The Friday report, "Radiating Tribal Interests"

    Much of this material is likewise irrelevant and inapplicable as to where a particular tribal group of Indians fished at treaty times.  None of the very learned and experienced anthropologists and ethnohistorians in this case have ever alluded to this concept.

    It is the concept of Dr. Keith Carlson, developed in writing about landlocked riverine tribes on a river in Canada. The concept has no application to Northwest marine water fishing by Native Americans. Indeed, it is an absurd concept applied to marine fisheries of Tribes in U.S. v. Washington. Followed to its logical conclusion, it would mean that every tribe has such intersecting "radii" emanating from numerous village sites all crashing into such "radii" in a mishmash of overlapping areas. Obviously, this concept would simply destroy and negate the phrase "usual and accustomed." Even if proven, this evidence is insufficient to prove "usual and accustomed" places and stations in the Treaties. That phrase governs the location of fishing areas, not some hypothetical "Radiating Tribal Interest." While "evidence found credible and inferences reasonably drawn therefrom" may be used to prove that a particular

---

[7] "Stillaguamish Tribe of Indians – Marine Fisheries Report." February 2020.

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-7
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

location is within a tribe's usual and accustomed fishing area, *United States v. Washington,* 384 F. Supp. 312, 349 (W.D. Wash. 1974), the *presence* of a tribe – even evidence of a tribe's *village* – is not enough to infer fishing in the adjacent waters.

C. The Friday Report, Species found in Waters Claimed.

This section of the Friday Report is also irrelevant as to where Stillaguamish fished. The fact that certain species are found in the waters at question does not prove, nor even suggest, that Stillaguamish fished on those species in those locations. There is no direct evidence of any such fishing. This Court turned to, and relied on, evidence of *fishing* to support findings of marine usual and accustomed areas adjacent to village locations. While the Court also cited the ICC maps and Dr. Lane's conclusions, both contained crucial additional evidence: (1) the maps showed that the tribe as issue named many of the villages based on the *fishing* activities that happened there and (2) Dr. Lane's conclusions were supported by first – and second-hand accounts of *fishing.* The Court was not explicit in Final Decision #1 that evidence of fishing was required to prove fishing areas in waters adjacent to villages.

In 1975, however, the Court explicitly held that evidence of village locations was not enough to prove fishing at those locations. *See United States v. Washington,* 459 F. Supp. 1020, 1059 (W.D. Wash. Sept. 10, 1975). In that subproceeding, the Court considered three types of evidence in determining the Tulalip Tribes' usual and accustomed fishing areas: testimony by Dr. Lane, testimony from a tribal elder about post-treaty fishing locations ("tribal fishing locations subsequent to entering into treaties"), and ICC findings about the location of Tulalips' "coastal and river villages." *Id.* The Court held that the ICC findings "of the Indian coastal and river villages" although raising the "presume[ption]" of fishing activities, was not enough. *Id.*

D. No Fishing Areas Documented

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-8
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Although Dr. Friday stated that the areas claimed by Stillaguamish are in their fishing areas, he presents no evidence of *fishing by the* Stillaguamish Tribe in marine areas at or before treaty time. Indeed, he acknowledged that to determine whether Stillaguamish "were involved in marine fisheries of some kind" he looked not for first- or second-hand accounts of marine fishing by Stillaguamish at or before treaty times (implicitly acknowledging that there are none), but instead for evidence (a) "that they were in locations where marine fisheries were taking place, such as summer encampment along the west shore of Camano Island or in Holmes Harbor," (b) that they were "traveling distances from their villages for purposes of summer encampments or the federal encampments," and (c) that there were "shell middens" found at the seashore. The determination of any areas as a usual and accustomed fishing ground or station of a particular tribe must consider all of the factors relevant to (1) use of that area as a usual or regular *fishing area,* (2) any treaty-time exercise or recognition of paramount or preemptive *fisheries control* (primary right control) by a particular tribe, and (3) the petitioning tribe's (or its predecessors') regular and frequent treaty-time *use of that area for fishing purposes." United States v. Washington*, 626 F. Supp. 1405, 1531 (W.D. Wash. 1985) (emphasis added). Dr. Friday presented no such evidence.

### 5.   Conclusion

Stillaguamish fails to meet the burden of proof. As to the relevance or evidentiary value of Dr. Friday's report, Tulalip concurs in and joins into the views of the Upper Skagit Tribe in their motion for summary judgment filed on or about January 7, 2021.

DATED this 7th day of January, 2021.

Respectfully Submitted,

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-9
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE

By: _____ /s/ *Mason D. Morisset* _____

Mason D. Morisset, WSBA # 00273
E-mail:  m.morisset@msaj.com
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel:  206-386-5200
Attorneys for the Tulalip Tribes

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-10
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2021, I electronically filed the foregoing Tulalip Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties registered in the Court CM/ECF system.

DATED:  January 7, 2021.

By:      /s/ *Mason D. Morisset*

Mason D. Morisset, WSBA # 00273

https://morissetschlosser.sharepoint.com/sites/CompanyShare/Shared Documents/T-Drive/WPDOCS/0075/98804 Subp 17-3/Pleadings/17-3 TTT Motion for Partial SJ Ver. 08 1-7-21.docx

THE TULALIP TRIBES' MOTION FOR
PARTIAL SUMMARY JUDGMENT-11
(Case No. C70-9213, Subproceeding No. 17-3)

MORISSET SCHLOSSER JOZWIAK & SOMERVILLE
218 Colman Building, 811 First Avenue
Seattle, Washington 98104
Tel: 206-386-5200

# APPENDIX 1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,
et al.,

     Plaintiffs,

 v.

STATE OF WASHINGTON, et al.,

     Defendants.

No. 9213 Phase I

ORDER APPROVING SETTLEMENT
AGREEMENT BETWEEN STILLAGUAMISH
AND TULALIP TRIBES RE: PUGET
SOUND FISHING AREA CLAIMS

   On July 19, 1982, the Tulalip Tribes filed a renewed
Request for Determination seeking to establish their usual and
accustomed fishing grounds and stations.  Several tribes filed
responsive pleadings objecting to the proposed Tulalip fishing
places.  In anticipation of trial, many opposing tribes have
sought to reach negotiated settlement with the Tulalip Tribes
concerning the extent of the Tulalip Tribes' usual and accustomed
fishing grounds and stations and the inter-tribal management
regimes that should be implemented among themselves in areas
where there are mutual fishing rights.

   The Stillaguamish Tribe and the Tulalip Tribes have
reached agreement concerning some of those places in which
the Tulalip Tribes have sought final determination of its

1  fishing rights.  The agreements reached are embodied in the

2  attached Stipulation and Agreement (hereinafter "Settlement

3  Agreement") which, pursuant to this order and subject to the

4  provisions hereof, is incorporated herein.  The court

5  recognizes, and the stipulating parties have so represented,

6  that the Agreement is a product of compromise on all sides and,

7  if this matter were required to be tried to the court, the

8  stipulating parties would make different representations, put

9  on different proof, and urge the court to reach different

10  conclusions.  Notwithstanding this fact, it appears that the

11  settlement reached between these parties, as herein construed,

12  is fair to them and will enhance their abilities to coordinate

13  their fisheries among themselves without impairing the rights

14  and the interests of other parties.

15       The court emphasizes that this order affects only the

16  rights inter se of those parties signatory to the Settlement

17  Agreement.  The Tulalip Tribes have specifically acknowledged

18  that, even though the Stillaguamish Tribe has withdrawn its

19  objection to the Tulalip Tribes' claims in areas not specifically

20  dealt with by the Settlement Agreement, other parties may con-

21  tinue to challenge the Tulalip Tribes' rights to fish in some

22  of these areas.  Nothing in this Order shall be deemed to be a

23  determination of any portion of the Tulalip Tribes' Request

24  for Determination that is not hereby dismissed.  However, to

25  the extent that the court  does not further limit Tulalip

26  rights, the Settlement Agreement between the Stillaguamish

- 2 -

Tribe and the Tulalip Tribes shall continue to bind those
two tribes consistent with its terms and the terms of this Order.

Now, therefore, IT IS ORDERED as follows:

1.  Subject to the interpretations and limitations
specified in this Order, the attached Settlement Agreement is
approved and adopted as part of this Order.

2.  The Stillaguamish River has been found to be a
usual and accustomed fishing area of the Stillaguamish Tribe
(Finding of Fact No. 146, 384 F.Supp. at 370).  It is hereby
found that the predecessors of the Tulalip Tribes were permitted
to fish on that river only with the permission and 'at the
invitation of the Stillaguamish Tribe.  Accordingly, it is
hereby determined that as between the Tulalip Tribes and the
Stillaguamish Tribe, the latter has primary rights on that
river and the Tulalip Tribes have invitee rights to fish on
that river.

3.  In accordance with the Settlement Agreement between
the tribes, it is hereby held that invitee rights to fish in
the Stillaguamish River are irrevocably extended to the Tulalip
Tribes to the extent and subject to the conditions and other
provisions set out in Paragraph III A of the Agreement between
the parties.

4.  For the purpose of this order the Stillaguamish
River means the river upstream from an East-West line drawn
across the mouth of South Pass at approximately the N 1/4 corner
of Section 35, T.32N., R.3E, and upriver from a northwesterly

- 3 -

1  line across the mouth of Hat Slough located in S 1/2 of the SW

2  1/4 Section 1, T.31N., R.3E., also an East-West line drawn

3  across the mouth of Hat Slough located in the NE 1/4 of the

4  NE 1/4 Section 12, T.31N., R.3E., together with all tributaries

5  upstream from these lines, as shown on the attached maps

6  (Attachments A and B in the Settlement Agreement), which are

7  incorporated herein by reference.

8      5.  To the extent that the Tulalip Tribes Request for

9  Determination seeks to establish usual and accustomed areas in

10  the Stillaguamish River and northern Area 8A to a greater

11  degree than in the Agreement between the tribes, such request

12  is hereby dismissed with prejudice.  The Tulalip Tribes shall

13  not exercise or seek to exercise rights in violation of that

14  Agreement.

15      6.  The Tulalip Tribes, as of the date of this order,

16  shall irrevocably extend an invitation to the Stillaguamish

17  Tribe to fish in northern 8A without prejudice to the latter's

18  right to establish its independent right to fish in that area.

19      7.  This order, including the Settlement Agreement,

20  shall be enforceable pursuant to the procedures established

21  under the continuing jurisdiction in this case and shall be

22  enforceable as any other final order and judgment of this court.

23      8.  Notwithstanding any other order of this court

24  involving the Tulalip Tribes and any other treaty tribe, to the

25  extent the harvesting rights of the Tulalip Tribes in any

26  other areas are affected by the Settlement Agreement and this

order, the Settlement Agreement and this order shall represent
the maximum right of the Tulalip Tribes in those areas.

9.   Nothing in this order shall constitute a
determination of a Tulalip right to fish or shall authorize
the Tulalip Tribes to fish (whether by invitation or otherwise)
in any area in which that tribe's right to fish has not been
heretofore or is not herein or hereafter determined by this
court.  Nor shall this order increase or affect the nature or
extent of any such right in relation to the rights of any tribe
not a signatory to the Settlement Agreement.  No provision of
the Settlement Agreement approved by this order shall apply to
waters within the boundaries of a non-signatory tribe's
reservation without the consent of that tribe.

10.   To the extent not prohibited by other orders of
this court, the parties to the Settlement Agreement shall be
bound by and shall comply with the harvest and management
limitations contained therein until a comprehensive management
plan is agreed to by the stipulating parties.  Nothing in this
order shall alter or otherwise affect the provisions of this
court's prior orders approving the Puget Sound Salmon Plan
(459 F.Supp. at 1107-13) or answering questions re Salmon
Fisheries Management (459 F.Supp. at 1069-70).

11.   If a comprehensive management plan agreed to in
accordance with Paragraph VI of the Settlement Agreement is
revoked, held to be contrary to the law, or otherwise found
or held to be unenforceable, any injured party may petition

- 5 -

the court for an order terminating the comprehensive managment
plan and reinstating the interim management plan and harvest
limitations contained in the Settlement Agreement.  The court
will not entertain any motion by any signatory party to modify
the Settlement Agreement unless such motion is agreed to by all
parties signatory thereto.  Those harvest and management
considerations contained in the Settlement Agreement shall
continue to govern unless modified by express written agreement
of the signatory parties.

12.  Nothing in this order shall limit any party's right
to seek enforcement of the Settlement Agreement consistent with
its terms in any separate proceeding.

13.  This Order constitutes approval of the Settlement
Agreement within the meaning of Paragraph VIII thereof.

14.  The parties to the attached Settlement Agreement
are enjoined from taking any action that fails to comply with
the terms of this Order and the terms of the Settlement Agreement
incorporated herein.

15.  There being no just reason for delay, the Clerk of
Court is directed to enter this Order as a Final Judgment pursuant
to Rule 54(b), Federal Rules of Civil Procedure.

DATED this _28_ day of _May_, 1985.

_Walter E. Craig_
Walter E. Craig
United States District Judge

-6-

*MDM Cooper*
*2064-1525-g*

*NOTE: This is final but not filed.*
*Filed copy has two*
*maps attached.*

Hon. Robert E. Cooper
Special Master

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,    )
et al.,                      )
                             )
        Plaintiffs,          )        No. 9213 - Phase I
                             )
v.                           )
                             )
STATE OF WASHINGTON, et al., )        STIPULATION AND AGREEMENT
                             )        OF STILLAGUAMISH
        Defendants.          )        AND TULALIP TRIBES
-----------------------------)        RE TULALIP USUAL AND
In Re Tulalip Tribe's Request)        ACCUSTOMED FISHING PLACES
for Determination of Usual   )
and Accustomed Fishing Places)
_____)

I.   INTRODUCTION

     The Stillaguamish and Tulalip Tribes are parties to the

ongoing litigation in United States v. Washington (W.D. Wash.

Civil No. 9123).  These parties have agreed to this stipulated

Settlement which resolves the issues raised in the Tulalip

Tribes' request for final determination of its usual and accus-

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 1

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101

tomed fishing grounds and stations as between the parties to this Agreement.

In an effort to foster closer ties between the parties, promote tribal unity and cooperation, and to support the development of comprehensive management plans, the Stillaguamish Tribe and the Tulalip Tribes have agreed as set out in this Settlement Agreement.

It is understood that this Agreement is the product of good faith negotiations between the parties and represents compromises by both of the parties.  These accomodations necessarily involve policy adjustments between the parties.  It is understood that if this case were to be tried in court, the strict application of evidence might not support the arrangements herein agreed to.

II.  TULALIP USUAL AND ACCUSTOMED FISHING PLACES

A.   The parties hereto agree that the Tulalip Tribes' usual and accustomed fishing areas include all those which were provisionally declared by the United States District Court in 1975 as described in 459 F. Supp. 1020 at 1059-1060.

B.   The Stillaguamish Tribe hereby withdraws its objections to and affirmatively supports the Tulalip Tribes' request for determination of its usual and accustomed fishing places in the other claimed areas to the extent consistent with this Agreement and other judicially approved agreements between the Tulalip Tribes and other affected tribes.

GGjm/05018
GGM7/T-S/Stip    STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 2

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101

III. <u>Stillaguamish River</u>.

    A.   In order to insure management protection of the Stillaguamish River stocks in marine waters, the Stillaguamish Tribe agrees to recognize the Stillaguamish River as a Tulalip usual and accustomed fishing area for invitational sport hook and line fishing.  The Stillaguamish Tribe has primary fishing rights in the Stillaguamish River.  The Tulalip Tribes shall have invitee rights and will fish the Stillaguamish River only with the permission of and at the invitation of the Stillaguamish Tribe, and subject to Stillaguamish management authority and non-discriminatory Stillaguamish regulations.  The invitation to sport fish shall be extended and effective on the date this Agreement is approved by the court.

    B.   For the purpose of this Agreement, the Stillaguamish River means the River upstream from an east-west line drawn across the mouth of South Pass at approximately 48° 13' N. latitude and upriver from northwesterly and east-west lines drawn across the mouth of Hat Slough at approximately 48° 12' N. latitude, together with all tributaries upstream from these lines, as shown on the attached map which is incorporated herein by reference.

IV.   <u>AREA 8A</u>.

    A.   The Stillaguamish Tribe recognizes all of Area 8A (including Northern 8A as defined herein) as a Tulalip usual and accustomed fishing area.  As used in this Agreement, Area 8A

GGjm/050184
GGM7/T-S/Stip
STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 3

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101
(206) 623-1255

means the Washington Department of Fisheries Puget Sound Salmon Management & Catch Reporting Area 8A as constituted on the date of this Stipulation (described in Appendix A hereto) or any subsequent revision thereof which is concurred in by both parties hereto.

B.   The Tulalip Tribes recognize that portion of Area 8A north of a line from Kayak Point due west to Camano Island (hereafter "Northern 8A"), as a non-exclusive usual and accustomed fishing area of the Stillaguamish Tribe and will affirmatively support the Stillaguamish Tribe's request for a determination that the Stillaguamish Tribe's usual and accustomed fishing areas extend throughout Northern 8A and that portion of Area 8 southerly of a line drawn from Milltown to Polnell Point and northeasterly of a line drawn from Polnell Point to Rocky Point.

C.   The Tulalip Tribes will extend an invitation to the Stillaguamish Tribe to fish in Northern 8A until such time as the Stillaguamish Tribe establishes the area as a usual and accustomed fishing area of the Stillaguamish Tribe.  The invitation shall be without prejudice to the Stillaguamish Tribe to seek such a determination.  The invitation shall be extended and effective on the date this Agreement is approved by the court.

D.   The Stillaguamish Tribe recognizes that as between the Stillaguamish Tribe and the Tulalip Tribes, the Tulalip Tribes have primary fishing rights in all of Area 8A, other than Northern 8A (as defined in Section IV.(B) above).

GGjm/05018
GGM7/T-S/Stip

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:   U&A PLACES - 4

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101

E.   The parties agree that special management concerns for that area must be recognized.  To meet these concerns, the parties agree to co-manage the area according to the interim management provisions set out below, pending the development of a comprehensive management, harvest sharing, and enhancement plan for fisheries of mutual concern to which both parties agree.

V.   INTERIM MANAGEMENT PLAN - NORTHERN 8A.

A.   Pre-season Consultation.

Prior to the adoption of annual regulations, the Stillaguamish and the Tulalip Tribes shall meet and exchange pre-season data, production and harvest estimates; and shall consult and agree as to the annual regulations for the season.  Such regulations shall take into account the special needs of each tribe.

B.   Management Considerations.

1.   It is the intent of this Management Plan that all regulations, both annual and in-season, shall be guided primarily by the biology of the resource.

2.   The Stillaguamish Tribe and the Tulalip Tribes agree that whenever possible they shall try to have simultaneous openings and closings in Northern 8A except when necessary to achieve intertribal allocation requirements.  If either tribe's regulations opening the area meet all of the following criteria, the other tribe must concur with them and the area may be

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:   U&A PLACES - 5

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101
(206) 623-1255

1  opened:

2       a)   The regulation is not contrary to and is con-
            sistent with conservation concerns and good
3            management practices.

4       b)   The regulation is not contrary to intertribal
            allocations or treaty/nontreaty allocations.
5

6       c)   The regulation is consistent with this Interim
            Management Plan or with a Comprehensive Man-
            agement Plan for Area Northern 8A to which
7            both of the two tribes subscribe.

8       d)   The Tulalip Tribes should not open Northern
            8A unless the Stillaguamish Tribe has taken
9            or is expected to take its annual harvest
            share.
10

11   C.   Annual Harvest Shares.

12       1.   It is agreed that the following harvest shares shall

13   be the interim harvest shares pending the development of a com-

14   prehensive plan.   This will not preclude, however, the parties

15   from agreeing on different shares annually.   The Stillaguamish

16   tribal harvest in Area 8A will count 100% towards their alloca-

17   tion of Stillaguamish River stocks.

18       Species              Harvest Share

19   CHINOOK              Stillaguamish Tribe: 33% of "Stilla-
                            guamish Harvestable Level";
20                         Tulalip Tribes: 67% of same.

21   PINK                 Stillaguamish Tribe: 33% of "Stilla-
                            guamish Harvestable Level";
22                         Tulalip Tribes: 67% of same.

23   COHO                 Stillaguamish Tribe: 30% of "Stilla-
                            guamish Harvestable Level";
24                         Tulalip Tribes: 70% of same.

25   CHUM                 Stillaguamish Tribe: 35% of "Stilla-
                            guamish Harvestable Level";

26

GGjm/05018    STIPULATION OF STILLAGUAMISH AND
GGM7/T-S/Stip TULALIP TRIBES RE:   U&A PLACES - 6

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101
(206) 623-1255

                                    Tulalip Tribes: 65% of same.

    SUMMER STEELHEAD     Stillaguamish Tribe: 40% of "Stilla-
                         guamish Harvestable Level";
                         Tulalip Tribes: 60% of same.

    WINTER STEELHEAD     Stillaguamish Tribe: 40% of "Stilla-
                         guamish Harvestable Level";
                         Tulalip Tribes: 60% of same.

         2.    Definition of "Stillaguamish Harvestable Level"

         The term "Stillaguamish Harvestable Level" shall be
that number of fish from Stillaguamish River runs calculated as
follows:

         -    The total run size entering the Strait of Juan de
              Fuca

         -    minus the agreed upon spawning escapement goal

         -    minus the nontreaty interceptions and nontreaty
              terminal harvest of such species

         -    minus the prior treaty interceptions in pre-terminal
              areas by tribes who are not parties to this agree-
              ment

         -    minus the terminal treaty interceptions by tribes
              who are not parties to this agreement.

         3.    The harvest shares in paragraph 1 above shall be
adjusted up or down by agreement to meet each Tribe's special
needs.  Such needs shall include: 1) needs caused by the effects
of natural events on fish runs; 2) the Tulalip's Tribe's needs to
have their Snohomish runs entitlement; and 3) Stillaguamish needs
to harvest their Stillaguamish runs entitlement.  One possible
method of adjustment could be for the Tulalip Tribes to invite
the Stillaguamish Tribe into all or parts of 8A.

STIPULATION OF STILLAGUAMISH AND   ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
                                             ATTORNEYS AT LAW
GGjm/050184                        METROPOLITAN PARK, 16TH FLOOR
GGM7/T-S/Stip  TULALIP TRIBES RE:  U&A PLACES — 7          1100 OLIVE WAY
                                          SEATTLE, WASHINGTON 98101

D.   Annual Regulations.

Annual regulations shall be set jointly by the parties using the annual harvest shares agreed to pursuant to section V.(C) above as a guideline.  It is agreed that due to the condition of the resource it may not be possible to reach these harvest shares each season.

E.   Equitable Adjustment

If either tribe fails to attain its annual harvest share of a particular species in a given year due to the actions of the other party, an equitable adjustment on a fish-to-fish basis shall be made the next year there is a harvestable number of that species, _provided_ that if the two tribes agree, an equitable adjustment on any other agreed basis may be made.

VI.   COMPREHENSIVE PLAN

A.   The parties agree to work with all due speed towards a comprehensive plan for management, harvest and enhancement of fisheries of mutual concern.  The parties intend that the first draft of such a plan shall be completed no later than June 30, 1985.  Both parties agree to commit all necessary resources to the development of such plan.

VII.  COOPERATIVE ENHANCEMENT PROGRAMS

A.   The parties agree to continue to cooperate on biologically sound enhancement and environmental programs of mutual benefit.  It is the intent of the Tulalip Tribes to continue to

GGjm/050184
GGM7/T-S/Stip   STIPULATION OF STILLAGUAMISH AND TULALIP TRIBES RE:  U&A PLACES - 8

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101
(206) 623-1255

fund biologically sound cooperative programs beneficial to the Stillaguamish River System whenever funding allows.

B.    The parties re-affirm and agree to continue to follow the management principles and the dispute resolution, modification and termination procedures set out in the "Agreement Between the Tulalip Tribes and the Stillaguamish Tribe concerning the Tulalip Tribal Salmon Hatchery" dated April 21, 1981, as it may be modified from time to time by the parties.

VIII. <u>ENFORCEMENT - REMEDIES</u>

A.    The parties agree that this Agreement shall be made part of a federal court order.  If either party fails to comply with the terms of this Agreement the injured party may enforce this Agreement as follows:

1.    The terms of this Agreement shall be enforceable as a Court Order of the United States District Court for the Western District of Washington pursuant to and within the mechanisms established in Phase I of <u>United States v. Washington</u>, Civ. No. 9213.  In the event that the continuing jurisdiction of the court in <u>United States v. Washington</u> is terminated, the terms of this Agreement shall be enforceable generally as a federal court order and in the same manner as any other order of that court.

2.    The parties to this Agreement agree to submit disputes arising under or relating to the enforcement of this Agreement or the enforcement of the court order in which this Agreement is incorporated to the federal court for resolution.

GGjm/05018
3GM7/T-S/Stip
STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:   U&A PLACES - 9

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101
(206) 623 1255

3.    The parties agree that they may be enjoined from taking any action that fails to comply with the terms of this Agreement and may be subject to contempt and injunctive relief. If a party fails to substantially comply with the terms of this Agreement the court may temporarily suspend fishing by a party under this Agreement.

4.    If either party breaches this Agreement the injured party at its option, may sue for specific performance of the Agreement or sue for breach of contract including damages and injunctive relief, or any combination of the above.

5.    The parties agree that the remedies set out herein are exclusive, and that no party may disregard, or violate any of the provisions of this Agreement.  In the event that a party believes that management decisions are contrary to the terms of this Agreement, the injured party shall seek recourse pursuant to this Agreement.  Self-help shall not be an available remedy.

6.    Neither party to this Agreement shall seek from a court an order modifying or eliminating the provisions of this Agreement unless such modification or limitation is agreed to by both parties hereto.

7.    The Agreement shall become effective when signed by the parties, and shall be irrevocably binding on the parties unless and until a modification to the Agreement is agreed to in writing by each of the parties; provided, if this Agreement is not approved by the Court and incorporated into a court order,

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 10

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY
SEATTLE, WASHINGTON 98101

1   court order, as of 30 days after the date of the decision not to

2   approve, the Agreement shall be null and void and of no force and

3   effect.   In the case that this Agreement is not approved by the

4   Court, the parties expressly reserve as between each other, the

5   right to litigate the issue of the extent of each party's usual

6   and accustomed fishing places.

7       Dated this 1st of MAY_____, 1984.

8

9   _____        _____
    Chairperson, Stillaguamish      Stan Jones Sr., Chairman,
10  Tribe                           Tulalip Tribes

11  _____        _____
    FISHERIES MANAGER, STILLAGUAMISH
12  TRIBE                           Bernie Gobin, Tulalip Tribes

13  _____
    Cynthia Davenport,
14  Attorney for Stillaguamish
    Tribe                           _____
15                                  Mason D. Morisset,
                                    Attorney for Tulalip Tribes
16

17

18

19

20

21

22

23

24

25

26
STIPULATION OF STILLAGUAMISH AND    ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
    TULALIP TRIBES RE:  U&A PLACES - 11                ATTORNEYS AT LAW
                                                    METROPOLITAN PARK, 16TH FLOOR
                                                          1100 OLIVE WAY
                                                    SEATTLE, WASHINGTON 98101

FILED
LODGED
RECEIVED
MAIL   3064 - 1525-9

MAY 8 - 1985

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
ry                                      DEPUTY

Hon. Robert E. Cooper
Special Master

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>STATE OF WASHINGTON, et al., )<br><br>Defendants. )<br>------------------------------)<br>In Re Tulalip Tribe's Request)<br>for Determination of Usual )<br>and Accustomed Fishing Places)<br>_____) | No. 9213 - Phase I<br><br>STIPULATION AND AGREEMENT<br>OF STILLAGUAMISH<br>AND TULALIP TRIBES<br>RE TULALIP USUAL AND<br>ACCUSTOMED FISHING PLACES |

## I.   INTRODUCTION

The Stillaguamish and Tulalip Tribes are parties to the
ongoing litigation in United States v. Washington (W.D. Wash.
Civil No. 9123).  These parties have agreed to this stipulated
settlement which resolves the issues raised in the Tulalip
Tribes' request for final determination of its usual and accus-

STIPULATION OF STILLAGUAMISH AND

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR

tomed fishing grounds and stations as between the parties to this Agreement.

In an effort to foster closer ties between the parties, promote tribal unity and cooperation, and to support the development of comprehensive management plans, the Stillaguamish Tribe and the Tulalip Tribes have agreed as set out in this Settlement Agreement.

It is understood that this Agreement is the product of good faith negotiations between the parties and represents compromises by both of the parties.  These accomodations necessarily involve policy adjustments between the parties.  It is understood that if this case were to be tried in court, the strict application of evidence might not support the arrangements herein agreed to.

II.  TULALIP USUAL AND ACCUSTOMED FISHING PLACES

A.    The parties hereto agree that the Tulalip Tribes' usual and accustomed fishing areas include all those which were provisionally declared by the United States District Court in 1975 as described in 459 F. Supp. 1020 at 1059-1060.

B.    The Stillaguamish Tribe hereby withdraws its objections to and affirmatively supports the Tulalip Tribes' request for determination of its usual and accustomed fishing places in the other claimed areas to the extent consistent with this Agreement and other judicially approved agreements between the Tulalip Tribes and other affected tribes.

III. <u>Stillaguamish River</u>.

A.    In order to insure management protection of the Stillaguamish River stocks in marine waters, the Stillaguamish Tribe agrees to recognize the Stillaguamish River as a Tulalip usual and accustomed fishing area for invitational sport hook and line fishing.  The Stillaguamish Tribe has primary fishing rights in the Stillaguamish River.  The Tulalip Tribes shall have invitee rights and will fish the Stillaguamish River only with the permission of and at the invitation of the Stillaguamish Tribe, and subject to Stillaguamish management authority and non-discriminatory Stillaguamish regulations.  The invitation to sport fish shall be extended and effective on the date this Agreement is approved by the court.

B.    For the purpose of this Agreement, the Stillaguamish River means the River upstream from an east-west line drawn across the mouth of South Pass at approximately 48° 13' N. latitude and upriver from northwesterly and east-west lines drawn across the mouth of Hat Slough at approximately 48° 12' N. latitude, together with all tributaries upstream from these lines, as shown on the attached map which is incorporated herein by reference.

IV.   <u>AREA 8A</u>.

A.    The Stillaguamish Tribe recognizes all of Area 8A (including Northern 8A as defined herein) as a Tulalip usual and accustomed fishing area.  As used in this Agreement, Area 8A

jm/050184
17/T-S/Stip

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 3

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 18TH FLOOR
1100 OLIVE WAY

1    means the Washington Department of Fisheries Puget Sound Salmon

2    Management & Catch Reporting Area 8A as constituted on the date

3    of this Stipulation (described in Appendix A hereto) or any

4    subsequent revision thereof which is concurred in by both parties

5    hereto.

6        B.   The Tulalip Tribes recognize that portion of Area 8A

7    north of a line from Kayak Point due west to Camano Island (here-

8    after "Northern 8A"), as a non-exclusive usual and accustomed

9    fishing area of the Stillaguamish Tribe and will affirmatively

10   support the Stillaguamish Tribe's request for a determination

11   that the Stillaguamish Tribe's usual and accustomed fishing areas

12   extend throughout Northern 8A and that portion of Area 8

13   southerly of a line drawn from Milltown to Polnell Point and

14   northeasterly of a line drawn from Polnell Point to Rocky Point.

15       C.   The Tulalip Tribes will extend an invitation to the

16   Stillaguamish Tribe to fish in Northern 8A until such time as the

17   Stillaguamish Tribe establishes the area as a usual and accus-

18   tomed fishing area of the Stillaguamish Tribe.  The invitation

19   shall be without prejudice to the Stillaguamish Tribe to seek

20   such a determination.  The invitation shall be extended and

21   effective on the date this Agreement is approved by the court.

22       D.   The Stillaguamish Tribe recognizes that as between the

23   Stillaguamish Tribe and the Tulalip Tribes, the Tulalip Tribes

24   have primary fishing rights in all of Area 8A, other than

25   Northern 8A (as defined in Section IV.(B) above).

26

jm/05018
47/T-S/Stip    STIPULATION OF STILLAGUAMISH AND    ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
                                                   ATTORNEYS AT LAW
               TULALIP TRIBES RE:  U&A PLACES - 4  METROPOLITAN PARK, 18TH FLOOR

E.   The parties agree that special management concerns for that area must be recognized.  To meet these concerns, the parties agree to co-manage the area according to the interim management provisions set out below, pending the development of a comprehensive management, harvest sharing, and enhancement plan for fisheries of mutual concern to which both parties agree.

V.   INTERIM MANAGEMENT PLAN - NORTHERN 8A.

A.   Pre-season Consultation.

Prior to the adoption of annual regulations, the Stillaguamish and the Tulalip Tribes shall meet and exchange pre-season data, production and harvest estimates; and shall consult and agree as to the annual regulations for the season.  Such regulations shall take into account the special needs of each tribe.

B.   Management Considerations.

1.   It is the intent of this Management Plan that all regulations, both annual and in-season, shall be guided primarily by the biology of the resource.

2.   The Stillaguamish Tribe and the Tulalip Tribes agree that whenever possible they shall try to have simultaneous openings and closings in Northern 8A except when necessary to achieve intertribal allocation requirements.  If either tribe's regulations opening the area meet all of the following criteria, the other tribe must concur with them and the area may be

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 5

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 18TH FLOOR
1100 OLIVE WAY

opened:

    a)   The regulation is not contrary to and is con-
        sistent with conservation concerns and good
        management practices.

    b)   The regulation is not contrary to intertribal
        allocations or treaty/nontreaty allocations.

    c)   The regulation is consistent with this Interim
        Management Plan or with a Comprehensive Man-
        agement Plan for Area Northern 8A to which
        both of the two tribes subscribe.

    d)   The Tulalip Tribes should not open Northern
        8A unless the Stillaguamish Tribe has taken
        or is expected to take its annual harvest
        share.

    C.   <u>Annual Harvest Shares</u>.

       1.   It is agreed that the following harvest shares shall be the interim harvest shares pending the development of a com- prehensive plan.  This will not preclude, however, the parties from agreeing on different shares annually.  The Stillaguamish tribal harvest in Area 8A will count 100% towards their alloca- tion of Stillaguamish River stocks.

| Species | Harvest Share |
|---|---|
| CHINOOK | Stillaguamish Tribe: 33% of "Stilla-guamish Harvestable Level"; Tulalip Tribes: 67% of same. |
| PINK | Stillaguamish Tribe: 33% of "Stilla-guamish Harvestable Level"; Tulalip Tribes: 67% of same. |
| COHO | Stillaguamish Tribe: 30% of "Stilla-guamish Harvestable Level"; Tulalip Tribes: 70% of same. |
| CHUM | Stillaguamish Tribe: 35% of "Stilla-guamish Harvestable Level"; |

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:   U&A PLACES — 6

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY

| | | |
|---|---|---|
| | | Tulalip Tribes: 65% of same. |
| SUMMER STEELHEAD | | Stillaguamish Tribe: 40% of "Stilla-guamish Harvestable Level"; Tulalip Tribes: 60% of same. |
| WINTER STEELHEAD | | Stillaguamish Tribe: 40% of "Stilla-guamish Harvestable Level"; Tulalip Tribes: 60% of same. |

2.   Definition of "Stillaguamish Harvestable Level"

The term "Stillaguamish Harvestable Level" shall be that number of fish from Stillaguamish River runs calculated as follows:

- The total run size entering the Strait of Juan de Fuca

- minus the agreed upon spawning escapement goal

- minus the nontreaty interceptions and nontreaty terminal harvest of such species

- minus the prior treaty interceptions in pre-terminal areas by tribes who are not parties to this agreement

- minus the terminal treaty interceptions by tribes who are not parties to this agreement.

3.   The harvest shares in paragraph 1 above shall be adjusted up or down by agreement to meet each Tribe's special needs.  Such needs shall include: 1) needs caused by the effects of natural events on fish runs; 2) the Tulalip's Tribe's needs to have their Snohomish runs entitlement; and 3) Stillaguamish needs to harvest their Stillaguamish runs entitlement.  One possible method of adjustment could be for the Tulalip Tribes to invite the Stillaguamish Tribe into all or parts of 8A.

jm/05018
47/T-S/Stip

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 7

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY

D.   Annual Regulations.

Annual regulations shall be set jointly by the parties using the annual harvest shares agreed to pursuant to section V.(C) above as a guideline.  It is agreed that due to the condition of the resource it may not be possible to reach these harvest shares each season.

E.   Equitable Adjustment

If either tribe fails to attain its annual harvest share of a particular species in a given year due to the actions of the other party, an equitable adjustment on a fish-to-fish basis shall be made the next year there is a harvestable number of that species, provided that if the two tribes agree, an equitable adjustment on any other agreed basis may be made.

VI.  COMPREHENSIVE PLAN

A.  The parties agree to work with all due speed towards a comprehensive plan for management, harvest and enhancement of fisheries of mutual concern.  The parties intend that the first draft of such a plan shall be completed no later than June 30, 1985.  Both parties agree to commit all necessary resources to the development of such plan.

VII. COOPERATIVE ENHANCEMENT PROGRAMS

A.   The parties agree to continue to cooperate on biologically sound enhancement and environmental programs of mutual benefit.  It is the intent of the Tulalip Tribes to continue to

;jm/05018  STIPULATION OF STILLAGUAMISH AND
:M7/T-S/S ip TULALIP TRIBES RE:   U&A PLACES - 8

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 18TH FLOOR
1100 OLIVE WAY

1   fund biologically sound cooperative programs beneficial to the

2   Stillaguamish River System whenever funding allows.

3       B.   The parties re-affirm and agree to continue to follow

4   the management principles and the dispute resolution, modifica-

5   tion and termination procedures set out in the "Agreement Between

6   the Tulalip Tribes and the Stillaguamish Tribe concerning the

7   Tulalip Tribal Salmon Hatchery" dated April 21, 1981, as it may

8   be modified from time to time by the parties.

9

10  VIII. ENFORCEMENT - REMEDIES

11      A.   The parties agree that this Agreement shall be made

12  part of a federal court order.  If either party fails to comply

13  with the terms of this Agreement the injured party may enforce

14  this Agreement as follows:

15          1.   The terms of this Agreement shall be enforceable

16  as a Court Order of the United States District Court for the

17  Western District of Washington pursuant to and within the mechan-

18  isms established in Phase I of United States v. Washington, Civ.

19  No. 9213.  In the event that the continuing jurisdiction of the

20  court in United States v. Washington is terminated, the terms of

21  this Agreement shall be enforceable generally as a federal court

22  order and in the same manner as any other order of that court.

23          2.   The parties to this Agreement agree to submit dis-

24  putes arising under or relating to the enforcement of this Agree-

25  ment or the enforcement of the court order in which this Agree-

26  ment is incorporated to the federal court for resolution.

jm/05018

17/T-S/Stip    STIPULATION OF STILLAGUAMISH AND
               TULALIP TRIBES RE:  U&A PLACES - 9

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR
1100 OLIVE WAY

3.    The parties agree that they may be enjoined from taking any action that fails to comply with the terms of this Agreement and may be subject to contempt and injunctive relief. If a party fails to substantially comply with the terms of this Agreement the court may temporarily suspend fishing by a party under this Agreement.

4.    If either party breaches this Agreement the injured party at its option, may sue for specific performance of the Agreement or sue for breach of contract including damages and injunctive relief, or any combination of the above.

5.    The parties agree that the remedies set out herein are exclusive, and that no party may disregard, or violate any of the provisions of this Agreement.  In the event that a party believes that management decisions are contrary to the terms of this Agreement, the injured party shall seek recourse pursuant to this Agreement.  Self-help shall not be an available remedy.

6.    Neither party to this Agreement shall seek from a court an order modifying or eliminating the provisions of this Agreement unless such modification or limitation is agreed to by both parties hereto.

7.    The Agreement shall become effective when signed by the parties, and shall be irrevocably binding on the parties unless and until a modification to the Agreement is agreed to in writing by each of the parties; provided, if this Agreement is not approved by the Court and incorporated into a court order,

jm/05018
17/T-S/Stip

STIPULATION OF STILLAGUAMISH AND
TULALIP TRIBES RE:  U&A PLACES - 10

ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
ATTORNEYS AT LAW
METROPOLITAN PARK, 16TH FLOOR

1   court order, as of 30 days after the date of the decision not to

2   approve, the Agreement shall be null and void and of no force and

3   effect.  In the case that this Agreement is not approved by the

4   Court, the parties expressly reserve as between each other, the

5   right to litigate the issue of the extent of each party's usual

6   and accustomed fishing places.

7       Dated this 1sT of  M A y          , 1984.

8

9   _____          _____
    Chairperson, Stillaguamish        Stan Jones, Sr., Chairman,
10  Tribe                             Tulalip Tribes

11  _____          _____
    Fisheries Manager, Stillaguamish
12  Tribe                             Bernie Gobin, Tulalip Tribes

13  _____
    Cynthia Davenport,
14  Attorney for Stillaguamish
    Tribe                             _____
15                                    Mason D. Morisset,
16                                    Attorney for Tulalip Tribes

17

18

19

20

21

22

23

24

25

26
jm/05018         STIPULATION OF STILLAGUAMISH AND   ZIONTZ, PIRTLE, MORISSET, ERNSTOFF & CHESTNUT
17/T-S/Stip  TULALIP TRIBES RE:   U&A PLACES - 11        ATTORNEYS AT LAW
                                                      METROPOLITAN PARK, 16TH FLOOR
                                                           1100 OLIVE WAY



BLOW-UP
III B



III B
BLOW-UP

RECEIVED
NOV 05 198

ZIONTZ, PIRTLE, MORISSET,
ERNSTOFF & CHESTNUT

The Honorable Robert E. Cooper
Special Master



1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,
et al.,

        Plaintiffs,

    v.

STATE OF WASHINGTON, et al.,

        Defendants.

- - - - - - - - - - - - - - -

In Re Tulalip Tribe's Request
for Determination of Usual
and Accustomed Fishing Places

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 9213   Phase I

SPECIAL MASTER'S REPORT
RE STILLAGUAMISH AND TULALIP
USUAL AND ACCUSTOMED
FISHING PLACES

    This Court having reviewed the Stillaguamish and Tulalip

Settlement Agreement and Proposed Order in this matter, and

having considered the record and representations of counsel, and

it appearing that the settlement is fair to all signator parties,

the Stillaguamish and Tulalip Stipulated Settlement Agreement is

hereby approved and it is recommended that the Court adopt this

Agreement and Proposed Order.

GG/101984   SPECIAL MASTER'S REPORT RE STIL.
TUL/SM/R-GG/M7AND TULALIP U and A Places. P. - 1

9921

1    The parties shall have the right to litigate the issue of

2    the extent of Tualip usual and accustomed places without

3    prejudice if the Settlement Agreement and proposed Court Order

4    are not approved by the Court.

5    DATED this _1_ day of ~~October,~~ *November* 1984.

6

7

8                                          _____
                                                Special Master
9

10   Presented by:

11   _____
     Cynthia Davenport
12   Attorney for the Stillaguamish Tribe

13   _____
14   Mason D. Morisset
     Attorney for The Tulalip Tribes
15   of Washington

16

17

18

19

20

21

22

23

24

25

26

GG/101984   SPECIAL MASTER'S REPORT RE STIL.
TUL/SM/R-GG/M7AND TULALIP U and A Places. P. - 2