1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. C70-9213 RSM |
| Plaintiffs, | SUBPROCEEDING NO. 20-01 RSM |
| v. | ORDER ON PENDING MOTIONS |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

## I.      INTRODUCTION

        This subproceeding is before the Court on several motions.  The requesting party, Upper Skagit Indian Tribe ("Upper Skagit"), initiated this subproceeding to determine whether certain fishing in the Skagit River by the responding party, the Sauk-Suiattle Indian Tribe ("Sauk-Suiattle"), complies with Judge Boldt's decree (the "*Boldt Decree*")[1] in the underlying case.  Dkt. #9.[2]  Upper Skagit now seeks summary judgment in its favor.  Dkt. #24.[3]

*//*

---

[1] *See United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974).
[2] Dkt. #22,261-1 in Case No. C70-9213RSM.  Throughout, the Court provides citations to the docket of the underlying case the first time a filing is cited.  Thereafter, citations are only to the docket of Subproceeding No. 20-01RSM.
[3] Dkt. #22,297 in Case No. C70-9213RSM.

ORDER – 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Sauk-Suiattle has opposed Upper Skagit's efforts at each turn. Sauk-Suiattle sought to delay this matter from proceeding by filing notice of its request for mediation (Dkt. #26),[4] then it sought to dismiss this subproceeding on procedural grounds (Dkt. #27),[5] and finally it opposed Upper Skagit's motion on the merits (Dkt. #28).[6] Sauk-Suiattle now appears to again believe that the matter should be referred to mediation but has not sought relief from the Court. *See* Dkt. #39[7] (arguing that mediation is necessary to delineate the confluence of the Cascade and Skagit Rivers).

The Swinomish Indian Tribal Community ("Swinomish"), which has fishing grounds within the Skagit River system, has actively participated in this action and initially believed that mediation should be pursued before litigation proceeded further. Dkt. #29.[8] However, Swinomish's view has recently changed, and it now seeks to withdraw its previous filings recommending that the Court send this matter to mediation. Dkt. #37.[9]

Finally, Upper Skagit has sought to file a supplemental pleading to add new factual allegations related to its belief that Sauk-Suiattle has continued to fish in violation of the *Boldt Decree*. Dkt. #41.[10] Having reviewed the matter, the Court resolves the motions as follows.

## II.      BACKGROUND

This dispute relates to Sauk-Suiattle fishing in the Skagit River. In his 1974 Decree, Judge Boldt determined that Sauk-Suiattle's usual and accustomed fishing places ("U&A")

---

[4] Dkt. #22,299 in Case No. C70-9213RSM. As a "notice filing" not noted for the Court's consideration as a motion, the Court does not substantively address Sauk-Suiattle's Notice of Request for Referral to Mediation. To the extent necessary, the notice is denied as moot.
[5] Dkt. #22,301 in Case No. C70-9213RSM.
[6] Dkt. #22,302 in Case No. C70-9213RSM.
[7] Dkt. #22,405 in Case No. C70-9213RSM.
[8] Dkt. #22,306 in Case No. C70-9213RSM.
[9] Dkt. #22,396 in Case No. C70-9213RSM.
[10] Dkt. #22,407 in Case No. C70-9213RSM.

ORDER – 2

"included Sauk River, Cascade River, Suiattle River and the following creeks which are tributary to the Suiattle River—Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur Creek, Downey Creek, Straight Creek, and Milk Creek.  Bedal Creek, tributary to the Sauk River, was also a Sauk fishing ground."  *Boldt Decree*, 384 F. Supp. 312, 376 (W.D. Wash. 1974).

The waters comprising Sauk-Suiattle U&A are all tributary to the Skagit River.  As such, fish migrating to Sauk-Suiattle U&A must travel up the Skagit River, fishing grounds for Upper Skagit and Swinomish.  Upper Skagit, Swinomish, and Washington State share conservation and management responsibility for salmon in the Skagit River and "[t]hrough pre-season and in-season coordination . . . ensure that [Endangered Species Act] management ceilings are not exceeded to protect listed chinook while implementing fisheries for harvestable stocks."  Dkt. #4 at ¶ 4.[11]  For the past several years, the geographical realities and management decisions have bred discontent between Sauk-Suiattle, Upper Skagit, and Swinomish.  Central to the dispute is Sauk-Suiattle's position that the downriver tribes should alter their catches so that more fish reach Sauk-Suiattle U&A.  The downriver tribes, however, have not agreed with Sauk-Suiattle's position.

On September 24, 2020, the beginning of Sauk-Suiattle's 2020 fishing season, Sauk-Suiattle issued regulations that opened, in relevant part, a portion of the Skagit River known as "Area 78D: Skagit River from 100 yards upstream of the Cascade River Road Bridge downstream to Rocky Creek just above Illabot Creek complex" (the "Disputed Waters").  Dkt. #3-1 at 2.[12] That same day, counsel for Upper Skagit attempted to contact counsel for Sauk-Suiattle but was not successful.  Dkt. #3 at ¶ 4.[13]  The next day, Swinomish and Upper Skagit invoked the

---

[11] Dkt. #22,264 in Case No. C70-9213RSM.
[12] Dkt. #22,263-1 in Case No. C70-9213RSM.
[13] Dkt. #22,263 in Case No. C70-9213RSM.

1   collaborative processes laid out in the *Boldt Decree*.  Dkt. #3-2 at 2–3.[14]  At the parties' meet and

2   confer, Upper Skagit and Swinomish learned that Sauk-Suiattle members had already fished

3   under the regulations, and the parties were unable to resolve their dispute.  Dkt. #3 at ¶¶ 4–6.

4          Upper Skagit subsequently sought leave to file this subproceeding and immediately

5   sought a temporary restraining order.  Dkts. #1[15] and #2.[16]  The Court granted Upper Skagit's

6   request to open a new subproceeding but denied its request for injunctive relief.  Dkts. #8[17] and

7   #20.[18]  Seeking relief quickly, Upper Skagit filed its summary judgment motion just several days

8   after the Court's order denying injunctive relief.  Dkt. #24.  Swinomish took an alternative route

9   and, on the same day that Upper Skagit sought summary judgment, served a Notice of Demand

10  for Mediation on Sauk-Suiattle and Upper Skagit.  Dkt. #30 at 9.[19]  The next day, Sauk-Suiattle

11  followed suit and filed its own Notice of Demand for Mediation and a motion to dismiss the

12  subproceeding.  Dkts. #26 and #27.

13                          **III.          DISCUSSION**

14  **A. Swinomish Motion to Withdraw**

15         Over the course of this proceeding, Swinomish has changed its position.  Swinomish

16  initially asserted that "Upper Skagit's Motion for Summary Judgment, filed at the outset of this

17  subproceeding is premature and should be dismissed without prejudice so that negotiations can

18  proceed in accordance with Paragraph 25."  Dkt. #29 at 2.  That is, Swinomish believed that this

19  matter was better addressed through mediated negotiation between the parties and that the Court

20  should dismiss Upper Skagit's motion for summary judgment.  *Id.* at 3–5.  While not challenging

21  _____

22  [14] Dkt. #22,263-2 in Case No. C70-9213RSM.
    [15] Dkt. #22,261 in Case No. C70-9213RSM.
23  [16] Dkt. #22,262 in Case No. C70-9213RSM.
    [17] Dkt. #22,270 in Case No. C70-9213RSM.
24  [18] Dkt. #22,284 in Case No. C70-9213RSM.
    [19] Dkt. #22,307 in Case No. C70-9213RSM.

1  the merits of Upper Skagit's motion, Swinomish felt prejudiced by the rapid-fire motion for

2  summary judgment. *Id.* at 6–7.

3         However, Swinomish no longer believes that mediation would be fruitful or should be

4  required. Dkt. #37 at 1–2. The change in position is consistent with the testimony of

5  Swinomish's Fisheries Manager, Ms. Lorraine Loomis, who possesses extensive knowledge and

6  experience with fisheries management and its attendant intertribal negotiations. *See* Dkt. #38 at

7  ¶¶ 1–6.[20] Ms. Loomis asserts that Sauk-Suiattle has become an annual problem in the salmon

8  harvest planning process. She testifies that this year, Sauk-Suiattle modeled its fisheries on a

9  harvest that is "far larger than they have ever taken or have the capacity to take." *Id.* at ¶ 10.

10  This forced Swinomish and Upper Skagit to artificially decrease their own projected salmon

11  harvests in the Skagit River to protect Sauk-Suiattle's asserted harvest and adequately conserve

12  for future generations. *Id.* Ms. Loomis additionally testifies that over the last two years, Sauk-

13  Suiattle has engaged in "unauthorized and illegal fishing behavior." *Id.* at ¶ 12. Because of these

14  actions and the belief that Sauk-Suiattle seeks a larger share of the salmon in the Skagit River,

15  Ms. Loomis and Swinomish no longer believe that mediation between itself, Sauk-Suiattle, and

16  Upper Skagit would be productive. *Id.* at ¶ 13. Accordingly, Swinomish seeks to withdraw its

17  prior responses and indicates its support for Upper Skagit's motion for summary judgment. Dkt.

18  #37 at 6.

19         No tribe has timely opposed Swinomish's request.[21] Additionally, the Court is satisfied

20  with the explanation for Swinomish's change in position. Accordingly, the Court grants

21  Swinomish's request to withdraw its earlier filings and has not considered those filings here.

22

23  ────────────────
[20] Dkt. #22,297 in Case No. C70-9213RSM.

24  [21] Sauk-Suiattle filed an untimely response to Swinomish's motion. *Compare* Dkt. #37
    (Swinomish motion filed June 7, 2021 and noted for consideration on June 25, 2021) *with* LOCAL
    RULES W.D. WASH. LCR 7(d)(3) (motions to be noted for third Friday after filing and opposition

**B. Sauk-Suiattle's Motion to Dismiss**

Sauk-Suiattle sought dismissal of this subproceeding, arguing that Upper Skagit failed to properly invoke the Court's jurisdiction under Paragraph 25 of the permanent injunction entered in the underlying case. *Boldt Decree*, 384 F. Supp. at 419, *as modified United States v. Washington*, 18 F. Supp. 3d 1172, 1213–1216 (W.D. Wash. 1993).[22]  More specifically, Sauk-Suiattle argued that Upper Skagit violated the periods set aside for interested parties to settle disputes under the *Boldt Decree* without resorting to formal litigation before the Court.

There is no dispute that Upper Skagit initiated this subproceeding as an "emergency matter" under Paragraph 25(b)(7) and sought a temporary restraining order at that time.  Sauk-Suiattle maintains, however, that when the Court denied Upper Skagit's motion for injunctive relief, Upper Skagit could no longer rely on the procedures set forth in Paragraph 25(b)(7). Dkt. #28 at 9 (invoking emergency jurisdiction "does not vitiate, replace or supersede a party's obligation to comply with the further obligations imposed by Paragraph 25(b) to be fulfilled prior to invoking the court's jurisdiction to resolve a dispute arising under Paragraph 25(a)(1)").

The Court does not agree with Sauk-Suiattle's argument.  Subsection (a) of Paragraph 25 sets forth the types of disputes the Court will consider.  Subsection (b) of Paragraph 25 sets forth the procedural requirements for invoking the court's continuing jurisdiction and bringing a dispute before the Court.  Upper Skagit was clear that its dispute was brought under Paragraph 25(a)(1)—a determination of whether the actions of a party "are in conformity with [the *Boldt Decree*]."  Upper Skagit brought the dispute before the Court under Paragraph 25(b)(7).  This

---

due Monday before noting date) *and* Dkt. #39 (Sauk-Suiattle response filed on August 26, 2021). Sauk-Suiattle makes no argument that its response is timely or that it should be granted relief from the prior deadline.  Moreover, Sauk-Suiattle's response itself seeks relief but was never noted as a motion seeking relief from the Court.  Accordingly, the Court has not considered the filing.

[22] Dkt. #13,599 in Case No. C70-9213RSM.

ORDER – 6

1   subsection sets forth its own mandatory requirements for bringing emergent issues before the

2   Court.  *United States v. Washington*, 20 F. Supp. 3d 899, 962 (W.D. Wash. 2008) ("[t]he

3   procedures set forth in Paragraph 25 are mandatory for invoking the continuing jurisdiction of

4   this Court and may not be excused or modified") (comma omitted).

5          Sauk-Suiattle next argues that Upper Skagit failed to follow the requirements of

6   Paragraph 25(b)(7) because Upper Skagit's motion for a temporary restraining order was

7   ultimately denied.[23]  Dkt. #27 at 5.  But the Court will not make compliance with Paragraph

8   25(b)(7)'s requirements, including a declaration by counsel that "the matter in issue constitutes

9   an emergency in the judgment of the party and its attorney," turn on the result of the motion with

10  which it is filed.  Simply put, an attorney does not necessarily lack a good faith belief that an

11  emergency exists just because the Court later finds injunctive relief unwarranted.  There is some

12  sense to Sauk-Suiattle's argument that a party should not be permitted to sidestep the normal

13  procedural requirements merely by alleging that it will suffer an imminent and irreparable harm

14  requiring emergency injunctive relief.  Dkt. #27 at 4.  But the Court is confident that Federal

15  Rule of Civil Procedure 11 can adequately corral counsel who act in bad faith.

16  **C.  Upper Skagit's Motion for Summary Judgment**

17         **1.  Legal Standard**

18         This subproceeding invokes the Court's continuing jurisdiction under Paragraph 25(a)(1)

19  of Judge Boldt's injunction, as subsequently modified.  Dkt. #9 at ¶ 2; *Boldt Decree*, 384 F. Supp.

20  at 419, *as modified United States v. Washington*, 18 F. Supp. 3d 1172, 1213–1216 (W.D. Wash.

21  1993).  Accordingly, the Court considers whether Sauk-Suiattle fishing within the Disputed

22

23  ---

[23] The Court notes that Sauk-Suiattle did not seek dismissal on jurisdictional grounds
24  contemporaneously with its opposition to Upper Skagit's motion for a temporary restraining
    order.  Having failed to raise the procedural objection in its initial response, Sauk-Suiattle's
    current argument that jurisdictional prerequisites were not satisfied is not well taken.

ORDER – 7

1    Waters would be "in conformity with [the *Boldt Decree* and] or this injunction." *Boldt Decree*,

2    384 F. Supp. at 419.  In doing so, the Court interprets Judge Boldt's prior orders and construes

3    the "judgment so as to give effect to the intention of the issuing court." *Muckleshoot Tribe v.*

4    *Lummi Indian Tribe*, 141 F.3d 1355, 1358 (9th Cir. 1998) ("*Muckleshoot I*") (quoting *Narramore*

5    *v. United States*, 852 F.2d 485, 490 (9th Cir. 1988)) (internal quotation marks omitted).  The

6    Court's consideration proceeds under the two-step process established by the *Muckleshoot* trilogy

7    of cases.

8           First, the party asserting ambiguity must offer "evidence that suggests that [the U&A] is

9    ambiguous or that the court intended something other than its apparent meaning." *United States*

10   *v. Muckleshoot Indian Tribe*, 235 F.3d 429 (9th Cir. 2000) ("*Muckleshoot III*") (quoting

11   *Muckleshoot I*, 141 F.3d at 1358) (cleaned up).  This is a more searching process than statutory

12   interpretation because "the 'language of the court must be read in the light of the facts before

13   it.'"  *Muckleshoot III*, 235 F.3d at 433 (quoting *Julian Petroleum Corp. v. Courtney Petroleum*

14   *Co.*, 22 F.2d 360, 362 (9th Cir. 1927)).  Accordingly, the mere fact that a geographic term may

15   include the waters at issue does not resolve the matter.  *Id.*  Rather, the Court may consider the

16   record before Judge Boldt when he established the U&A and "may also include additional

17   evidence if it sheds light on the understanding that Judge Boldt had of the geography at the time."

18   *Upper Skagit Indian Tribe v. Washington*, 590 F.3d 1020, 1024–25 (9th Cir. 2010) ("*Upper*

19   *Skagit*") (quoting *Muckleshoot Indian Tribe v. Lummi Indian Nation*, 234 F.3d 1099 (9th Cir.

20   2000)) (quotation marks omitted).

21          If Judge Boldt's U&A determinations are ambiguous or mean something other than their

22   apparent meaning, the moving party must then "show that there was no evidence before Judge

23   Boldt that [the responding party] fished [in the disputed waters] or traveled there in route to"

24   other portions of the responding party's U&A.  *Upper Skagit*, 590 F.3d at 1023; *see also United*

ORDER – 8

1    *States v. Lummi Nation*, 876 F.3d 1004, 1010 (9th Cir. 2017).  Conversely, summary judgment

2    in favor of the responding party is appropriate if it can establish that it fished in or traveled

3    through the disputed waters.

4         Here, the determinations are appropriately resolved on the parties' motions for summary

5    judgment.  Summary judgment is appropriate where "the movant shows that there is no genuine

6    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

7    R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are

8    those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at

9    248.

10        Neither party offers additional evidence of Judge Boldt's contemporaneous

11   understanding of geography and rely on the record before Judge Boldt, obviating factual disputes.

12   *Muckleshoot I*, 141 F.3d at 1359 (noting pretrial order providing that "the only relevant evidence

13   is that which was considered by Judge Boldt when he made his finding").  Because the Court's

14   review is limited, almost exclusively, to the record before Judge Boldt and because of the

15   practical difficulties presented by the underlying case and its numerous subproceedings, the

16   Ninth Circuit has relaxed summary judgment strictures in the context of this case.  *See Upper*

17   *Skagit*, 590 F.3d at 1025 n.9.  Where each party had the opportunity to augment the record with

18   evidence of Judge Boldt's contemporaneous understanding of ambiguous terms, "a trial on the

19   merits would reveal no additional relevant facts."  *Id.*  Accordingly, "the district judge, who is

20   also the trier of fact, may resolve conflicting inferences and evaluate the evidence to determine

21   Judge Boldt's intent."  *Id.* (citations omitted).

22        **2.  Sauk-Suiattle U&A Does Not Include the Skagit River**

23        To begin with, Judge Boldt's determination of Sauk-Suiattle U&A does not appear

24   ambiguous as it omits mention of the Skagit River.  *See* Dkt. #24 at 8 (Upper Skagit arguing that

ORDER – 9

1  Sauk-Suiattle U&A "does not include the Skagit River" and "lists only three rivers which flow

2  into the Skagit River and nine creeks which flow into two of those three rivers").  Likewise,

3  Sauk-Suiattle's U&A determination does not include any geographic anchors located within the

4  Skagit River. *See Upper Skagit*, 590 F.3d at 1025–26 (noting importance of geographic anchors).

5       Sauk-Suiattle maintains, in essence, that ambiguity exists based on Dr. Barbara Lane's

6  general description of Sauk-Suiattle U&A in her report on the Political and Economic Aspect of

7  Indian-White Culture Contact in Western Washington in the Mid-19th Century, which was

8  admitted by Judge Boldt as Exhibit USA-20.  Dkt. #28 at 4–7.  Therein, Dr. Lane indicated that

9  "[t]he principal fisheries of the [Sauk-Suiattle] were the headwaters of Skagit River including

10  Baker River, Sauk River and the smaller creeks which belonged to that water system."  Dkt. #28-

11  1 at 5.[24]  But Judge Boldt did not cite this report in support of the Sauk-Suiattle's U&A, and "it

12  is the specific, rather than the general, evidence presented by Dr. Lane that Judge Boldt" relied

13  upon to support his U&A determinations.  *United States v. Lummi Indian Tribe*, 235 F.3d 443,

14  445, 451 (9th Cir. 2000).

15       Sauk-Suiattle further argues that its U&A is ambiguous because there is a factual dispute

16  as to where in "the confluence, or mouth of the Cascade River where its waters commingle with

17  those of the Skagit, does it become the Skagit River and cease being the Cascade River."  Dkt.

18  #28 at 5–6.  But the Court does not agree that this creates ambiguity and will not engage in such

19  granular line drawing for every water body implicated in this case.  *Makah Indian Tribe v.*

20

21  [24] Sauk-Suiattle also attempts to strengthen its position by relying on present-day definitions of

22  "headwaters."  Dkt. #28 at 4 (citing U.S. Environmental Protection Agency, *Headwater Streams
    Studies*, https://www.epa.gov/water-research/headwater-streams-studies).  Suffice it to say that

23  these non-contemporaneous sources were not before Judge Boldt and could not have informed
    his decision.  *See Upper Skagit*, 590 F.3d at 1024–25 (allowing consideration of "additional

24  evidence if it sheds light on the understanding that Judge Boldt had of the geography at the time")
    (citations omitted).

ORDER – 10

1  *Quileute Indian Tribe*, 873 F.3d 1157, 1168 (9th Cir. 2017) ("Of course, practical difficulties

2  mean that courts need not achieve mathematical exactitude in fashioning the boundaries.");

3  *United States v. Washington*, No. C70-9213 RSM, 2013 WL 3897783, at *14 (W.D. Wash. July

4  29, 2013), *aff'd sub nom. Tulalip Tribes v. Suquamish Indian Tribe*, 794 F.3d 1129 (9th Cir.

5  2015) ("*Tulalip Tribes*") ("geographic terms describing bodies of water are indefinite, in that

6  they do not establish a precise dividing line"); *United States v. Washington*, 626 F. Supp. 1405,

7  1528 (W.D. Wash. 1985) (noting "greater difficulties in specifying or delineating marine areas

8  used by one or another Indian group than is the case with river areas").  Sauk-Suiattle's

9  manufactured issue does not require resolution and the Court need not further complicate an

10  already complicated case.

11      As such, Sauk-Suiattle's U&A appears to unambiguously omit the Skagit River.  But this

12  does not wholly resolve the inquiry because a U&A may be ambiguous as to disputed waters

13  even where the U&A's "apparent meaning" appears determinative.  *See Tulalip Tribes*, 794 F.3d

14  at 1133 (noting previous decision affirming district court's determination that U&A was

15  ambiguous after consideration of the evidence before Judge Boldt, even where "apparent

16  meaning" of U&A included the disputed waters at issue).  The Court therefore looks to the

17  evidence before Judge Boldt to further discern his intent.

18      The logical starting place is the specific evidence cited by Judge Boldt in support of his

19  determination of Sauk-Suiattle U&A.  In this regard, Judge Boldt cited to exhibits USA-29

20  (BARBARA LANE, ANTHROPOLOGICAL REPORT ON THE IDENTITY, TREATY STATUS AND FISHERIES

21  OF THE SAUK-SUIATTLE TRIBE OF INDIANS (1973)) and MS-10 (Written Direct Testimony of

22  James Enick).  *Boldt Decree*, 384 F. Supp. at 376.  The portions of the exhibits relied on were

23  further limited by Judge Boldt.  *Id.* (citing Ex. USA-29, p. 13; Ex. MS-10, p. 3, l. 1-6).

24

ORDER – 11

1    The first source includes Dr. Lane's conclusion that "[t]he principal fisheries of the Sauk

2    Indians included Sauk River, Cascade River, Suiattle River and the following creeks which are

3    tributary to the Suiattle River -- Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur

4    Creek, Downey Creek, Straight Creek, and Milk Creek.  Bedal Creek, tributary to the Sauk River

5    was also a Sauk fishing ground."  Dkt. #3-3 at 16.[25]  Of note, Judge Boldt adopted Dr. Lane's

6    conclusion word-for-word in his determination of Sauk-Suiattle U&A.  *Boldt Decree*, 384 F.

7    Supp. at 376.

8    In the cited portion of Mr. Enick's testimony, Mr. Enick testified that Sauk-Suiattle

9    traditionally fished "[w]herever the people were, but mostly on the Sauk River, the whole river,

10   and all the streams coming into the river, that's where the Indians fished."  Dkt. #3-4 at 5.  In

11   addition, Judge Boldt cited Mr. Enick's testimony that the Sauk-Suiattle had lived "[u]p and

12   down the Skagit River and the Sauk River mostly."  *Id.*

13   The obvious question, then, is whether Judge Boldt's citation to Mr. Enick's testimony

14   was intended to support U&A outside of that identified by Dr. Lane, or whether Judge Boldt

15   viewed the testimony as merely confirmatory.  But Upper Skagit argues convincingly the

16   question may ultimately be largely academic.  Dkt. #24 at 9.  Judge Boldt did not make any

17   alterations to Dr. Lane's language in adopting it as the Sauk-Suiattle U&A.  If Judge Boldt

18   viewed Mr. Enick's testimony as expanding the scope of the fishing grounds described by Dr.

19   Lane, it stands to reason that he would have added to her description of Sauk-Suiattle fishing

20   grounds.  As such, the Court concludes that Judge Boldt did not intend any expansion but merely

21   viewed Mr. Enick's testimony as additional support for Dr. Lane's conclusions.

22

23

24
_____
[25] Dkt. #22,263-3 in Case No. C70-9213RSM.

ORDER – 12

Sauk-Suiattle fares no better with the other sources it relies upon.  As above, Sauk-Suiattle's reliance on Dr. Lane's general descriptions of Sauk-Suiattle U&A in other reports fails to overcome the specific description set forth in her report on Sauk-Suiattle and adopted without change by Judge Boldt.  Sauk-Suiattle additionally points to a 1975 Washington State Department of Fisheries memorandum, arguing that it indicates that Swinomish, Upper Skagit, and Sauk-Suiattle were entitled to equal rights to fish in the Skagit River.  Dkt. #28-2.  But this document was not before Judge Boldt when he determined Sauk-Suiattle U&A and cannot be relied upon here.[26]  While the document may indicate the parties' contemporaneous understanding of the Boldt Decree, it has no bearing on what Judge Boldt's intent was—the question before the Court.

Here, the Court is left to conclude that there was no evidence of Sauk-Suiattle fishing on the Skagit River before Judge Boldt and that the only viable conclusion is that Judge Boldt intentionally omitted the Skagit River from Sauk-Suiattle U&A.  *C.f. Upper Skagit*, 590 F.3d at 1024; *Muckleshoot III*, 235 F.3d at 433.

**D.  Upper Skagit Motion for Supplemental Pleading.**

Lastly, the Court addresses Upper Skagit's Motion to File a Supplemental Pleading Pursuant to Rule 15(d), filed after its motion for summary judgment.  However, that motion specifically indicates that if the Court were to "grant Upper Skagit's pending summary judgment motion and issue the requested injunction," Upper Skagit would "have obtained all [the] relief it seeks and the supplemental pleading [would] be unnecessary."  Dkt. #41 at 1.  Because the Court

---

[26] Nor is the document inconsistent with Upper Skagit's argument that Sauk-Suiattle has often been invited by Swinomish and Upper Skagit to participate in Skagit River fisheries.

ORDER – 13

1  has otherwise determined that Upper Skagit's motion for summary judgment should be granted,

2  the Court denies Upper Skagit's motion as moot.[27]

3                    **IV.        CONCLUSION**

4          Accordingly, and having reviewed the motions, the briefing, the declarations and exhibits

5  in support of the briefing, and the remainder of the record, the Court finds and ORDERS:

6      1.  The Upper Skagit Indian Tribe's Motion for Summary Judgment (Dkt. #24) is

7          GRANTED.

8      2.  The Sauk-Suiattle Indian Tribe's Motion to Dismiss for Lack of Jurisdiction (Dkt. #27)

9          is DENIED.

10     3.  The Swinomish Motion to Withdraw Responses to Pending Motions (Dkt. #37) is

11         GRANTED.

12     4.  The Upper Skagit Indian Tribe's Motion to File a Supplemental Pleading Pursuant to

13         Rule 15(d) (Dkt. #41) is DENIED as moot.

14     5.  This matter is CLOSED.

15         DATED this 26th day of October, 2021.

16

17

18                                            RICARDO S. MARTINEZ
19                                            CHIEF UNITED STATES DISTRICT JUDGE

20

21  ---

[27] Upper Skagit requested that the Court enjoin "[Sauk-Suiattle] from opening or participating in
22  any treaty fishery in the Skagit River or any other area not listed in Paragraph 131 [of the *Boldt
    Decree*]." Dkt. #24 at 11. But Upper Skagit does not explain why permanent injunctive relief
23  beyond that provided in the underlying case is necessary and the Court does not find that it is
    necessary. The Court, having concluded that Judge Boldt excluded the Disputed Waters from
24  Sauk-Suiattle U&A, expects that the parties will act in accordance therewith. To the extent Upper
    Skagit seeks further injunctive relief, the request is denied.

ORDER – 14