UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, et al., <br><br> Defendants. | Case No. C70-9213RSM <br> Subproceeding No. 17-3 <br><br> ORDER GRANTING RULE 52(c) MOTION |

## I.  INTRODUCTION

This matter comes before the Court on Upper Skagit Indian Tribe's Motion for Judgment on Partial Findings under Rule 52(c). Dkt. #271. Intervenor Tulalip Tribe has filed a partial joinder in this Motion. Dkt. #274. Petitioner Stillaguamish Tribe ("Stillaguamish") clearly opposes this Motion. *See* Dkt. #287.

An eight-day bench trial was held in this subproceeding, starting on March 21, 2022, and eventually ending on June 7. The Court heard live testimony and received exhibits and briefing from several parties.

The only legal issue at trial was whether the historical evidence and expert testimony, and all reasonable inferences drawn therefrom, demonstrate by a preponderance of the evidence that Stillaguamish customarily fished the Claimed Waters (including the waters of Deception Pass, Skagit Bay, Penn Cove, Saratoga Passage, Holmes Harbor, Possession Sound, and Port Susan) at and before treaty times. *See* Dkt. #257 at 2.

ORDER GRANTING RULE 52(c) MOTION - 1

The instant Motion was filed on March 28, 2022. Upper Skagit Indian Tribe argues the Stillaguamish failed to present any evidence during its case-in-chief from which the Court can conclude that Stillaguamish customarily fished from time to time at and before treaty times in any of the marine waters at issue.

"Customarily fished" means something very specific in this case, as the parties well know. It means more than *may* have fished, *could* have fished, or even *definitely* fished on a rare occasion. Furthermore, "at and before treaty times" clearly requires evidence of fishing *at* treaty times. Evidence of fishing in the hundreds of years prior to treaty times, alone, is insufficient.

The Court deferred ruling on this Motion and proceeded with trial, hearing from several witnesses and requesting the parties answer a list of questions with supplemental briefing. *See* Dkts. #273, #275, #276, and #278. The Court has reviewed the supplemental briefing and appreciates the hard work that counsel and the parties performed in drafting lengthy responses. The Court asked these questions in an abundance of caution and to give Petitioner every opportunity to meet its burden of proving the issues in this case. Ultimately, however, the Court has found it can grant the instant Motion without addressing the various tangential questions or evidence presented after Stillaguamish's case-in-chief. Moreover, the Court is firmly convinced that this subproceeding needs to be focused on the singular issue above, and that it would be procedurally inappropriate to even attempt to reach legitimate conclusions on every possible question raised at trial based on the scant historical evidence that is available.

The Court is convinced that this subproceeding, and future subproceedings, should not serve as an invitation to continually re-analyze issues that have been decided over the past 50 years. The findings of fact and conclusions of law below are not intended to overturn any

ORDER GRANTING RULE 52(c) MOTION - 2

previously decided fact or law in this case. Absent a new and truly significant anthropological discovery, the Court will be disinclined to reassess U&A issues going forward on this limited record.

## II.   CREDIBILITY OF THE WITNESSES

"In an action tried on the facts without a jury... the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). "A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Fed. R. Civ. P. 52(c). The trial court is empowered to judge the credibility of the witnesses. *See Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663, 665 (9th Cir. 1996); *Zivkovic v. S. Cal. Edison Co.*, 105 Fed. Appx. 892, 893 at n.1 (9th Cir. 2004) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985)).

The Court finds that it need not rule on the credibility of witnesses given the reliance on expert testimony in this case. Although the Court disagrees with certain conclusions of the expert witnesses, there were no credibility issues with their testimony.

## III.   FINDINGS OF FACT

1. The Stillaguamish Tribe are a party to the Treaty of Point Elliott of 1855 ("Treaty"), and are referred to in the preamble of that Treaty under the spelling "Stoluck-wha-mish."

2. The name Stillaguamish, under various spellings, has been used since about 1850 to refer to those Indians who lived along the Stillaguamish River and camped along its tributary creeks.

ORDER GRANTING RULE 52(c) MOTION - 3

3. Stillaguamish's previously adjudicated usual and accustomed ("U&A") fishing grounds and stations are the areas embracing the Stillaguamish River and its north and south forks.

4. The existing record in this case, prior to trial, included substantial evidence of Stillaguamish river fishing but did not include any substantial evidence of fishing activity in the marine waters now at issue. The Court need not recite the entire factual record in this case related to Stillaguamish and can rely on prior rulings.

5. Dr. Chris Friday is an expert historian hired in this case. The report and testimony of Dr. Friday did not provide any direct evidence, indirect evidence, nor any reasonable inference of marine fishing activity by the Stillaguamish *at treaty time*. Dr. Friday essentially speculated that Stillaguamish must have broadly fished in all of the claimed marine waters in a means or fashion similar to every other Coast Salish tribe without any additional direct evidence or sufficient indirect evidence, or any reasonable inference, to support that assertion.

6. Evidence was presented about the distinction between the Stillaguamish and the Qwadsak people, or the Qwadsak area. Ultimately this evidence was inconclusive and insufficient to establish, by a preponderance of the evidence, marine fishing activity by the Stillaguamish in Port Susan.

7. Evidence was presented of shell middens located in the Qwadsak area by Harlan Smith. There was not sufficient evidence in the record to establish when the shell middens were created or who created them.

8. Evidence was presented of Stillaguamish people intermarrying with neighboring tribal groups, and it seems every other Salish tribe did the same. This did not include direct

ORDER GRANTING RULE 52(c) MOTION - 4

evidence, indirect evidence, nor any reasonable inference of usual and accustomed marine fishing activity by the Stillaguamish.

9. Evidence was presented that Stillaguamish tribal members traveled north to Victoria, B.C. and south to Olympia, Washington. This did not include direct evidence, indirect evidence, nor any reasonable inference of marine fishing activity by the Stillaguamish.

### IV.   CONCLUSIONS OF LAW

A motion for judgment on partial findings under Rule 52(c) may only be made during a bench trial. *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). Under this rule, "the court may enter judgment as a matter of law . . . with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 52(c). The rule expressly authorizes the district judge to resolve disputed issues of fact. *See* Fed. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). In deciding whether to enter judgment on partial findings under Rule 52(c), the court is not required to draw any inferences in favor of the non-moving party; rather, the court may make findings in accordance with its own view of the evidence. *Ritchie*, 451 F.3d at 1023.

The Court has carefully considered the testimony of Dr. Friday and the other evidence presented and concludes that, although there is ample evidence that the Stillaguamish were a river fishing people during treaty times, the evidence is insufficient to demonstrate by a preponderance of the evidence that they fished "customarily. . . from time to time" in saltwater, or that the marine areas at issue were their "usual and accustomed" grounds and stations. That is the standard that was not met here. The Court agrees with Upper Skagit Tribe that "[i]n order to prove U&A in the marine waters of Saratoga Pass, Penn Cove, Holmes Harbor, Skagit

ORDER GRANTING RULE 52(c) MOTION - 5

Bay, Port Susan, and Deception Pass, the law of the case requires that Stillaguamish do more than proffer evidence of (potential) village locations, (infrequent) travel, or (possible) presence in an area." Dkt. #271 at 3. The strongest evidence presented by Dr. Friday was that Stillaguamish traveled over the marine area between Olympia, Washington and Victoria, British Columbia. But travel alone does not satisfy the requirement of evidence of marine fishing under the law of the case. To permit evidence of travel alone to prove U&A could readily unravel all that has been established previously in the lengthy history of this case. Efforts by Dr. Friday and counsel for Stillaguamish to interpret this travel as an opportunity for fishing relies too heavily on speculation. The non-travel evidence presented by Stillaguamish, including the presence of villages, is ultimately insufficient to satisfy the above standards. Given all of the above, the Court will grant this Motion and deny Stillaguamish's request to expand its U&A.

## V.   CONCLUSION

Having considered the briefing from the parties on this Motion, the supplemental briefing from the parties, the evidence and testimony introduced at trial, and the remainder of the record, the Court hereby FINDS and ORDERS that Upper Skagit Indian Tribe's Motion for Judgment on Partial Findings under Rule 52(c), Dkt. #271, is GRANTED as stated above. This subproceeding is CLOSED.

DATED this 30st day of December, 2022.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE