UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, et al.,<br><br>Defendants. | Case No. C70-9213RSM<br>Subproceeding No. 17-3<br><br>AMENDED ORDER GRANTING RULE 52(c) MOTION |

## I. INTRODUCTION

This matter comes before the Court on remand from the Ninth Circuit "for further factual findings as to the [Stillaguamish] Tribe's evidence of villages, presence, and fishing activities in the Claimed Waters." Dkt. #324 at 14. This Court has ruled that further hearings and briefing are unnecessary. *See* Dkt. #329. The Court now amends its Order, Dkt. #312, granting Upper Skagit Indian Tribe's Rule 52(c) Motion, Dkt. #271, as follows. The Court again notes that Intervenor Tulalip Tribe filed a partial joinder to the Motion. Dkt. #274. Petitioner Stillaguamish Tribe ("Stillaguamish") opposed this Motion. *See* Dkt. #287.[1]

---

[1] The Ninth Circuit ruled that the Court's Order at Dkt. #312 correctly "applied the standard set forth in Final Decision #1 for determining a tribe's U&As" and "correctly applied the Law of the Case." Dkt. #324 at 10–11. The Court will therefore not amend its discussion of these standards.

AMENDED ORDER GRANTING RULE 52(c) MOTION - 1

An eight-day bench trial was held in this subproceeding, starting on March 21, 2022, and eventually ending on June 7. The Court heard live testimony and received exhibits and briefing from several parties.

The only legal issue at trial was whether the historical evidence and expert testimony, and all reasonable inferences drawn therefrom, demonstrated by a preponderance of the evidence that Stillaguamish customarily fished the Claimed Waters (including the waters of Deception Pass, Skagit Bay, Penn Cove, Saratoga Passage, Holmes Harbor, Possession Sound, and Port Susan) at and before treaty times. *See* Dkt. #257 at 2.

The instant Motion was filed on March 28, 2022. Upper Skagit Indian Tribe argues the Stillaguamish failed to present any evidence during its case-in-chief from which the Court can conclude that Stillaguamish "customarily fished from time to time at and before treaty times" in any of the marine waters at issue.

The Court deferred ruling on this Motion and proceeded with trial, hearing from several witnesses and requesting the parties answer a list of questions with supplemental briefing. *See* Dkts. #273, #275, #276, and #278. The Court reviewed the supplemental briefing and appreciates the hard work that counsel and the parties performed in drafting lengthy responses. The Court asked these questions in an abundance of caution and to give Petitioner every opportunity to meet its burden of proving the issues in this case. Ultimately, however, the Court has found it can grant the instant Motion without addressing tangential questions or any of the evidence presented after Stillaguamish's case-in-chief. Furthermore, the Court remains focused on the single issue above, and finds it procedurally inappropriate to reach decisions on every possible historical question raised at trial.

AMENDED ORDER GRANTING RULE 52(c) MOTION - 2

Given the 50-year history of this case, of which the undersigned is acutely familiar, the Court continues to believe that this subproceeding, and future subproceedings, should not re-analyze issues that have been decided. The findings of fact and conclusions of law below are not intended to overturn any previously decided fact or law in this case. Absent a truly significant anthropological discovery, the Court will be strongly disinclined to reassess U&A issues going forward.

## II.     CREDIBILITY OF THE WITNESSES

"In an action tried on the facts without a jury... the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). "A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Fed. R. Civ. P. 52(c). The trial court is empowered to judge the credibility of the witnesses. *See Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663, 665 (9th Cir. 1996); *Zivkovic v. S. Cal. Edison Co.*, 105 Fed. Appx. 892, 893 at n.1 (9th Cir. 2004) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985)).

The Court finds that it need not rule on the credibility of witnesses given the reliance on expert testimony in this case. Although the Court disagrees with certain conclusions of the expert witnesses, there were no credibility issues with their testimony.

## III.     FINDINGS OF FACT

1. The Stillaguamish Tribe are a party to the Treaty of Point Elliott of 1855 ("Treaty") and are referred to in the preamble of that Treaty under the spelling "Stoluck-wha-mish."
2. The name Stillaguamish, under various spellings, has been used since about 1850 to refer to those Indians who lived along the Stillaguamish River and camped along its tributary creeks.

AMENDED ORDER GRANTING RULE 52(c) MOTION - 3

3. Stillaguamish's previously adjudicated usual and accustomed ("U&A") fishing grounds and stations are the areas embracing the Stillaguamish River and its north and south forks.

4. The existing record in this case, prior to trial, included substantial evidence of Stillaguamish river fishing but did not include any substantial evidence of fishing activity in the marine waters now at issue.

5. Dr. Chris Friday is an expert historian hired in this case. The report and testimony of Dr. Friday did not provide any direct evidence, indirect evidence, nor any reasonable inference of marine fishing activity by the Stillaguamish at treaty time. Dr. Friday essentially speculated that Stillaguamish must have broadly fished in all of the claimed marine waters in a means or fashion similar to other Coast Salish tribes without any direct evidence or sufficient indirect evidence, or any reasonable inference, to support that assertion.

6. Evidence was presented about the distinction between the Stillaguamish and the Qwadsak people, or the Qwadsak area. Ultimately this evidence was inconclusive and insufficient to establish, by a preponderance of the evidence, marine fishing activity by the Stillaguamish in Port Susan.

7. Evidence was presented of shell middens located in the Qwadsak area by Harlan Smith. There was not sufficient evidence in the record to establish when the shell middens were created or who created them.

8. Evidence was presented of Stillaguamish people intermarrying with neighboring tribal groups. This did not include direct evidence, indirect evidence, nor any reasonable inference of marine fishing activity by the Stillaguamish.

9. Evidence was presented that Stillaguamish tribal members traveled north to Victoria, B.C. and south to Olympia, Washington. This did not include direct evidence, indirect evidence, nor any reasonable inference of marine fishing activity by the Stillaguamish.

10. Considerable time was spent detailing prior expert testimony and writings on Stillaguamish permanent winter villages and seasonal encampments throughout the lower Stillaguamish River delta and on Camano Island. However, this did not include direct evidence, indirect evidence, nor any reasonable inference of marine fishing activity by the Stillaguamish.

    a. The word "village" was mentioned in Stillaguamish's case-in-chief over 300 times. Encampments were mentioned over 50 times. Some of this testimony was about Salish people generally, offered to support the speculation that the presence of Stillaguamish villages or encampments near marine waters must mean that the Stillaguamish fished those waters.

    b. Dr. Friday was used as a witness to admit the words of tribal elders, anthropologists, and historians as to Stillaguamish's presence and villages on the shore near Port Susan, Skagit Bay, and Saratoga Passage.

    c. Dr. Friday cited to a 1926 work by Nels Bruseth, "Indian Stories and Legends of Stillaguamish and Allied Tribes," noting that you can find "traces of their camps… from Stanwood to Hat Slough." Dr. Friday testified that Stanwood is "very close to Skagit Bay" and that "Hat Slough empties into Port Susan." Earlier he testified that Stanwood is "only about a mile from Skagit Bay." Nothing from this testimony constitutes direct or indirect evidence, nor any reasonable inference, of marine fishing.

AMENDED ORDER GRANTING RULE 52(c) MOTION - 5

- d. Dr. Friday testified about a 1926 affidavit of James Dorsey, chief of the Stillaguamish Tribe at the time. That affidavit indicated the presence of structures or villages in the lower Stillaguamish River delta, including "right on the shores of Port Susan, near Warm Beach," and at other points further from the shore. The affidavit does not address marine fishing. Dr. Friday testified that other expert witnesses have relied on this affidavit before to evaluate Stillaguamish treaty-time marine fishing activities, including Dr. Barbara Lane.

- e. Dr. Friday cited the testimony of anthropologist Dr. Carroll Riley from a 1958 Indian Claims Commission proceeding. Dr. Riley testified that the people from the Stillaguamish River "utilized" Camano Island. Dr. Friday took that to mean that the Stillaguamish used "the full range of resources there, both terrestrial and marine," stating that "Camano Island is surrounded by marine water, and there would be people coming to that area exploiting shellfish resources, berry fields, and -- and other fisheries than -- in addition to shellfish, and that utilization would be a broad term to characterize the seasonal summer migrations to those areas."

- f. Dr. Friday relied on Dr. Riley's statements in a 1956 proceeding to conclude that the Stillaguamish had a village at the mouth of the Stillaguamish river. Dr. Friday was asked "Did Dr. Riley have any Stillaguamish informants?" and answered in the negative, saying that "Dr. Riley looked to the materials that had been gathered by others and the other written reports that had been done regarding Stillaguamish." Dr. Friday then discussed a 1956 report written by

Dr. Riley that did not speak about Stillaguamish in particular but "about Coast Salish Indians in Western Washington in general."

g. Dr. Friday discussed Dr. Riley stating in a 1958 Indian Claims Commission proceeding that the Stillaguamish people traveled down the Stillaguamish River for "various purposes" including "going down to the ocean" "on clamming expeditions."

h. In its opening statement, Stillaguamish said, "Dr. Friday will testify that he also relied on the work [sic] anthropologist Dr. Carroll Riley, who concluded that Stillaguamish, quote, came down to Port Susan and lower Skagit Bay for clamming and fishing."[2] This exact quote was actually not presented in direct examination.

i. Dr. Friday quoted Dr. Barbara Lane, who testified in a proceeding in 1984 that she believed that Stillaguamish had villages by Port Susan, and opined in a private letter in 1974 that "[i]n my opinion, it is inconceivable that villages would have been located on the waters of Port Susan and the inhabitants would not have fished those waters."

11. Almost the entirety of new expert testimony presented at trial was from Dr. Friday. However, Dr. Deward Walker, Jr.'s video deposition was also played. Dr. Walker is an anthropologist and expert for intervenor Tulalip Tribes. The Court finds that Dr. Walker's statements at deposition were primarily based on his review of Dr. Friday's expert opinions and did not offer new evidence of fishing outside of Dr. Friday's evidence. Ultimately, the Court finds that Dr. Walker's statements about the

---

[2] The Ninth Circuit relied on this evidence in its Opinion. *See* Dkt. #324 at 12 ("For example, Dr. Friday cited the work of anthropologist Dr. Carroll Riley, who stated in a 1956 proceeding that Stillaguamish "came down to Port Susan and lower Skagit Bay for clamming and fishing" at and before treaty time.").

AMENDED ORDER GRANTING RULE 52(c) MOTION - 7

Stillaguamish people fishing in marine waters at treaty times to be speculation. For example, in response to the question "Dr. Walker, do you have an opinion as to whether the Stillaguamish people fished in Port Susan at treaty times?" his response was affirmative, and, when asked to explain why, he stated, "I have been inform—so informed by both Stillaguamish, but also in the report by Dr. Friday, but perhaps mostly—mostly by the Tulalip themselves." When asked about fishing outside of Port Susan, he stated, "I haven't researched that question, but it certainly wouldn't surprise me that they did fish outside…" Although the Court has already determined that this testimony is speculative and unhelpful, the Court notes that it was clarified by Dr. Walker via declaration that "[m]y deposition testimony relating to Stillaguamish fishing activities in Port Susan at treaty times relates solely to the northern portion of Port Susan and specifically to areas in Port Susan north of Kayak Point as I was aware that Tulalip had agreed to Stillaguamish fishing in that area." Dkt. #201 at 2. Stillaguamish later moved to strike this declaration under the sham affidavit rule, arguing that Dr. Walker still admits that Stillaguamish fished Port Susan north of Kayak Point at and before treaty times, which just happens to fall within the scope of Tulalip's settlement agreement." Dkt. #206 at 12. The Court never ruled on that issue, but notes that Stillaguamish's argument further highlights the uselessness of Dr. Walker's testimony as evidence to establish the marine fishing areas of the Stillaguamish people at treaty times.

12. Over the course of Stillaguamish's case-in-chief, other evidence was introduced through Dr. Friday from earlier testimony in prior subproceedings by experts Dr. Barbara Lane, Dr. Sally Snyder, and Dr. Carroll Riley. Much of this testimony was from 1973-1993.

Evidence was submitted from earlier publications by these experts as well. These publications are all several decades old, and some of the submitted evidence predated the original Boldt decision. No satisfactory explanation was given by Dr. Friday why the Court should rely on his interpretation of the opinions of prior expert witnesses, or on the words of these experts that were not included in prior subproceedings.

## IV.   CONCLUSIONS OF LAW

A motion for judgment on partial findings under Rule 52(c) may only be made during a bench trial. *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). Under this rule, "the court may enter judgment as a matter of law . . . with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 52(c). The rule expressly authorizes the district judge to resolve disputed issues of fact. *See* Fed. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). In deciding whether to enter judgment on partial findings under Rule 52(c), the court is not required to draw any inferences in favor of the non-moving party; rather, the court may make findings in accordance with its own view of the evidence. *Ritchie*, 451 F.3d at 1023.

The Court has carefully considered the testimony of Dr. Friday and the other evidence presented and concludes that, although there is ample evidence that the Stillaguamish were a river fishing people during treaty times, they have failed to demonstrate by a preponderance of the evidence that they fished "customarily. . . from time to time" in saltwater, or that the marine areas at issue were their "usual and accustomed" grounds and stations. The Court agrees with Upper Skagit Tribe that "[i]n order to prove U&A in the marine waters of Saratoga Pass, Penn Cove, Holmes Harbor, Skagit Bay, Port Susan, and Deception Pass, the law of the case requires

AMENDED ORDER GRANTING RULE 52(c) MOTION - 9

that Stillaguamish do more than proffer evidence of (potential) village locations, (infrequent) travel, or (possible) presence in an area." Dkt. #271 at 3.  This Court has previously held that evidence of village locations raises a presumption of fishing activities but alone does not prove fishing at those locations.  *See United States v. Washington*, 459 F. Supp. 1020, 1059 (W.D. Wash. 1978), *aff'd*, 645 F.2d 749 (9th Cir. 1981).  Virtually all of the evidence presented on Stillaguamish's coastal villages and encampments was submitted in prior subproceedings, or comes from experts who testified in prior subproceedings.  Critically for this Order, all of Stillaguamish's testimony and exhibits are speculative as to the question of fishing in the Claimed Waters.  For example, expert testimony was presented indicating that a prior expert witness felt that fishing *must* have happened because of proximity.  It is also possible that it did not happen.  Dr. Friday repeatedly *expanded* on speculation of prior expert witnesses unfortunately unable to sit through cross examination and on testimony presented in prior proceedings.  In a case with virtually no other evidence, such speculation on speculation fails the test of Rule 52(c) above.  Dr. Friday's speculation does not demonstrate by a preponderance of the evidence that Stillaguamish customarily fished the Claimed Waters at and before treaty times.

Although the Court desires to squarely address the Ninth Circuit's issues on remand, there is no need to issue line-by-line conclusions of law for each Stillaguamish village because the presence of villages, without more, does not go to the ultimate issue before the Court.  The Ninth Circuit asks whether this Court "discredited some of the expert historical analysis because it was controverted by other historians."  Dkt. #324 at 13–14.  Although Stillaguamish's speculation about marine fishing certainly contradicts prior findings in this case, the Court does not need to pit one expert's testimony against another because evidence to

support Stillaguamish's claims, beyond speculation, was not present in *any* testimony offered by Stillaguamish's case-in chief.

The Ninth Circuit asks this Court to weigh in on Dr. Lane's "private letter in 1974" stating that it was "inconceivable" that the inhabitants of Stillaguamish villages by Port Susan "would not have fished [the adjacent] waters." *Id*. at 13. The Court did not hear testimony at trial from Dr. Lane, who passed away in 2013. There was no opportunity for any party to ask follow-up questions about this. Dr. Lane testified in multiple subproceedings in this long case, and if she had evidence to support this idea it could have been presented earlier. Ultimately, the words in this letter are no more than speculative whispers from fifty years ago.

The strongest evidence presented by Dr. Friday was that Stillaguamish traveled over the marine area between Olympia, Washington and Victoria, British Columbia. But travel alone does not satisfy the requirement of evidence of marine fishing under the law of the case. To permit evidence of travel alone to prove U&A could easily unravel all that has been established previously in this case. Efforts by Dr. Friday and counsel for Stillaguamish to interpret this travel as an opportunity for fishing relies too heavily on speculation. The non-travel evidence presented by Stillaguamish, including the presence of villages, is ultimately too weak to satisfy the above standards. Given all of the above, the Court will grant this Motion and deny Stillaguamish's request to expand its U&A.

## V.   CONCLUSION

Having considered the briefing from the parties on this Motion, the supplemental briefing from the parties, the evidence and testimony introduced at trial, and the remainder of the record, the Court hereby FINDS and ORDERS that Upper Skagit Indian Tribe's Motion for

AMENDED ORDER GRANTING RULE 52(c) MOTION - 11

Judgment on Partial Findings under Rule 52(c), Dkt. #271, is GRANTED as stated above. This subproceeding is CLOSED.

DATED this 28th day of August, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE