UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. C70-9213 RSM |
| Plaintiffs, | SUBPROCEEDING NO. 24-01 RSM |
| v. | ORDER GRANTING MOTION TO DISMISS |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

## I.  INTRODUCTION

This subproceeding is before the Court on Swinomish, Upper Skagit, the Suquamish Indian Tribe, and the Tulalip Tribes (collectively, the "Responding Tribes")'s Motion to Dismiss, Dkt. #27.[1] The requesting party, the Sauk-Suiattle Indian Tribe ("Sauk-Suiattle"), initiated this subproceeding to, as they put it, "finally determine its U&A in marine waters, as well as ascertain its U&A through its route of travel to the marine waters, that is, the Skagit River as well as its tributary, the Baker River." Dkt. #1 at 2. More specifically, Sauk-Suiattle asks the Court to:

> …determine and declare that the Usual and Accustomed fishing grounds and stations of the Sauk-Suiattle Indian Tribe include, in addition to those determined in [*United States v. Washington*, 384 F. Supp. 312, 376 (W.D. Wash. 1974)], Washington Department of Fish & Wildlife ("WDFW") areas 8, 8A, 7C, and a portion of 7B

---

[1] All citations in this Order will be to the docket in the subproceeding, although copies of these filings are also made in Case No. C70-9213RSM.

ORDER GRANTING MOTION TO DISMISS – 1

and 6A, including from Warm Beach to the mouth of the Stillaguamish River, the South Fork of the Skagit Delta and Skagit Bay, the west and north sides of Hat Island, both sides of Camano Island (including Saratoga Passage and Port Susan), Samish Bay, Chuckanut Bay, Padilla Bay, Fidalgo Bay, the east side of Whidbey Island (including Penn Cove, Oak Harbor, Crescent Harbor, and Holmes Harbor), Snee-oosh Beach, Similk Bay, Turner Bay, and from Deception Pass west to Lawson's Reef as well as the Skagit River and Baker River.

*Id*.; *see also* Dkt. #3 at 2–3.

The Responding Tribes move to dismiss, largely on procedural grounds. The Sauk-Suiattle's usual and accustomed fishing places ("U&A") were determined by Judge Boldt in 1974. Over 40 years passed without further litigation on this issue. Then a 2020 subproceeding ruled that the Skagit River was excluded from Sauk-Suiattle's U&A, later affirmed by the Ninth Circuit.

The Skagit River is back, and much more. The Responding Tribes call the above claimed waters "far beyond the areas Sauk customarily fished at and before treaty time…" and move to dismiss for, *inter alia*, lack of subject matter jurisdiction and violating res judicata, collateral estoppel, law of the case, and judicial estoppel. *Id*. at 3. Having reviewed the matter, the Court agrees with the Responding Tribes and will deny the Request and dismiss this subproceeding.

## II. BACKGROUND

In his 1974 Decree, Judge Boldt determined that Sauk-Suiattle's U&A "included Sauk River, Cascade River, Suiattle River and the following creeks which are tributary to the Suiattle River—Big Creek, Tenas Creek, Buck Creek, Lime Creek, Sulphur Creek, Downey Creek, Straight Creek, and Milk Creek. Bedal Creek, tributary to the Sauk River, was also a Sauk fishing ground." *U.S. v. Washington*, 384 F. Supp. 312, 376 (W.D. Wash. 1974) ("Finding of Fact 131 in Final Decision I" or "FF 131").

ORDER GRANTING MOTION TO DISMISS – 2

1    In the fairly recent 2020 subproceeding, this Court ruled that "Sauk-Suiattle's U&A appears to unambiguously omit the Skagit River" and, after carefully reviewing the evidence before Judge Boldt, found that, "the only viable conclusion is that Judge Boldt intentionally omitted the Skagit River from [Sauk-Suiattle's] U&A." Case No. 2:20-sp-1-RSM, Dkt. #47 at 11, 13. The Ninth Circuit affirmed, stating that the plain language of FF 131 does not include the Skagit River, which "clearly and unambiguously establishes Judge Boldt's intent not to include the Skagit River in Sauk's U&A." *Upper Skagit Indian Tribe v. Sauk Indian Tribe*, 66 F.4th 766, 771 (9th Cir. 2023). The Ninth Circuit went on to say:

> Nor does evidence that *some* Sauk tribal members fished with friends and relatives on the Skagit River establish U&As for the tribe. As *Final Decision I* made clear, "occasional and incidental [fishing] was not considered to make the marine waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians." 384 F. Supp. at 353. The statement that the Sauk tribe traveled to the saltwater, without more, does not establish customary fishing on the Skagit River to support U&As on it.

*Id.* at 774 (emphasis in original).

Subproceeding 20-1 was brought under the continuing jurisdiction provision in Paragraph 25(a)(1) of the Permanent Injunction to determine whether Sauk's actions were "in conformity with [Final Decision I] or the injunction." Case No. 20-sp-1-RSM, Dkt. #47 at 6. Now the Sauk-Suiattle Tribe submits a Request for Determination under Paragraph 25(a)(6), based on the premise that a huge expanse of waters, including the Skagit River, were not "specifically determined" by Judge Boldt and should therefore be added to their U&A. The tribe includes this image of those waters:

ORDER GRANTING MOTION TO DISMISS – 3

Map of U&A Claims of the Sauk-Suiattle Indian Tribe

Dkt. #3 at 9.

The Request cites no newly discovered information, relying instead on the work of anthropologists like Barbara Lane and Sally Snyder previously submitted to this Court. *See id*. The Request reminds the Court that the Sauk-Suiattle Tribe is the successor-in-interest to the Sah-ku-mehu Tribe and points out, "[a]s stated succinctly by Judge Boldt, Sah-ku-mehu 'traveled to the saltwater to procure marine life unavailable in their own territory.'" *Id.* at 5 (quoting *U.S. v. Washington*, 384 F. Supp. 312 at 376). This half-paraphrased quote does not accurately reflect what Judge Boldt said. Any notion that the instant Request is advancing a step in logic from marine-fishing Sah-ku-mehu to river-based Sauk-Suiattle—a connection that was overlooked by Judge Boldt—is dead on arrival. Judge Boldt knew that "[t]he Sauk-Suiattle Tribe is composed primarily of the descendants of the Sah-ku-mehu and other Indians who lived on the upper reaches of the Skagit River system in 1855," then went on to say:

ORDER GRANTING MOTION TO DISMISS – 4

> During treaty times the Sauk River Indians took fish with spears, dip nets, traps and weirs. They procured salmon and steelhead in their up-river region and also traveled to the saltwater to procure marine life unavailable in their own territory.

384 F. Supp. 312 at 376. This mention of the "Sauk River Indians" traveling to saltwater comes just one paragraph after Sauk-Suiattle's U&A was limited to the rivers and creeks in FF 131.

### III.    DISCUSSION

**A. Responding Tribes' Motion under Rule 12(b)(1)**

The Responding Tribes first move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Rule 12(b)(1) challenges may be facial or factual. *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). The Responding Tribes' Motion is factual, relying on matters beyond the Request for Determination, although they cite only court decisions, pleadings, and evidence filed in *U.S. v. Washington*. These materials may be considered without converting the 12(b)(1) challenge into a motion for summary judgment. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

As has been stated repeatedly in this unique case, subject matter jurisdiction turns on whether any of the continuing jurisdiction provisions in Paragraph 25(a) of the Permanent Injunction apply. "[T]he Court retained jurisdiction in this case for limited and express purposes." *U.S. v. Washington*, 20 F. Supp. 3d 983, 986 (W.D. Wash. 2012). Before entertaining a new subproceeding, the Court must first determine "whether it has continuing jurisdiction and on what ground." *U.S. v. Washington*, 252 Fed. Appx. 183 (9th Cir. 2007). Sauk-Suiattle has the burden to establish jurisdiction. It asserts jurisdiction under Paragraph 25(a)(6), which provides that any party "may invoke the continuing jurisdiction of this court in order to determine . . . [t]he location of any of a tribe's [U&A] not specifically determined by [FD I]." *U.S. v. Washington*, 18 F. Supp. 3d at 1213. Jurisdiction under Paragraph 25(a)(6) is "contingent on the

1  Court's finding, or the parties agreeing, that the disputed waters in question were not specifically

2  determined by Judge Boldt." *U.S. v. Washington*, Case No. 17-sp-1, Dkt. #43 at 12 (W.D. Wash.)

3  (Aug. 30, 2017). Sauk-Suiattle agrees that the Court must find that the disputed waters in

4  question were not "specifically determined" by Judge Boldt in order to have subject matter

5  jurisdiction. Dkt. #29 at 5.

6        The parties disagree on whether the disputed waters in question have been specifically

7  determined or not. The Responding Tribes argue that the Court's Order in Subproceeding 20-1

8  and the Ninth Circuit Opinion conclusively exclude any body of water not in FF 131 from Sauk-

9  Suiattle's U&A. There is significant support for that proposition in the record and prior rulings.

10        In response to this Motion, Sauk-Suiattle argues that Subproceeding 20-1 decided "a

11  different issue at a single location." Dkt. #29 at 9. While the Court might understand the

12  argument that marine waters were not at issue in Subproceeding 20-1, amazingly, the Sauk-

13  Suiattle's position is that *the Skagit River* was not at issue, writing:

14  > Ultimately, this Court and the Ninth Circuit did not agree with this position and held that "Judge Boldt did not intend to include the
15  > Skagit River in the Sauk tribe's U&As." *Upper Skagit Indian Tribe*, 66 F.4th at 768. That is the only holding from the case. The Ninth
16  > Circuit nowhere indicated that Judge Boldt had specifically determined that Sauk-Suiattle did not fish the Skagit River during
17  > treaty times, nor did it make any holdings regarding the Baker River and marine waters.

18  Dkt. #29 at 9–10.

19

20        Sauk-Suiattle is twisting logic and reality here. Subproceeding 20-1 re-examined the

21  evidence before Judge Boldt and found that he listed specific river waters that comprised Sauk-

22  Suiattle's U&A. The Court was asked to consider adding the Skagit River to this U&A and

23  rejected that idea. The Court did not use the words "specifically determined," and the case was

24  brought under Paragraph 25(a)(1) instead of 25(a)(6). Nevertheless, it would be of no

ORDER GRANTING MOTION TO DISMISS – 6

1  consequence to ask whether Sauk-Suiattle fished the Skagit River during treaty times, or fished
2  marine waters, if such fishing was not usual and accustomed because, as the Ninth Circuit has
3  already said above, "occasional and incidental [fishing] was not considered to make the marine
4  waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians."
5  *Upper Skagit Indian Tribe,* 66 F.4th at 774.  The continuing jurisdiction here is to determine
6  U&A's, not to determine occasional and incidental fishing.

7  Furthermore, the Court's prior ruling and that of the Ninth Circuit would seem to close
8  the door on marine waters.  The Court agrees with the Responding Tribes that Sauk-Suiattle's
9  U&A is unambiguous, specifically determined, and that it excludes any unnamed waters.  Marine
10 waters were explicitly considered by Judge Boldt; he mentions saltwater fishing one paragraph
11 after determining the U&A.  Nothing about Sauk-Suiattle's position as successor-in-interest to
12 the Sah-ku-mehu Tribe changes this because such was already explicitly considered by Judge
13 Boldt.  *See* 384 F. Supp. 312 at 376.  Sauk-Suiattle has not discovered any new evidence.  None
14 of Sauk-Suiattle's cited cases are factually or procedurally on point.  For example, *U.S. v.
15 Washington*, 873 F. Supp. 1422 (W.D. Wash. 1994) (*Washington II*) is distinguishable because
16 the parties there agreed that marine waters were not specifically determined, *see U.S. v.
17 Washington*, Case No. 70-cv-9213-RSM Dkt. #14233 at 2–3, and that case lacked the Court's
18 ruling and the Ninth Circuit ruling above.

19 Given all of the above, Sauk-Suiattle has failed to demonstrate continuing jurisdiction
20 under Paragraph 25(a)(6) and therefore dismissal under Rule 12(b)(1) is warranted.

21 The Court is reinforced in its conclusion by looking at Subproceeding 17-2, cited by the
22 Responding Tribes.  In Subproceeding 17-2, The Muckleshoot Tribe attempted to litigate the
23 geographic scope of its U&A for a third time. This Court dismissed the case for lack of
24 jurisdiction because Judge Boldt specifically determined Muckleshoot's U&A in Final Decision

ORDER GRANTING MOTION TO DISMISS – 7

I and a prior 25(a)(1) proceeding in Subproceeding 97-1 had already interpreted the geographic scope of Muckleshoot's marine U&A finding it was limited to Elliott Bay. As a result, Muckleshoot could not expand its U&A using Paragraph 25(a)(6). *U.S. v. Washington*, Subproceeding 17-2, Dkt. #40 at 8-10 (W.D. Wash. 2018). The Ninth Circuit affirmed the dismissal. *See Muckleshoot Indian Tribe v. Tulalip Tribes*, 944 F.3d 1179 (9th Cir. 2019). Like in that case, the Court has already re-examined the evidence before Judge Boldt in a 25(a)(1) proceeding, Subproceeding 20-1. Subproceeding 17-2 and the rulings above occurred after *Washington II* and are controlling precedent.

### B. Res Judicata, Collateral Estoppel, Law of the Case, and Judicial Estoppel

Alternatively, the Responding Tribes ask the Court to dismiss under res judicata, collateral estoppel, law of the case, and judicial estoppel. At the very least, the question of a U&A for the Skagit River should be barred by collateral estoppel. *See U.S. v. Washington*, Subproceeding 17-2, Dkt. #40 at 11 (W.D. Wash. 2018). However, as the Court believes it lacks subject matter jurisdiction under Paragraph 25(a)(6), it declines to issue a ruling at this time on these issues. The Court declines to address the Responding Tribes' 12(b)(6) arguments.

### IV. CONCLUSION

Accordingly, and having reviewed the Motions, the briefing, the declarations and exhibits in support of the briefing, and the remainder of the record, the Court finds and ORDERS that the Responding Tribes' Motion to Dismiss, Dkt. #27, is GRANTED. Sauk-Suiattle's Request for determination is DISMISSED. This subproceeding is CLOSED.

Dated this 4th day of February, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE